1 | JAMES R. WILLIAMS, County Counsel (S.B. #271253)
DOUGLAS M. PRESS, Assistant County Counsel (S.B. #168740)
2 | MARY E. HANNA-WEIR, Deputy County Counsel (S.B. #320011)
KIM H. HARA, Deputy County Counsel (S.B. # 258763)
3 | JULIA B. SPIEGEL, Deputy County Counsel (S.B. #292469)
OFFICE OF THE COUNTY COUNSEL
4 | 70 West Hedding Street, East Wing, Ninth Floor
San José, California 95110-1770
5 | Telephone: (408) 299-5900
Facsimile: (408) 292-7240
6 | Email: julia.spiegel@cco.sccgov.org

7 | Attorneys for Defendant
SHANNON BUSHEY, REGISTRAR OF
8 | VOTERS FOR THE COUNTY OF SANTA
CLARA
9

10

11 |                     UNITED STATES DISTRICT COURT

12 |                    CENTRAL DISTRICT OF CALIFORNIA

13

14 | ELECTION INTEGRITY PROJECT          No. 2:21-cv-00032-AB-MAA
CALIFORNIA, INC., JAMES P.
15 | BRADLEY, AJA SMITH, ERIC            **NOTICE OF MOTION AND**
EARLY, ALISON HAYDEN, JEFFREY        **MEMORANDUM OF POINTS AND**
16 | GORMAN, MARK REED, BUZZ             **AUTHORITIES IN SUPPORT OF**
PATTERSON, MIKE CARGILE,             **COUNTY DEFENDANTS' MOTION**
17 | KEVIN COOKINGHAM, GREG             **TO DISMISS PLAINTIFFS'**
RATHS,                               **COMPLAINT**
18
19 |              Plaintiffs,            Date:      April 9, 2021
                                      Time:      10:00 a.m.
20 | v.                                 Crtrm:     7B
                                      Judge:     Hon. André Birotte Jr.
21 | ALEX PADILLA, CALIFORNIA
SECRETARY OF STATE, XAVIER
22 | BECERRA, CALIFORNIA ATTORNEY
GENERAL, GAVIN NEWSOM,
23 | GOVERNOR OF THE STATE OF
CALIFORNIA, RIVERSIDE COUNTY
24 | REGISTRAR OF VOTERS REBECCA
SPENCER, LOS ANGELES COUNTY
25 | REGISTRAR OF VOTERS DEAN
LOGAN, VENTURA COUNTY
26 | REGISTRAR OF VOTERS MARK A.
LUNN, SAN BERNARDINO COUNTY
27 | REGISTRAR OF VOTERS BOB PAGE,
MONTEREY COUNTY REGISTRAR
28 | OF VOTERS CLAUDIO

                                    1

1   VALENZUELA, SACRAMENTO
    COUNTY REGISTRAR OF VOTERS
2   COURTNEY BAILEY-KANELO,
    ALAMEDA COUNTY REGISTRAR OF
3   VOTERS TIM DUPUIS, CONTRA
    COSTA COUNTY REGISTRAR OF
4   VOTERS DEBORAH R. COOPER,
    SANTA CLARA COUNTY
5   REGISTRAR OF VOTERS SHANNON
    BUSHEY, SAN BENITO COUNTY
6   REGISTRAR OF VOTERS JOE PAUL
    GONZALEZ, SANTA CRUZ COUNTY
7   REGISTRAR OF VOTERS GAIL L.
    PELLERIN, FRESNO COUNTY
8   REGISTRAR OF VOTERS BRANDI
    ORTH, ORANGE COUNTY
9   REGISTRAR OF VOTERS NEAL
    KELLEY,

10                  Defendants.

11

12

13              **NOTICE OF MOTION TO DISMISS**

14      **TO PLAINTIFF AND THEIR ATTORNEYS OF RECORD:**

15          PLEASE TAKE NOTICE that on **April 9, 2021 at 10:00 a.m. in Courtroom**

16   **7B** of the United States District Court of the Central District of California, located at

17   First Street Court House, 350 West First Street, Los Angeles, California 90012,

18   Defendants Rebecca Spencer, Riverside County Registrar of Voters; Dean C. Logan,

19   Los Angeles County Registrar-Recorder/County Clerk;[1] Mark A. Lunn, Ventura

20   County Registrar of Voters; Bob Page, San Bernardino County Registrar of Voters;

21   Courtney Bailey-Kanelos, Sacramento County Registrar of Voters;[2] Tim Dupuis,

22   Registrar of Voters for the County of Alameda; Deborah Cooper, Contra Costa

23   County Registrar of Voters; Shannon Bushey, Registrar of Voters for the County of

24   Santa Clara; Joe Paul Gonzalez, San Benito County Clerk-Auditor-Recorder-Registrar

25

26   _____

27   [1] Erroneously sued herein as Los Angeles County Registrar of Voters, Dean Logan.

28   [2] Erroneously sued herein as Sacramento County Registrar of Voters, Courtney
     Bailey-Kanelo.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1   of Voters;[3] Gail Pellerin, Santa Cruz County Registrar of Voters; Brandi L. Orth,

2   County Clerk/Register of Voters for the County of Fresno;[4] and Neal Kelley, Registrar

3   of Voters for the County of Orange ("County Defendants"[5]) will and hereby do move

4   the Court pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) for an order

5   dismissing the Plaintiffs' Complaint on file in this action in its entirety for lack of

6   subject matter jurisdiction and for failure to state a claim upon which relief can be

7   granted.

8   ///

9   ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  _____

25  [3] Erroneously sued herein as San Benito County Registrar of Voters, Joe Paul
26  Gonzales.

    [4] Erroneously sued herein as Fresno County Registrar of Voters Brandi Orth.

27  [5] County of Santa Clara Registrar of Voters Shannon Bushey submits this motion on
28  behalf of all the County Defendants, except for Monterey, which contests proper
    service of Plaintiffs' complaint.

3

1  This motion is based on this Notice of Motion and Motion, the Memorandum of
2  Points and Authorities below, the Plaintiffs' Complaint and documents incorporated
3  by reference therein, the arguments that may be presented at the hearing on this
4  Motion, and any other matters the Court deems relevant.  This motion is made
5  following the conference of counsel pursuant to Local Rule 7-3, which took place on
6  February 5, 2021.

7  Dated: February 12, 2021          Respectfully submitted,

8                                    JAMES R. WILLIAMS
9                                    COUNTY COUNSEL

10                          By:      */s/ Julia B. Spiegel*
11                                   JULIA B. SPIEGEL
12                                   Deputy County Counsel
                                     Douglas M. Press, Assistant County Counsel
13                                   Mary E. Hanna-Weir, Deputy County Counsel
14                                   Kim H. Hara, Deputy County Counsel

15                                   Attorneys for Defendant
16                                   Shannon Bushey, Registrar of Voters for the
                                     County of Santa Clara
17

18  Dated: February 12, 2021          DONNA ZIEGLER
                                      County Counsel
19
20                          By:      */s/ Raymond Lara*
                                     RAYMOND LARA
21                                   Senior Deputy County Counsel

22                                   Attorneys for Defendant
23                                   Tim Dupuis, Registrar of Voters for
                                     the County of Alameda
24

25

26  ///

27  ///

28  ///

4

1    Dated: February 12, 2021          SHARON L. ANDERSON
2                                      County Counsel

3                               By:    /s/ *Rebecca Hooley*
4                                      REBECCA HOOLEY
                                       Deputy County Counsel
5
6                                      Attorneys for Defendant
                                       Deborah Cooper, Contra Costa
7                                      County Registrar of Voters

8    Dated: February 12, 2021          DANIEL C. CEDERBORG
9                                      County Counsel

10                              By:    /s/ *Kyle R. Roberson*
11                                     KYLE R. ROBERSON
                                       Deputy County Counsel
12
13                                     Attorneys for Defendant
14                                     Brandi L. Orth, County Clerk/Register of
                                       Voters for the County of Fresno
15
16   Dated: February 12, 2021          RODRIGO CASTRO-SILVA
                                       County Counsel
17
18                              By:    /s/ *Eva W. Chu*
                                       EVA W. CHU
19                                     Deputy County Counsel
20
                                       Attorneys for Defendant
21                                     Dean C. Logan, Los Angeles County Registrar-
22                                     Recorder/County Clerk

23   ///
24   ///
25   ///
26   ///
27   ///
28

1

2

Dated: February 12, 2021          LEON J. PAGE
                                  County Counsel

3                          By:    /s/ Rebecca S. Leeds
4                                 REBECCA S. LEEDS
                                  Senior Deputy
5                                 Mark D. Servino, Supervising Deputy
6                                 Suzanne E. Shoai, Senior Deputy

7                                 Attorneys for Defendant
8                                 Neal Kelley, Registrar of Voters for
                                  the County of Orange
9

10   Dated: February 12, 2021          GREGORY P. PRIAMOS
                                       County Counsel
11

12                         By:    /s/ Ronak N. Patel
13                                RONAK N. PATEL
                                  Deputy County Counsel
14                                Attorneys for Defendant

15                                Rebecca Spencer, Riverside County
16                                Registrar of Voters

17   Dated: February 12, 2021          LISA A. TRAVIS
18                                     County Counsel

19                         By:    /s/ Krista C. Whitman
20                                KRISTA C. WHITMAN
                                  Assistant County Counsel
21

22                                Attorneys for Defendant
23                                Courtney Bailey-Kanelos, Sacramento County
                                  Registrar of Voters

24

25   ///

26   ///

27   ///

28   ///

| | | |
|---|---|---|
| 1 | Dated: February 12, 2021 | BARBARA THOMPSON |
| 2 | | County Counsel |
| 3 | | By: | /s/ *Joseph Wells Ellinwood* |
| 4 | | | JOSEPH WELLS ELLINWOOD |
| | | | Assistant County Counsel |
| 5 | | |
| 6 | | Attorneys for Defendant |
| | | Joe Paul Gonzalez, San Benito County Clerk- |
| 7 | | Auditor-Recorder-Registrar of Voters |
| 8 | Dated: February 12, 2021 | MICHELLE D. BLAKEMORE |
| 9 | | County Counsel |
| 10 | | By: | /s/ *Laura L. Crane* |
| 11 | | | LAURA L. CRANE |
| 12 | | | Supervising Deputy County Counsel |
| 13 | | Attorneys for Defendant |
| 14 | | Bob Page, San Bernardino County |
| 15 | | Registrar of Voters |
| 16 | Dated: February 12, 2021 | JASON M. HEATH |
| 17 | | County Counsel |
| 18 | | By: | /s/ *Melissa C. Shaw* |
| 19 | | | MELISSA C. SHAW |
| | | | Assistant County Counsel |
| 20 | | |
| 21 | | Ruby Marquez, Chief Assistant County Counsel |
| 22 | | Attorneys for Defendant |
| 23 | | Gail Pellerin, Santa Cruz County |
| | | Registrar of Voters |
| 24 | | |
| 25 | /// | |
| 26 | /// | |
| 27 | /// | |
| 28 | /// | |

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: February 12, 2021

MICHAEL G. WALKER
County Counsel

By:   */s/ Matthew A. Smith*
MATTHEW A. SMITH
Assistant County Counsel

Attorneys for Defendant
Mark A. Lunn, Ventura County
Registrar of Voters

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1
2

# TABLE OF CONTENTS

Page

3  I.    INTRODUCTION ...................................................................................1

4  II.   FACTUAL & PROCEDURAL HISTORY ..........................................3

5  III.  LEGAL STANDARD............................................................................5

6  IV.   LEGAL ARGUMENT ...........................................................................6

7        A.    Plaintiffs Lack Standing to Assert Any of Their Claims.....................6

8              i.     Plaintiffs Fail to Demonstrate Injury-In-Fact ...........................7

9              ii.    Plaintiffs' Alleged Injury is Not Redressable by the Relief
10                    Sought.......................................................................................11

11       B.    Plaintiffs' Guarantee Clause Claim is Nonjusticiable.......................12

12       C.    Plaintiffs' Claims Are Moot.............................................................13

13       D.    Plaintiffs' Claims Are Barred by Laches and Principles of Equity ....15

14       E.    Plaintiffs Fail to State a Claim for Relief .........................................17

15             i.     Plaintiffs Fail to State a Claim for Relief Under
                      the Elections Clause...............................................................18

16             ii.    Plaintiffs Fail to State a Claim for Relief Under
17                    the Guarantee Clause .............................................................19

18             iii.   Plaintiffs Fail to State a Claim for Relief Under Both
                      the Equal Protection and Due Process Clauses........................19

19       F.    Plaintiffs' Request for an Audit is Disproportionate to Their
20             Purported Injury.................................................................................22

21  V.    CONCLUSION ....................................................................................24

22
23
24
25
26
27
28

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

Page

## <u>CASES</u>

*A. Farber & Partners, Inc. v. Garber*
   234 F.R.D. 186 (C.D. Cal. 2006) ................................................................23

*Already, LLC v. Nike, Inc.*
   568 U.S. 85 (2013)......................................................................................14

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)...............................................................................6, 18

*Baker v. Carr*
   369 U.S. 186 (1962)...............................................................................7, 12

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007)......................................................................................6

*Bennett v. Yoshina*
   140 F.3d 1218 (9th Cir. 1998)....................................................................20

*Bodine v. Elkhart County Election Bd.*
   788 F.2d 1270 (7th Cir. 1986).......................................................19, 20, 22

*Bognet v. Secretary Commonwealth of Pennsylvania*
   980 F.3d 336 (3d Cir. 2020).........................................................................8

*Bowyer v. Ducey*
   No. CV-20-02321-PHX-DJH, 2020 WL 7238261
   (D. Ariz. Dec. 9, 2020) ...................................................................1, 14, 16

*Citizens Oversight, Inc. v. Vu*
   35 Cal. App. 5th 612 (2019)........................................................................23

*City of Rome v. United States*
   446 U.S. 156 (1980)....................................................................................12

*Curry v. Baker*
   802 F.2d 1302 (11th Cir. 1986)...................................................................22

*DaimlerChrysler Corp. v. Cuno*
   547 U.S. 332 (2006).........................................................................7, 10, 11

*Danjaq LLC v. Sony Corp.*
   263 F.3d 942 (9th Cir. 2001).......................................................................15

*Davis v. FEC*
   554 U.S. 724 (2008)......................................................................................7

*Deakins v. Monaghan*
   484 U.S. 193 (1988)....................................................................................14

*Dillon v. Nissan Motor* Co.
    986 F.2d 263 (8th Cir. 1993) ........................................................................ 23

*Donald J. Trump for President v. Boockvar*
    No. 2:20-cv-966, 2020 WL 5997680 (W.D. Penn. Oct. 10, 2020) ..... 9, 20, 21

*Donald J. Trump for President, Inc. v. Sec'y Commonwealth of Penn.*
    830 Fed. Appx. 377 (3d Cir. 2020) ............................................................... 1

*Donald Trump for President, Inc. v. Cegavske*
    No. 2:20-cv-1445 JCM (VCF), 2020 WL 5626974 (D. Nev. Sept. 18,
    2020) ............................................................................................................. 9

*Ex parte Levitt*
    302 U.S. 633 (1937) ...................................................................................... 7

*Flast v. Cohen*
    392 U.S. 83 (1968) ........................................................................................ 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*
    528 U.S. 167 (2000) .................................................................................... 11

*Fulani v. Hogsett*
    917 F.2d 1028 (7th Cir. 1990) ..................................................................... 15

*FW/PBS, Inc. v. Dallas*
    493 U.S. 215 (1990) ...................................................................................... 7

*Gill v. Whitford*
    138 S. Ct. 1916 (2018) ................................................................................ 11

*Gold v. Feinberg*
    101 F.3d 796 (2d Cir. 1996) ........................................................................ 22

*Harlan v. Scholz*
    866 F.3d 754 (7th Cir. 2017) ....................................................................... 21

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982) .................................................................................... 11

*Hendon v. North Carolina State Bd. of Elections*
    710 F.2d 177 (4th Cir.1983) ........................................................................ 22

*Hennings v. Grafton*
    523 F.2d 861 (7th Cir. 1975) ....................................................................... 22

*Hunt v. Washington State Apple Advertising Com'n*
    432 U.S. 333 (1977) .................................................................................... 11

*Johnson v. Hood*
    430 F.2d 610 (5th Cir.1970) ........................................................................ 22

*King v. Whitmer*
    No. CV 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020)1, 14, 16, 24

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*Kokkonen v. Guardian Life Ins. Co.*
   511 U.S. 375 (1994)..................................................................................6

*Lance v. Coffman*
   549 U.S. 437 (2007)............................................................................8, 10

*Largess v. Supreme Jud. Ct. for the State of Mass.*
   373 F.3d 219 (1st Cir. 2004) ..............................................................8, 19

*League of Women Voters of Ohio v. Brunner*
   548 F.3d 463 (6th Cir. 2008)................................................................17

*Lewis v. Casey*
   518 U.S. 343 (1996)...............................................................................7

*Lewis v. Cont'l Bank Corp.*
   494 U.S. 472 (1990)...............................................................................14

*Libertarian Party of Pa. v. Governor of Pa.*
   813 F. App'x 834 (3d Cir. 2020)...........................................................21

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992)...........................................................................7, 19

*Luther v. Borden*
   48 U.S. 7 (1849)....................................................................................13

*Martel v. Condos*
   No. 5:20-cv-131, 2020 WL 5755289 (D. Vt. Sept. 16, 2020).........................9

*Mays v. LaRose*
   951 F.3d 775 (6th Cir. 2020)..................................................................21

*McLain v. Meier*
   851 F.2d 1045 (8th Cir. 1988).................................................................7

*Miller v. Glenn Miller Prods., Inc.*
   454 F.3d 975 (9th Cir. 2006)..................................................................15

*Miller v. Treadwell*
   736 F. Supp. 2d 1240 (D. Alaska 2010) .................................................19

*New York v. United States*
   505 U.S. 144 (1992)...............................................................................13

*Nolles v. State Comm. for Reorg. of Sch. Dists.*
   524 F.3d 892 (8th Cir. 2008)...................................................................9

*Pac. States Tel. & Tel. Co. v. Oregon*
   223 U.S. 118 (1912)...............................................................................12

*Paher v. Cegavske*
   457 F. Supp. 3d 919 (D. Nev. 2020) ...................................................9, 10

iv

*Perry v. Judd*
  840 F. Supp. 2d 945 (E.D. Va.), *aff'd*, 471 F. App'x 219 (4th Cir. 2012)....15

*Piper Aircraft Corp. v. Wag-Aero, Inc.*
  741 F.2d 925 (7th Cir. 1984).....................................................................16

*Powell v. Power*
  436 F.2d 84 (2d Cir.1970)........................................................................22

*Republican Party of Pa. v. Cortes*
  218 F. Supp. 3d 396 (E.D. Pa. 2016)....................................................9, 22

*Reynolds v. Sims*
  377 U.S. 533 84 S. Ct. 1362 (1964) .......................................................13

*Rucho v. Common Cause*
  139 S. Ct. 2484 (2019)..........................................................................9, 12

*Safe Air for Everyone v. Meyer*
  373 F.3d 1035 (9th Cir. 2004)....................................................................6

*Soules v. Kauaians for Nukolii Campaign Comm.*
  849 F.2d 1176 (9th Cir. 1988)..................................................................17

*Spokeo, Inc. v. Robins*
  136 S. Ct. 1540 (2016)...............................................................................7

*Stein v. Cortes*
  223 F. Supp. 3d 423 (E.D. Pa. 2016)........................................................10

*SW Voter Registration Educ. Project v. Shelley*
  344 F.3d 914 (9th Cir. 2003)....................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
  551 U.S. 308 (2007)...................................................................................6

*Toney v. White*
  488 F.2d 310 (5th Cir. 1973)....................................................................16

*U.S. Parole Comm'n v. Geraghty*
  445 U.S. 388 (1980).................................................................................13

*U.S. v. Ritchie*
  342 F.3d 903 (9th Cir. 2003)......................................................................6

*United States v. Richardson*
  418 U.S. 166 (1974)...................................................................................8

*White v. Lee*
  227 F.3d 1214 (9th Cir. 2000)................................................................5, 6

*Wood v. Raffensperger*
  981 F.3d 1307 (11th Cir. 2020)................................................................14

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*Wood v. Raffensperger*
    No. 1:20-cv-04651-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20,
    2020), *aff'd,* 981 F.3d 1307 (11th Cir. 2020)..............................16

*Wood v. Raffensperger*
    No. 1:20-cv-5155, 2020 WL 7706833 (N.D. Ga. 2020) ................9

## U.S. CONSTITUTION

U.S. Const. art. I, § 4, cl. 1 .....................................................................4, 8

U.S. Const. art. II, § 1, cl. 2.........................................................................8

U.S Const. art. III .........................................................................................6

U.S. Const. art. III, § 2, cl. 1. ......................................................................7

U.S. Const. art. IV, § 4...........................................................................4, 12

U.S. Const. amend. XIV, § 1 ........................................................................4

## FEDERAL STATUTES

3 U.S.C. § 6 ...................................................................................................3

3 U.S.C. § 7 ...................................................................................................4

3 U.S.C. § 15 .................................................................................................5

42 U.S.C. § 1983..........................................................................................17

Fed. R. Civ. P. 8...........................................................................................20

Fed. R. Civ. P. 8(a)(2)..................................................................................18

Fed. R. Civ. P. 12(b)(1)......................................................................2, 5, 17

Fed. R. Civ. P. 12(b)(6)....................................................................3, 6, 18

## STATE STATUTES

Cal. Code Civ. Proc. § 35............................................................................20

Cal. Elec. Code §§ 6904-06 .........................................................................4

Cal. Elec. Code § 2194 ...............................................................................24

Cal. Elec. Code § 2300(a)(9)(B) ................................................................12

1  Cal. Elec. Code § 13314(a)(2)...................................................................20

2  Cal. Elec. Code §§ 15300-15376..................................................................3

3  Cal. Elec. Code § 15360...........................................................................23

4  Cal. Elec. Code §§ 15365-15367................................................................23

5  Cal. Elec. Code § 15372.............................................................................3

6  Cal. Elec. Code § 15400.............................................................................4

7  Cal. Elec. Code § 15503.............................................................................4

8  Cal. Elec. Code § 15505.............................................................................4

9  Cal. Elec. Code § 15620(a).........................................................................3

10  Cal. Elec. Code § 16003.......................................................................4, 14

11  Cal. Elec. Code § 16401...........................................................................14

12  Cal. Elec. Code § 16401(c).........................................................................3

13  Cal. Elec. Code § 17300...........................................................................23

14  Cal. Elec. Code § 17300 *et. seq.*...............................................................5

15  Cal. Elec. Code § 17306...........................................................................23

16  Cal. Elec. Code § 19100 *et seq.*..............................................................24

17  Cal. Gov't Code § 6254............................................................................24

18
19 **OTHER AUTHORITIES**

20  CDC, *Polling Locations and Voters* (Oct. 29, 2020) ...........................................21

21  Certificate of Ascertainment for Electors of President and Vice President of the
22      United States of America (December 5, 2020)..............................................3

23  Certificate of the Secretary of State, Alex Padilla
        (December 11, 2020) .....................................................................4

24  Orange County, CA Elections to Conduct Risk Limiting Audit of Presidential
25      General Election Results (November 8, 2020) ...........................................23

26  Voting Technologies Approved for Use in California (as of December 15, 2020) 24

27
28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3     The November 3, 2020 Presidential General Election is over—and it has been

4  over for several weeks.  Some 17.5 million Californians cast their votes more than

5  three months ago.  In early December, county registrars across California duly

6  counted and certified those votes, as did the California Secretary of State.  Governing

7  boards and the California Legislature then declared local and state contest results

8  throughout the state.  Less than one month later, a joint session of Congress performed

9  its ministerial role of accepting and tabulating the presidential electors for each state

10  in the country.  With the winners of the presidential and other contests decided,

11  victorious candidates took their oaths and assumed their new roles.

12     And yet, Plaintiffs—a non-profit corporation and certain unsuccessful

13  California Congressional candidates—now seek to nullify the will of the people of

14  California.  And they do so by repackaging speculative fraud and voting irregularity

15  claims that have already been debunked and rejected by state and federal courts across

16  the country.[1]  Although court after court has summarily rejected these same

17  arguments, Plaintiffs assert them again here, making no effort to substantiate their

18  claims or cure their many deficiencies—because they cannot.  Plaintiffs' claims must

19  fail.

20     *First*, Plaintiffs lack Article III standing, having failed to articulate a cognizable

21  injury for any of their causes of action or relief that would redress their alleged injury.

22  Rather, Plaintiffs assert little more than speculation and conjecture in their attempt to

23  disenfranchise an entire state of voters.  Though difficult to discern from the

24  complaint, Plaintiffs appear to claim that, due to alleged "irregularities" in the conduct

25

26

_____

27  [1] *See, e.g., Donald J. Trump for President, Inc. v. Sec'y Commonwealth of Penn.*, 830
   Fed. Appx. 377 (3d Cir. 2020); *Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020

28  WL 7238261 (D. Ariz. Dec. 9, 2020); *King v. Whitmer*, No. CV 20-13134, 2020 WL
   7134198 (E.D. Mich. Dec. 7, 2020).

1

1  of the election, some votes cast in a random smattering of counties may have been
2  diluted by illegal votes or by suspected vote tally changes.  But Plaintiffs do not
3  contend that any such irregularities could have impacted the outcome of any electoral
4  contests, making clear they have no concrete or particularized injury.  And even if
5  they did allege a cognizable injury, this Court could not redress it through the
6  evidence preservation, private audit, and de-certification of state-wide election results
7  that Plaintiffs seek.  Further, Plaintiffs' Guarantee Clause claim is non-justiciable
8  based on clear U.S. Supreme Court precedent.  And, having filed this lawsuit many
9  weeks after the close of voting and certification of the election—and after expiration
10  of all statutory deadlines for filing challenges to those contests—Plaintiffs' claims are
11  plainly moot.  Consequently, this Court lacks subject matter jurisdiction to entertain
12  Plaintiffs' claims, and it must dismiss them under Federal Rule of Civil Procedure
13  12(b)(1).

14      *Second*, Plaintiffs' claims are barred by the doctrine of laches and principles of
15  equity.  As in parallel cases across the country, Plaintiffs were aware of claims of
16  alleged irregularities by Election Day, and with respect to many of the laws they
17  challenge, years before.  Yet Plaintiffs give no reason, much less a legitimate one, for
18  sitting on their claims.  Plaintiffs now ask this Court to allow their private "experts" to
19  conduct an invasive audit of highly sensitive election administration infrastructure and
20  material with the aim of invalidating election results across the State of California—a
21  dangerous and unprecedented request.  The County Defendants—and the public—
22  would suffer overwhelming prejudice should such a request be granted.

23      *Third*, Plaintiffs fail to state any claim for relief against the County Defendants.
24  Their allegations about election irregularities amount to little more than a list of
25  scattershot idiosyncrasies in the elections process that have no bearing on the
26  Elections or Guarantee Clauses, and that in no way infringe on Plaintiffs' Equal
27  Protection and Due Process rights.  Despite these glaring deficiencies, Plaintiffs ask
28  this Court to grant them the extraordinary right to conduct a wholesale audit of the

1  County Defendants' election apparatuses as a step toward disenfranchising California

2  voters.  Such relief is plainly out of proportion to the alleged injury (which does not

3  exist) and should not be granted.  For all these reasons, Plaintiffs' claims fail under

4  Federal Rule of Procedure 12(b)(6) as well.

5      The Court should dismiss this action with prejudice, as there is no way for

6  Plaintiffs to remedy the many deficiencies in their complaint.

7                    **II.    FACTUAL & PROCEDURAL HISTORY**

8      By the close of voting on November 3, 2020, approximately 17.5 million

9  Californians had cast their votes in the Presidential General Election.  Over the next

10  30 days, county registrars across the State completed their official canvass, processing

11  and adjudicating ballots and completing their State-mandated audits of the tallied

12  results using either a one-percent manual tally or a risk-limiting audit.  *See* Cal. Elec.

13  Code §§ 15300-15376.  By December 3, 2020, the county registrars of voters across

14  the state certified their election results, completing their role in administering the

15  election.  Cal. Elec. Code § 15372.

16      Plaintiffs did not file an election contest or request a recount in any of the

17  County Defendant jurisdictions or statewide.  Under California law, recount requests

18  by voters must be made within five days after certification—in this case, by December

19  8, 2020.  Cal. Elec. Code § 15620(a).  Election contests involving presidential electors

20  had to have been filed within 10 days of the results being declared, which California

21  Governor Newsom did on December 5, 2020.[2]  Cal. Elec. Code § 16401(c); 3 U.S.C. §

22  6.  However, because such contests must be resolved "at least six days before the first

23  Monday after the second Wednesday in December," those contests also had to have

24  ///

25

26

27  [2] Certificate of Ascertainment for Electors of President and Vice President of the
    United States of America (December 5, 2020),

28  https://www.archives.gov/files/electoral-college/2020/ascertainment-california.pdf
    (last accessed February 8, 2021).

1    been filed by December 8, 2020.  Cal. Elec. Code § 16003.  Plaintiffs filed no such

2    challenges.

3          On December 11, 2020, the Secretary of State certified the statewide results.[3]

4    Cal. Elec. Code §§ 15503, 15505.  California's presidential electors then met and cast

5    their electoral votes on December 14, 2020, as did electors in states across the nation.

6    3 U.S.C. § 7; Cal. Elec. Code §§ 6904-06.  Meanwhile, governing boards across the

7    state—from school districts to the state assembly—declared the results of the election,

8    and new local and state officeholders took their oaths of office.  Cal. Elec. Code §

9    15400.

10         On January 4, 2021, many weeks after local and state authorities certified and

11   declared the election results, Plaintiffs—a non-profit corporation and ten registered

12   California voters who were unsuccessful Congressional candidates, Dkt. 1, ¶¶ 14-24—

13   filed this action.  Plaintiffs sued California's Governor, Secretary of State, Attorney

14   General, and the Registrars of Voters for thirteen of the State's 58 counties.[4]  *Id.*, ¶¶

15   25–40.

16         Plaintiffs allege that all Defendants violated: (1) the Elections Clause, U.S.

17   Const. art. I, § 4, cl. 1; (2) the Equal Protection Clause, U.S. Const. amend. XIV, § 1;

18   (3) the Due Process Clause, U.S. Const. amend. XIV, § 1; and (4) the Guarantee

19   Clause, U.S. Const. art. IV, § 4.  In their Prayer for Relief, Plaintiffs seek preservation

20   of a wide range of election-related materials; de-certification of the November 2020

21   election; declaratory judgments finding unconstitutional several California statutes,

22

23   _____

24   [3] Certificate of the Secretary of State, Alex Padilla (December 11, 2020).
     https://elections.cdn.sos.ca.gov/sov/2020-general/sov/17-cert.pdf (last accessed
25   February 8, 2021).

26   [4] The thirteen named Registrars of Voters are the county elections officials for the
     Counties of Alameda, Contra Costa, Fresno, Los Angeles, Monterey, Orange,
     Riverside, Sacramento, San Benito, San Bernardino, Santa Clara, Santa Cruz, and
27   Ventura.  County of Santa Clara Registrar of Voters Shannon Bushey submits this
     memorandum of authorities on behalf of all County Defendants, except for Monterey,
28   which is contesting proper service of Plaintiffs' Complaint.

1  executive orders, regulations, and procedures for election observers; costs; and
2  attorney's fees.  Dkt. 1, Prayer, ¶¶ A–G.

3      The day after filing this action, and before properly serving most Defendants,
4  Plaintiffs filed an application for a temporary restraining order and an order to show
5  cause why a preliminary injunction should not issue, seeking preservation of two
6  dozen categories of highly sensitive election administration-related infrastructure,
7  records, security access tokens, passwords, and other materials, and the right to audit
8  that evidence using Plaintiffs' own "experts."  Dkt. 21, pp. 3-7.

9      On January 6, 2021, a joint session of the U.S. Congress performed its
10  ceremonial role of counting those electoral votes and confirming that Joseph R. Biden,
11  Jr. had won the presidency.  3 U.S.C. § 15.  In the following days, due to improper
12  service, Defendants from the State and the Registrars of the Counties of Orange, San
13  Bernardino, Fresno, Santa Clara, and Riverside specially appeared to oppose
14  Plaintiffs' temporary restraining order application.  Dkt. 27, 28, 29, 31, 32, 33.

15      On January 11, 2021, this Court denied in its entirety Plaintiffs' application and
16  request for an order to show cause why a preliminary injunction should not issue.  The
17  Court found that Plaintiffs failed to demonstrate irreparable injury as they presented
18  no "valid reason or need to order Defendants not to destroy evidence" since
19  Defendants were already required to preserve evidence under both California
20  Elections Code section 17300 *et. seq.* and federal law.  Dkt. 35, pp. 3-4.

21      On January 20, 2021, President Biden assumed his new role.  A week later,
22  Plaintiffs, the State Defendants, and the County Defendants stipulated to a common
23  responsive pleading deadline of February 12, 2021.  Dkt. 39.

24              **III.   LEGAL STANDARD**

25      Under Rule 12(b)(1), a court must dismiss a case if it lacks subject matter
26  jurisdiction.  Rule 12(b)(1) attacks can be facial or factual.  *White v. Lee*, 227 F.3d
27  1214, 1242 (9th Cir. 2000).  Facial attacks require the defendants to show that the
28  allegations in a complaint are "insufficient on their face to invoke federal

1   jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

2   Factual attacks require the defendants to challenge "the truth of the allegations that, by

3   themselves, would otherwise invoke federal jurisdiction." *Id.* A factual attack allows

4   a court to "look beyond the complaint to matters of public record," and it "need not

5   presume the truthfulness of the plaintiffs' allegations." *Lee*, 227 F.3d at 1242. The

6   plaintiffs bear the burden of establishing subject matter jurisdiction. *See Kokkonen v.*

7   *Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994).

8         A court must also grant a motion to dismiss under Federal Rule of Civil

9   Procedure 12(b)(6) if a plaintiff fails to allege "enough facts to state a claim to relief

10  that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

11  (2007). The plaintiff must sufficiently plead each required element of a cause of

12  action. *Ashcroft v. Iqbal*, 556 U.S. 662, 675–77 (2009). Although courts considering

13  a motion to dismiss must draw reasonable inferences in the plaintiff's favor,

14  "pleadings that, because they are no more than conclusions, are not entitled to the

15  assumption of truth." *Iqbal*, 556 U.S. at 679. "[L]abels and conclusions" are

16  insufficient, and "a formulaic recitation of the elements of a cause of action will not

17  do." *Twombly*, 550 U.S. at 555. A court must disregard conclusory allegations and

18  "draw on its judicial experience and common sense" to make a context-specific

19  determination as to whether a complaint states a plausible claim. *Iqbal*, 556 U.S. at

20  679. When ruling on a 12(b)(6) motion, courts must consider the complaint "in its

21  entirety," including documents incorporated into the complaint by reference. *Tellabs,*

22  *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Courts may also

23  consider matters of judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

24                              **IV.   LEGAL ARGUMENT**

25      **A.   Plaintiffs Lack Standing to Assert Any of Their Claims**

26         Plaintiffs' action must be dismissed because they lack Article III standing to

27  pursue any of the causes of action they assert. Article III of the Constitution restricts

28  federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2,

1  cl. 1.  "The purpose of the standing requirement is to ensure that the parties have 'such

2  a personal stake in the outcome of the controversy as to assure that concrete

3  adverseness which sharpens the presentation of issues upon which the court so largely

4  depends for illumination of difficult constitutional questions.'"  *McLain v. Meier*, 851

5  F.2d 1045, 1048 (8th Cir. 1988) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

6  To establish standing, a plaintiff must demonstrate (1) that he suffered an injury in

7  fact—i.e., an invasion of a legally protected interest that is both concrete and

8  particularized, as well as actual or imminent, not conjectural or hypothetical; (2) that

9  there is a causal connection between the injury and the conduct complained of, such

10  that the injury is fairly traceable to the challenged action of the defendant; and (3) that

11  the injury will likely be redressed by a favorable decision.  *See Lujan v. Defenders of*

12  *Wildlife*, 504 U.S. 555, 560–61 (1992).

13      Standing is not dispensed in gross.  *See Davis v. FEC*, 554 U.S. 724, 734

14  (2008); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).  While not all Plaintiffs need to

15  demonstrate standing to pursue all causes of action, at least one Plaintiff "must

16  demonstrate standing for each claim [they] seek[] to press" and for "each form of

17  relief sought."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation

18  omitted).  Plaintiffs bear the burden of demonstrating Article III standing.  *See*

19  *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

20              **i.      Plaintiffs Fail to Demonstrate Injury-In-Fact**

21      To demonstrate the first prong, "injury in fact," the injury must be

22  "particularized," such that it "affect[s] the plaintiff in a personal and individual

23  way."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citations omitted).  The

24  injury also must be "concrete,"—i.e., it must be "real" and not "abstract."  *Id*.  A

25  plaintiff cannot show a particularized and concrete injury by showing "that he has

26  merely a general interest common to all members of the public."  *Ex parte Levitt*, 302

27  U.S. 633, 634 (1937).  A plaintiff also may not use a "federal court as a forum in

28  which to air his generalized grievances about the conduct of government."  *United*

1    *States v. Richardson*, 418 U.S. 166, 174 (1974) (quoting *Flast v. Cohen*, 392 U.S. 83,
2    106 (1968)).  But that is precisely what Plaintiffs have done.

3          First, the plain text of the Guarantee Clause provides a guarantee *to the states*
4    and does not confer upon individuals or organizations standing to pursue any rights
5    *against* a state or, by extension, political subdivisions of a state (or their officials).
6    *See Largess v. Supreme Jud. Ct. for the State of Mass.*, 373 F.3d 219, 224 n.5 (1st Cir.
7    2004) (per curiam).  As such, Plaintiffs have no basis to assert a Guarantee Clause
8    claim.

9          Second, the Elections Clauses vest authority in "the Legislature" of each state to
10   regulate congressional and presidential elections.  U.S. Const. art. I, § 4, cl.1, art. II, §
11   1, cl. 2.  The U.S. Supreme Court has held that private citizens do not have standing to
12   assert a claim under the Elections Clauses absent a "particularized stake in the
13   litigation." *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (claims that are "plainly
14   undifferentiated and common to all members of the public" are generalized grievances
15   that do not confer standing).  Plaintiff EIPCa surely does not have such a stake.  But
16   neither do the individual plaintiffs who were congressional candidates in the
17   November 2020 election, Dkt. 1 ¶¶15–24, as they have failed to assert that the
18   outcome of their individual congressional contests would have changed due to
19   sufficient vote counting errors.  *See Bognet v. Secretary Commonwealth of*
20   *Pennsylvania,* 980 F.3d 336, 351 (3d Cir. 2020) (holding candidate did not have
21   standing to raise Elections Clause challenge to state law regarding absentee ballot
22   timeliness rules without allegations that later arriving ballots were more likely to be
23   cast for his opponent).  Rather, the complaint focuses on the Presidential contest, for
24   which none of the Plaintiffs have a particularized stake distinct from any other
25   California voter.

26         Third, regarding Plaintiffs' final two causes of action, courts have consistently
27   held that individual voters lack standing to bring an Equal Protection or Due Process
28   Clause claim for vote dilution due to unlawful or invalid ballots.  *See Wood v.*

8

1    *Raffensperger*, No. 1:20-cv-5155, 2020 WL 7706833, at *3 (N.D. Ga. 2020)

2    (collecting cases); *see also Rucho v. Common Cause*, 139 S. Ct. 2484, 2501

3    (2019) ("'[V]ote dilution' in the one-person, one-vote cases refers to the idea that each

4    vote must carry equal weight.").  As one court recently observed in dismissing similar

5    claims brought by the campaign for former President Trump, "the claimed injury of

6    vote dilution … is too speculative to be concrete" because the same alleged injury

7    could be claimed by any voter in the state.  *See Donald J. Trump for President v.*

8    *Boockvar*, No. 2:20-cv-966, 2020 WL 5997680, at *32 (W.D. Penn. Oct. 10, 2020);

9    *see also Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 406–07 (E.D. Pa.

10   2016) (rejecting vote-dilution claim premised "on speculation that fraudulent voters

11   may be casting ballots elsewhere" in the state).  Rather, vote dilution amounts to a

12   general grievance that cannot support a finding of particularized injury, as required by

13   Article III.  *See Donald Trump for President, Inc. v. Cegavske*, No. 2:20-cv-1445 JCM

14   (VCF), 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020) ("[P]laintiffs' claims of a

15   substantial risk of vote dilution 'amount to general grievances that cannot support a

16   finding of particularized injury.'"); *see also Martel v. Condos*, No. 5:20-cv-131, 2020

17   WL 5755289, at *4 (D. Vt. Sept. 16, 2020) (rejecting vote-dilution theory as

18   conferring standing because it constituted a generalized grievance); *Paher v.*

19   *Cegavske*, 457 F. Supp. 3d 919, 926–27 (D. Nev. 2020) (noting that because

20   "ostensible election fraud may conceivably be raised by any Nevada voter," the

21   plaintiffs' "purported injury of having their votes diluted" does not "state a concrete

22   and particularized injury"); *Nolles v. State Comm. for Reorg. of Sch. Dists*., 524 F.3d

23   892, 900 (8th Cir. 2008) (concluding that voters lacked standing to pursue substantive

24   due process claim based on alleged violation of right to a free and fair election

25   because they did not demonstrate a particularized injury).

26       Plaintiffs' limited allegations that vote tallies were more likely to change in

27   favor of President Biden as counties adjudicated ballots and finalized results, Dkt. 1,

28   ¶¶ 107, 109, 113, 114, do not transform their generalized grievances into a

particularized injury.  Plaintiffs are not representatives of the allegedly aggrieved candidate (former President Trump),[5] have failed to allege irregularities that would change the outcome, and have alleged no protected class of voters who they claim had their votes diluted.  Plaintiffs have identified no voters who were deprived of the right to vote, nor any voters who illegally submitted a vote-by-mail ballot.  Any so-called "dilution" could not amount to an injury, because the impact of the alleged "irregularities" would have an infinitesimal impact on the value of individual votes in the presidential contest, which would be felt by all California voters equally.  At base, Plaintiffs' allegations amount to an alleged incremental undermining of confidence in the election results.  Such a "generalized grievance" is insufficient for Article III standing.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. at 344 (standing lacking where plaintiff "suffers in some indefinite way in common with people generally"); *see, e.g.*, *Paher v. Cegavske*, 457 F. Supp. 3d at 926 (voters' speculation that all-mail election would increase fraud, diluting their votes, was a generalized grievance, insufficient to confer standing); *Stein v. Cortes*, 223 F. Supp. 3d 423, 432–33 (E.D. Pa. 2016) (candidate's speculation that election's integrity was compromised was too generalized to support standing); *Lance v. Coffman*, 549 U.S. at 441–42 (claims that are "plainly undifferentiated and common to all members of the public" are generalized grievances that do not confer standing).

    For the same reasons that individual voters do not have standing to pursue these claims, EIPCa has also failed to demonstrate an injury in fact under either organizational or associational standing.  To demonstrate an injury to the organization, EIPCa would need to demonstrate that the actions of Defendants have caused a "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources" that is "more than simply a setback

---

[5] The individual Plaintiffs who lost their Congressional races do not contend that the outcomes of their own races were impacted by vote dilution.  Dkt. 1.

to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  The complaint does not—and could not—identify any such injury to the organization when the injury alleged is generalized vote dilution. Further, in order for an association to have standing to bring suit on behalf of its members, the association must demonstrate that "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Advertising Com'n,* 432 U.S. 333, 343 (1977)).  EIPCa does not even attempt to establish that it has either of these bases for standing: it fails to identify its members or allege that its members have been injured to lay the foundation for organizational or associational standing.  But even if it did include these basic assertions, such allegations would fail to establish standing because generalized grievances are insufficient.

### ii. Plaintiffs' Alleged Injury is Not Redressable by the Relief Sought

Turning to the final prong of the standing analysis, Plaintiffs' purported injury for all four causes of action—vote dilution—would not be remedied by the relief sought. *See Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. at 353.  Denying the right to vote to millions of Californians by decertifying the election, Dkt. 1, Prayer, ¶ C, would not remedy the alleged vote dilution.  Instead, it would reduce the value of all votes cast to zero, delegitimizing every Californian's vote.  Also, as more fully explained below in addressing how Plaintiffs' claims are moot, the time to challenge the election results has long since passed.  The election is over, and the results must stand.

1    The declaratory relief Plaintiffs seek also would not redress the injury alleged.

2    Plaintiffs' request for a declaratory judgment that the "restrictions imposed on citizen

3    observers by Defendant County Registrars during and after the November 2020

4    election" are unconstitutional, Dkt. 1, Prayer, ¶ D(e), is vague and overbroad.

5    Moreover, the California Elections Code provides reasonable limits on election

6    observers to protect the integrity of the process and permit election officials to

7    complete their work.  *See* Cal. Elec. Code § 2300(a)(9)(B).  Also, it is unclear how the

8    declaratory relief sought—a forward-looking remedy—would directly redress the

9    purported injury of vote dilution in the already passed election.  Finally, Plaintiffs'

10   request for the County Defendants to preserve evidence, and unprecedented efforts to

11   seek a burdensome and duplicative audit of that evidence by their own "experts,"

12   provides no relief to remedy their purportedly diluted votes since the results of the

13   past election will not change.

14   In sum, Plaintiffs lack Article III standing.  Consequently, this Court has no

15   jurisdiction over this action and the complaint should be dismissed in its entirety.

16   **B.    Plaintiffs' Guarantee Clause Claim is Nonjusticiable**

17   Plaintiffs attempt to assert a cause of action under the U.S. Constitution's

18   Guarantee Clause, which provides that "[t]he United States shall guarantee to every

19   State in this Union a Republican Form of Government," U.S. Const. art. IV, § 4, also

20   fails.  The U.S. Supreme Court has repeatedly held that claims under the Guarantee

21   Clause are nonjusticiable, political questions reserved to disputes among the political

22   branches.  *See Rucho v. Common Cause,* 139 S. Ct. at 2506 ("This Court has several

23   times concluded, however, that the Guarantee Clause does not provide the basis for a

24   justiciable claim."); *City of Rome v. United States*, 446 U.S. 156, 182 n.17 (1980)

25   (declining to reach Guarantee Clause claim because it is nonjusticiable); *Baker

26   v. Carr*, 369 U.S. at 209 ("complaints based on that clause have been held to present

27   political questions which are nonjusticiable."); *Pac. States Tel. & Tel. Co. v. Oregon*,

28   223 U.S. 118, 147–51 (1912) (finding Guarantee Clause claims regarding state law

12

1    permitting referendum nonjusticiable); *Luther v. Borden*, 48 U.S. 7 (1849) (case of

2    first impression finding claims under the Guarantee Clause nonjusticiable).

3    Consequently, Plaintiffs are barred from asserting a claim under the Guarantee

4    Clause.[6]

5    **C.    Plaintiffs' Claims Are Moot**

6         Plaintiffs' complaint suffers from other fatal deficiencies as well.  Having filed

7    this action weeks after the close of the election, Plaintiffs' claims are moot.  In

8    essence, Plaintiffs seek to reverse the General Presidential Election results by asking

9    the Court to order the State Defendants to de-certify the election results and the

10   County Defendants to preserve—and withhold from using in their upcoming March

11   and May elections—an exceedingly wide range of machinery, materials, and

12   information related to county election administration.  Dkt. 1, Prayer, ¶¶ A–C.

13   Although not styled as a request for relief, Plaintiffs also request an audit of the

14   Counties' election infrastructure "to determine the extent and effect of the

15   irregularities and fraud" it alleges.  Dkt. 1, ¶¶ 140–43.  But there is no "live" case or

16   controversy regarding the November 2020 Presidential General Election—which

17   came to a close months ago—nor relief available.  *See U.S. Parole Comm'n v.*

18   *Geraghty*, 445 U.S. 388, 396, 410 (1980).

19        Under the California Elections Code, a contest of the election of presidential

20   electors must be brought in time for judgment to "be rendered at least six days before

21   the first Monday after the second Wednesday in December."  Cal. Elec. Code

22

23   _____

24   [6] Various courts have suggested that there may be limited circumstances in which a
     claim may be pursued under the Guarantee Clause.  *See, e.g. New York v. United*

25   *States*, 505 U.S. 144, 185 (1992); *Reynolds v. Sims*, 377 U.S. 533, 582, 84 S. Ct.
     1362(1964) (concluding that "*some* questions raised under the Guarant[ee] Clause are

26   nonjusticiable") (emphasis added).  But the Supreme Court has not squarely addressed
     "this difficult question."  *New York*, 505 U.S. at 185.  And any uncertainty in the

27   doctrine is irrelevant here because Plaintiffs have provided no basis to believe that this
     case would be the rare exception to this doctrine.  And in any event, Plaintiffs lack

28   standing to pursue their Guarantee Clause claim.

1  § 16003.  For the November 2020 Presidential General Election, that deadline was

2  December 8, 2020.  California Governor Newsom declared the results of the

3  Presidential electors on December 5, 2020, which means that Plaintiffs could have,

4  and should have, filed any related action between December 5, 2020 and December 8,

5  2020.  Cal. Elec. Code § 16401.  They did not do so.  Instead, Plaintiffs seek to undo

6  the results of a Presidential General Election via a complaint improperly served on

7  January 4, 2021, about an election that was certified weeks earlier, based on statutory

8  deadlines that have been in place for years.

9     This case is plainly moot as there is no "live" controversy for the Court to

10  decide.  *See Deakins v. Monaghan*, 484 U.S. 193, 199 (1988); *Already, LLC v. Nike,*

11  *Inc.*, 568 U.S. 85, 91 (2013).  As the Eleventh Circuit explained in a similar post-

12  certification challenge, the Court "cannot turn back the clock and create a world in

13  which the 2020 election results are not certified."  *Wood v. Raffensperger*, 981 F.3d

14  1307, 1317 (11th Cir. 2020) (internal quotation marks omitted).  Because de-

15  certification is not possible,[7] the other relief Plaintiffs seek would be "meaningless."

16  *Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 WL 7238261, at *12 (D. Ariz.

17  Dec. 9, 2020); *King v. Whitmer*, No. CV 20-13134, 2020 WL 7134198, at *5 (E.D.

18  Mich. Dec. 7, 2020) ("[T]he evidence Plaintiffs seek to gather by inspecting voting

19  machines and software and security camera footage only would be useful if an avenue

20  remained open for them to challenge the election results.").  This Court accordingly

21  lacks subject matter jurisdiction and should dismiss the case.  *Lewis v. Cont'l Bank*

22  *Corp.*, 494 U.S. 472, 477 (1990).

23  ///

24

25

26  [7] In addition to Plaintiffs' claims being moot, this Court lacks the authority to de-
certify state election results.  *See Bowyer*, 2020 WL 7238261, at *11 ("[I]f de-

27  certification were possible, it would only be possible through an action brought in
[state] superior court … This [federal] Court has no power to de-certify the results.")

28

**D.   Plaintiffs' Claims Are Barred by Laches and Principles of Equity**

Plaintiff's claims are also barred by the doctrine of laches.  To establish laches, a defendant must show that a plaintiff unreasonably delayed in filing suit, causing prejudice to the defendant or the administration of justice.  *Danjaq LLC v. Sony Corp*., 263 F.3d 942, 951–52 (9th Cir. 2001).  In the elections context, courts have strongly disfavored delays in bringing lawsuits during an election cycle, much less after one. *Perry v. Judd*, 840 F. Supp. 2d 945, 950 (E.D. Va.), *aff'd*, 471 F. App'x 219, 227 (4th Cir. 2012) ("The Supreme Court has repeatedly expressed its disapproval of such disruptions."); *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) ("In the context of elections, … any claim against a state electoral procedure must be expressed expeditiously.").

Plaintiffs sat on their claims for weeks, without any legitimate reason. Plaintiffs waited one month after California's presidential electors cast their electoral votes (December 14, 2020)—and two months after the close of voting (November 3, 2020)—to (improperly) file their complaint.  By their own admission, Plaintiffs knew of their claims by the close of voting on November 3, 2020 at the very latest.  Dkt. 1, ¶¶ 95–103 (alleging impediments to in-person election observation as early as October 31, 2020), 105-116 (alleging in-person voting irregularities).[8]  And their general allegations about Dominion and Smartmatic voting systems are rooted in claims made by "multiple entities" dating as far back as 2016.  Dkt. 1, ¶¶ 127–37.  And yet Plaintiffs proffered no explanation, much less a "legitimate excuse," for their delay in filing this action.  *See Miller v. Glenn Miller Prods., Inc*., 454 F.3d 975, 997 (9th Cir. 2006).

Such a significant delay in filing this lawsuit undoubtedly caused prejudice to the County Defendants and to the administration of justice.  While Plaintiffs slept on

---

[8] What is more, the statutes that Plaintiffs challenge have been in effect for many years—and in some cases, decades.  *See* Dkt. 1, ¶¶ 47–64.

1   their rights, *Piper Aircraft Corp. v. Wag-Aero, Inc*., 741 F.2d 925, 939 (7th Cir. 1984)

2   (Posner, J., concurring), millions of Californians cast their votes.  Dkt. 1, ¶ 66.  The

3   County Defendants and the remaining California counties tabulated and certified those

4   votes, the Secretary of State certified the election results on behalf of the electorate of

5   the entire state (as did states across the country), newly elected state and local officials

6   took office, and the Electoral College met to tabulate the votes for the next President.

7   Dkt. 1, ¶¶ 13, 117.  The relief Plaintiffs now seek, long after the close of the election,

8   "would be extreme, and entirely unprecedented."  *Bowyer v. Ducey*, 2020 WL

9   7238261, at *11; *SW Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919

10  (9th Cir. 2003) ("Interference with impending elections is extraordinary, ... and

11  interference with an election after voting has begun is unprecedented."); *see also*

12  *King*, 2020 WL 7134198, at *7 (barring an "after the fact" lawsuit alleging similar

13  claims of widespread voter irregularities and fraud due to laches, among other

14  grounds).  Moreover, interfering with election results months after their closure would

15  "harm the public in countless ways."  *Wood v. Raffensperger*, No. 1:20-cv-04651-

16  SDG, 2020 WL 6817513, at *13 (N.D. Ga. Nov. 20, 2020), *aff'd,* 981 F.3d 1307 (11th

17  Cir. 2020).

18        Plaintiffs' claims should also be rejected under basic principles of equity.

19  Plaintiffs seemingly waited until the outcome of the election was clear, and other

20  attempts to reverse that outcome had failed, to claim election irregularities and fraud.

21  Only then—despite their allegations being rooted in actions taken weeks before,

22  Dkt. 1, ¶¶ 95–103, 105–16—did they sue to invalidate the outcome and disenfranchise

23  all California voters.  Nor did they follow the State's clear provisions for bringing

24  election contests.  This gamesmanship should not be tolerated.  *See, e.g.*, *Toney v.*

25  *White*, 488 F.2d 310, 314 (5th Cir. 1973) ("[T]he failure to require prompt pre-

26  election action … as a prerequisite to post-election relief may permit, if not

27  encourage, parties who could raise a claim to lay by and gamble upon receiving a

28  favorable decision of the electorate and then, upon losing, seek to undo the ballot

1  results in a court action.") (internal quotation marks omitted)).  Plaintiffs' claims are

2  barred by laches as well as principles of equity and cannot be allowed to proceed.

3  **E.    Plaintiffs Fail to State a Claim for Relief**

4  For all the reasons above, this Court should dismiss Plaintiffs' complaint

5  pursuant to Federal Rule of Civil Procedure 12(b)(1).  But if this Court were to reach

6  the merits of Plaintiffs' complaint (which it need not do), Plaintiffs' claims are equally

7  unavailing and should be dismissed.

8  Plaintiffs bring suit pursuant to 42 U.S.C. § 1983, alleging Equal Protection and

9  Due Process Clause violations, as well as violations under the Elections Clause and

10  Guarantee Clause.  Dkt. 1, ¶¶ 144-75.  To state a claim for a civil rights violation

11  pursuant to Section 1983, a plaintiff must allege that he or she was deprived of a right

12  secured by the U.S. Constitution or the laws of the United States, and that this

13  deprivation occurred at the hands of someone acting under the color of state law.

14  *League of Women Voters of Ohio v. Brunner,* 548 F.3d 463, 475 (6th Cir. 2008).  But

15  "[i]t is hornbook law that Section 1983 does not provide a right of action for 'garden

16  variety election irregularities.'"  *Soules v. Kauaians for Nukolii Campaign Comm.*,

17  849 F.2d 1176, 1183 (9th Cir. 1988) (citation omitted).  "Only a pervasive error which

18  undermines the 'organic processes' of the ballot is sufficient to trigger constitutional

19  scrutiny."  *Id.* (citation omitted).

20  As discussed, *infra*, Plaintiffs cannot establish that the County Defendants

21  performed any action under color of state law which deprived Plaintiffs of any right,

22  privilege, or immunity granted them under the Constitution or under federal law.

23  Plaintiffs' allegations—many of which do not address actions or omissions of the

24  County Defendants and instead are a smattering of allegations arising from other

25  jurisdictions—operate merely to cast aspersions on third party vendors not before this

26  ///

27  ///

28  ///

1    court and are largely untethered from the causes of action asserted.  Even if true, the

2    allegations would not entitle Plaintiffs to the sweeping relief requested.[9]  While

3    Plaintiffs purport to assert each cause of action against all Defendants, the core factual

4    allegations against County Defendants related to election observers and election

5    security are more clearly asserted as violations of the Equal Protection and Due

6    Process Clauses.  In both instances, Plaintiffs fail to plead a violation of either

7    constitutional provision.  Similarly, the Elections Clause does not provide a cause of

8    action for the allegations Plaintiffs assert, and Plaintiffs do not plead a cognizable

9    claim under the Guarantee Clause.  Therefore, this Court should dismiss the action

10   pursuant to Federal Rule of Civil Procedure 12(b)(6).

11                    **i.     Plaintiffs Fail to State a Claim for Relief Under the Elections
                               Clause**

12

13          Plaintiffs' complaint alleges that Defendants usurped the California

14   Legislature's authority to regulate elections, which in turn allegedly diminished the

15   value of Plaintiffs' vote, without providing any allegations that tie County

16

17   _____

18   [9] The complaint is essentially a haphazard collection of speculations about alleged
     election idiosyncrasies without specific allegations of any ballot actually being
19   illegally cast or illegally thrown out, let alone allegations of sufficient irregularities to
     question the validity of the certified election results.  Further, the complaint does little
20   to tie the factual allegations to the causes of action, particularly given that the State
     Defendants and the County Defendants are not similarly situated.  The complaint
21   lacks allegations that tie each County Defendant to the alleged injury suffered and
     much of the relief sought is outside of the County Defendants' control.  Further,
22   numerous paragraphs of the complaint relate to allegations that took place in other
     jurisdictions and in previous years without any indication or allegation that the same
23   hardware, software, or use procedures were in operation anywhere in California
     during the November 2020 election.  Dkt. 1, ¶¶ 120, 127-135.  As a result, the
24   complaint gives the impression of throwing spaghetti at the wall hoping some of the
     facts asserted will stick to one of the causes of action, rather than providing each
25   Defendant with a clear understanding of how their alleged conduct violated the law.
     Put simply, the complaint does not pass muster under Federal Rule of Civil Procedure
26   8(a)(2).  *Ashcroft v. Iqbal*, 556 U.S. at 679 ("But where the well-pleaded facts do not
     permit the court to infer more than the mere possibility of misconduct, the complaint
27   has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'  Fed.
     Rule Civ. Proc. 8(a)(2).")

28

1    Defendants' actions to that alleged injury.[10]  Dkt. 1, ¶¶ 146-47.  Allegations of County

2    Defendants following state law and regulations to adjudicate ballots and verify

3    signatures, Dkt. 1, ¶¶ 107, 109, 111, are insufficient to state a claim under the

4    Elections Clause.  *See, e.g., Miller v. Treadwell,* 736 F. Supp. 2d 1240, 1243 (D.

5    Alaska 2010) (following state law in counting write-in votes did not violate the

6    Elections Clause).

7              **ii.    Plaintiffs Fail to State a Claim for Relief Under the Guarantee
                        Clause**

8

9         Plaintiffs do not—and could not—state a claim under the Guarantee Clause.

10   Notwithstanding their lack of standing and the nonjusticiability of such claims, the

11   alleged vote dilution and irregularities have not deprived Plaintiffs of a republican

12   form of government.  Courts have held that even if the Guarantee Clause claims are

13   justiciable, the Clause could "only [be] offended in highly limited circumstances,"

14   such as those involving the "aboli[tion] [of] the legislature" or the "establishment of a

15   monarchy by a state."  *See, e.g., Largess v. Supreme Judicial Court for Mass.,* 373

16   F.3d at 220.  Clearly, the complaint alleges no such circumstances.

17             **iii.   Plaintiffs Fail to State a Claim for Relief Under Both the Equal
                        Protection and Due Process Clauses**

18

19        Plaintiffs' Equal Protection and Due Process claims are no more availing.  The

20   "Constitution is not an election fraud statute."  *Bodine v. Elkhart County Election Bd.,*

21   788 F.2d 1270, 1271 (7th Cir. 1986).  "It is not every election irregularity . . . which

22   will give rise to a constitutional claim."  *Id.*  The Constitution "is implicated only

23   when there is 'willful conduct which undermines the organic processes by which

24   candidates are elected.'"  *Id.* at 1272 (emphasis omitted) (citation omitted).  Therefore,

25   ───────────────

26   [10] Plaintiffs' failure to tie County Defendants' actions to the usurping of the power of
     the State Legislature also undermines their standing for that claim, as they fail to

27   demonstrate a causal connection between the injury alleged and County Defendants'
     conduct.  *See Lujan,* 504 U.S. at 561 (to demonstrate standing "there must be a causal

28   connection between the injury and the conduct complained of").

1  "garden variety election irregularities that could have been adequately dealt with

2  through the procedures set forth in [state] law" do not support constitutional Due

3  Process claims.  *Id.*; *see also Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998)

4  ("[G]arden variety election irregularities do not violate the Due Process Clause, even

5  if they control the outcome of the vote or election.").

6       Despite Plaintiff EIPCa's allegedly extensive training of its volunteer election

7  observers, *see* Dkt. 1, ¶ 14, EIPCa did not challenge the alleged irregularities during

8  the canvass.  But, had Plaintiffs swiftly brought their claims in state court and in the

9  unlikely event that their allegations were substantiated as unlawful, expedited relief

10  would have been available at that time; state courts give priority to election matters,

11  including allegations of an "error, omission, or neglect [that] is in violation of [the

12  California Elections] code or the Constitution."  Cal. Elec. Code § 13314(a)(2); *see*

13  *also* Cal. Code Civ. Proc. § 35 (election matters have priority).

14       Plaintiffs' allegations regarding the operations of County Defendants are

15  insufficient to state a claim under either the Equal Protection Clause or the Due

16  Process Clause as "there is no authority to support a finding of burden [on the right to

17  vote] based solely on a speculative … possibility that election irregularities might [or

18  did] occur."  *Donald J. Trump for President, Inc. v. Boockvar,* 2020 WL 5997680, at

19  *71.  Plaintiffs point to sporadic instances where election observers were dissatisfied

20  with the level of access and ability to observe provided by County Defendants and to

21  alleged deficiencies in election security without making *any* assertions that those

22  irregularities rise to the level of a constitutional violation that impedes the right to

23  vote.[11]  Dkt. 1, ¶¶ 95–116.  Although Plaintiffs allege to have collected similar

24

25

26

27  [11] There are no allegations related specifically to the operations of the San Benito
County Clerk-Auditor-Recorder-Registrar of Voters, and therefore the complaint is
28  entirely deficient in stating a claim vis-à-vis Defendant Joe Paul Gonzalez.  *See* Fed.
R. Civ. P. 8.

1   incident reports, they fail to demonstrate a reasonable inference that the election was

2   inherently flawed.

3        In overseeing the November 2020 Presidential Election, Defendants were faced

4   with a historically complex election, with record voter turnout during an

5   unprecedented global pandemic.  Defendants have a strong interest in ensuring the

6   "orderly and efficient administration of elections." *Libertarian Party of Pa. v.*

7   *Governor of Pa.*, 813 F. App'x 834, 835 (3d Cir. 2020).  County Defendants were

8   operating under state and local public health orders requiring social distancing and

9   other health and safety protocols designed to reduce the risk of transmission of the

10   coronavirus that causes COVID-19.[12]  Different jurisdictions may vary in the

11   complexity of their elections and the resources available for managing election

12   observers.  For instance, they may adopt different practices that serve those

13   jurisdictions' "interests in efficiently allocating [their] election resources and

14   administering elections in an orderly manner," changes that outweigh any minimal

15   burden on Plaintiffs' rights.  *See Mays v. LaRose*, 951 F.3d 775, 783 (6th Cir.

16   2020); *see also Harlan v. Scholz*, 866 F.3d 754, 755-756 (7th Cir. 2017).  Nothing

17   about these variations in County Defendant practices or policies make the County

18   Defendants' practices or policies unlawful.

19        In the end, Plaintiffs' claims are fundamentally flawed because the "theory of

20   harm in this case is not the denial of the right to poll watch," which would fail to give

21   rise to a federal constitutional claim for similar reasons, "but instead dilution of votes

22   from fraud caused from the failure to have sufficient poll watchers." *Donald J. Trump*

23   *for President, Inc. v. Boockvar*, 2020 WL 5997680, at *36.  Plaintiffs' concerns about

24

25

26   [12] Also, the federal government, through Centers for Disease Control and Prevention
    (CDC), encouraged election officials to "[m]odif[y] layouts and procedures" by

27   "ensur[ing] sufficient space for social distancing and other measures."  CDC, *Polling
    Locations and Voters* (Oct. 29, 2020), https://www.cdc.gov/coronavirus/2019-

28   ncov/community/election-polling-locations.html (last accessed February 8, 2021).

1  election observer access and alleged opportunities for misconduct fail to state a claim
2  of vote dilution; rather, the allegations rest primarily on speculation that voters may
3  have cast invalid ballots or that election workers may have changed results without
4  well plead allegations that such misconduct did occur. *See, e.g.*, *Republican Party of*
5  *Pa. v. Cortes*, 218 F. Supp. 3d at 407 (rejecting vote dilution claim arising out of
6  alleged barriers to election observing giving rise to the possibility of misconduct
7  going unseen and unchallenged).[13]

8       Thus, just as Plaintiffs have no injury, they have no claims for relief under the
9  Elections, Guarantee, Due Process, or Equal Protection Clauses.

10      **F.    Plaintiffs' Request for an Audit is Disproportionate to Their
11          Purported Injury**

12      Setting aside that Plaintiffs' claims against County Defendants are not viable,
13  Plaintiffs make an extraordinary request for election-related "evidence" to be
14  preserved, and for their "experts" to be allowed to conduct an audit of the County
15  Defendants' highly sensitive election administration equipment and material.  Dkt. 1,
16  ¶¶ 140–43.  To the extent that Plaintiffs seek an elections audit as a remedy (even if
17  not expressly so), such an audit would be disproportionate to Plaintiffs' alleged injury
18  (which does not exist).

19      First, Plaintiffs offer no reason to believe that there is any possibility, much less
20  an "imminent" one, that the County Defendants will engage in "evidence tampering."

21

22

23  [13] Federal courts have uniformly found that election irregularities greater in degree to
24  those alleged by Plaintiffs also do not rise to the level of Due Process violations.  *See
     Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (malfunctioning of voting
     machines); *Gold v. Feinberg*, 101 F.3d 796, 801-02 (2d Cir. 1996) (human error
25  resulting in miscounting of votes and delay in arrival of voting machines); *Curry v.
     Baker*, 802 F.2d 1302, 1316 (11th Cir. 1986) (allegedly inadequate state response to
26  illegal cross-over voting); *Bodine v. Elkhart County Election Bd*., 788 F.2d at 1272
     (mechanical and human error in counting votes); *Hendon v. North Carolina State Bd.
27  of Elections*, 710 F.2d 177, 182 (4th Cir.1983) (technical deficiencies in printing
     ballots); *Powell v. Power*, 436 F.2d 84, 85-86 (2d Cir.1970) (mistakenly allowing
28  non-party members to vote in a congressional primary); and *Johnson v. Hood*, 430
     F.2d 610, 612– 13 (5th Cir.1970) (arbitrary rejection of ten ballots).

Dkt. 1, ¶¶ 140–43.  Under California Elections Code sections 17300 to 17306, the County Defendants are required to retain election documents and materials for 22 months after an election.  *See Citizens Oversight, Inc. v. Vu*, 35 Cal. App. 5th 612, 618, 247 (2019).  Further, the County Defendants have a "duty to preserve evidence [that they] know[] or should know is relevant to imminent [and ongoing] litigation." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 193 (C.D. Cal. 2006) (citing *Dillon v. Nissan Motor* Co., 986 F.2d 263, 267 (8th Cir. 1993)).  As this Court found in denying Plaintiffs' temporary restraining order application, Dkt. 21, 3-4, Plaintiffs make no allegations, and have presented no evidence to suggest, that the County Defendants are not complying with these obligations.

    Second, California law requires all county registrars to complete their own election audit prior to certifying the election results.  Cal. Elec. Code §§ 15360, 15365-15367.  These audits can either take the form of a public manual tally of at least one percent of the ballots tabulated using a voting system, including vote by mail ballots (a general area of concern raised by Plaintiffs, *see, e.g.*, Dkt. 1, ¶¶ 80–83); or a risk-limiting audit, involving human inspection of ballots to ensure a full manual tally of the ballots would not show different outcomes than the voting system results.[14]  *Id.* An additional audit by Plaintiffs' *private* "experts" of the County Defendants' critical election-related equipment and materials is not only unwarranted and duplicative, but it would risk violating the privacy rights of millions of voters, undermining election security, and interfering with the proprietary rights of third-party vendors.  Such an audit would necessarily pierce the secrecy of the ballot box by allowing private individuals—after certification—to view ballots and review adjudication logs,

---

[14] All but one of the County Defendants conduct the default one percent manual tally pursuant to Cal. Elec. Code § 15360. The Orange County Registrar of Voters conducts a risk-limiting audit as part of a state pilot program. *See* "Orange County, CA Elections to Conduct Risk Limiting Audit of Presidential General Election Results," (November 8, 2020), https://www.ocvote.com/press-releases/orange-county-ca-elections-to-conduct-risk-limiting-audit-of-presidential-general-election-results (last accessed February 8, 2021).

1   including confidential voter data that may only be viewed in narrow circumstances

2   under California law.  *See* Cal. Elec. Code § 2194; *see also* Cal. Gov't Code § 6254.

3   Further, despite the fact that the Secretary of State performs extensive certification

4   testing on the counties' elections technology, Cal. Elec. Code § 19100 *et seq.*, the

5   audit Plaintiffs seek would allow private individuals to investigate proprietary

6   technology belonging to third party vendors[15] significantly beyond the access election

7   observers are ever permitted to have.  Moreover, such an "extraordinary remedy"

8   "only would be useful if an avenue remained open for [Plaintiffs] to challenge the

9   election results"—but no such avenue exists.  *King*, 2020 WL 7134198, at *5.  Thus,

10  Plaintiffs' request for an audit is not only unnecessary and ill-advised, but it is

11  unavailable.

12                              **V.    CONCLUSION**

13         This action must be dismissed.  The Court lacks subject matter jurisdiction over

14  the claims asserted because Plaintiffs allege only a generalized and speculative injury

15  that cannot be redressed by the relief requested.  Plaintiffs sat on their claims and only

16  filed this action long after their claims became moot.  For similar reasons, their claims

17  are barred by the doctrine of laches and principles of equity.  Even if the Court were to

18  reach the substantive claims, Plaintiffs fail to plead a legally cognizable claim with

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25

26  ───────────────

27  [15] The list of voting technologies certified by the Secretary of State, including the
    entity that developed the technology, is available at
    https://votingsystems.cdn.sos.ca.gov/cert-and-approval/vote-sys-appr-in-ca-12-15-

28  20.pdf (last accessed February 8, 2021).  As shown in that list, Los Angeles County
    developed its own voting technology.

                                        24

1   respect to any of the County Defendants under any of the causes of action asserted.

2   And the relief they seek extends far beyond their non-existent injury.  Because

3   Plaintiffs can make no amendments to their complaint that would cure these fatal

4   deficiencies, the Court should dismiss this case without leave to amend.

5

6   Dated: February 12, 2021                Respectfully submitted,

7                                           JAMES R. WILLIAMS

8                                           COUNTY COUNSEL

9                                   By:     /s/ Julia B. Spiegel

10                                          JULIA B. SPIEGEL
                                            Deputy County Counsel
11                                          Douglas M. Press, Assistant County Counsel

12                                          Mary E. Hanna-Weir, Deputy County Counsel
                                            Kim H. Hara, Deputy County Counsel
13

14                                          Attorneys for Defendant
                                            Shannon Bushey, Registrar of Voters for the
15                                          County of Santa Clara

16

17  Dated: February 12, 2021                DONNA ZIEGLER
                                            County Counsel
18

19                                  By:     /s/ Raymond Lara
                                            RAYMOND LARA
20                                          Senior Deputy County Counsel

21

22                                          Attorneys for Defendant
                                            Tim Dupuis, Registrar of Voters for
23                                          the County of Alameda

24  ///

25  ///

26  ///

27  ///

28  ///

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1

Dated: February 12, 2021             SHARON L. ANDERSON

2                                    County Counsel

3                          By:    /s/ *Rebecca Hooley*

4                                    REBECCA HOOLEY
                                     Deputy County Counsel
5

6                                    Attorneys for Defendant
                                     Deborah Cooper, Contra Costa
7                                    County Registrar of Voters

8
    Dated: February 12, 2021             DANIEL C. CEDERBORG
9                                        County Counsel

10                         By:    /s/ *Kyle R. Roberson*
11                                   KYLE R. ROBERSON
                                     Deputy County Counsel
12

13                                   Attorneys for Defendant
14                                   Brandi L. Orth, County Clerk/Register of
                                     Voters for the County of Fresno
15

16  Dated: February 12, 2021             RODRIGO CASTRO-SILVA
                                         County Counsel
17

18                         By:    /s/ *Eva W. Chu*
                                     EVA W. CHU
19                                   Deputy County Counsel

20
                                     Attorneys for Defendant
21                                   Dean C. Logan, Los Angeles County Registrar-
                                     Recorder/County Clerk
22

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1 Dated: February 12, 2021   LEON J. PAGE
2            County Counsel

3        By: */s/ Rebecca S. Leeds*
4          REBECCA S. LEEDS
           Senior Deputy
5          Mark D. Servino, Supervising Deputy
6          Suzanne E. Shoai, Senior Deputy

7          Attorneys for Defendant
8          Neal Kelley, Registrar of Voters for
           the County of Orange
9

10 Dated: February 12, 2021   GREGORY P. PRIAMOS
           County Counsel
11

12        By: */s/ Ronak N. Patel*
           RONAK N. PATEL
13          Deputy County Counsel
14          Attorneys for Defendant

15          Rebecca Spencer, Riverside County
16          Registrar of Voters

17 Dated: February 12, 2021   LISA A. TRAVIS
18           County Counsel

19        By: */s/ Krista C. Whitman*
20          KRISTA C. WHITMAN
           Assistant County Counsel
21

22          Attorneys for Defendant
           Courtney Bailey-Kanelos, Sacramento County
23          Registrar of Voters

24 ///

25 ///

26 ///

27 ///

28 ///

1     Dated: February 12, 2021                BARBARA THOMPSON
2                                             County Counsel

3                                     By:     /s/ *Joseph Wells Ellinwood*_____
                                              JOSEPH WELLS ELLINWOOD
4                                             Assistant County Counsel
5
6                                             Attorneys for Defendant
                                              Joe Paul Gonzalez, San Benito County Clerk-
7                                             Auditor-Recorder-Registrar of Voters
8
      Dated: February 12, 2021                MICHELLE D. BLAKEMORE
9                                             County Counsel
10
                                      By:     /s/ *Laura L. Crane*_____
11                                            LAURA L. CRANE
12                                            Supervising Deputy County Counsel
13
                                              Attorneys for Defendant
14                                            Bob Page, San Bernardino County
                                              Registrar of Voters
15
16    Dated: February 12, 2021                JASON M. HEATH
                                              County Counsel
17
18                                    By:     /s/ *Melissa C. Shaw*_____
                                              MELISSA C. SHAW
19                                            Assistant County Counsel
20
                                              Ruby Marquez, Chief Assistant County Counsel
21
22                                            Attorneys for Defendant
                                              Gail Pellerin, Santa Cruz County
23                                            Registrar of Voters
24    ///
25    ///
26    ///
27    ///
28    ///

1

2

Dated: February 12, 2021

3

4

5

6

7

8

9   2355967

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MICHAEL G. WALKER
County Counsel

By:   */s/ Matthew A. Smith*
MATTHEW A. SMITH
Assistant County Counsel

Attorneys for Defendant
Mark A. Lunn, Ventura County
Registrar of Voters

29