1  XAVIER BECERRA
   Attorney General of California
2  ANTHONY R. HAKL
   Supervising Deputy Attorney General
3  RYAN A. HANLEY
   Deputy Attorney General
4  State Bar No. 330729
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone:  (916) 210-6064
     Fax:  (916) 324-8835
7    E-mail:  Ryan.Hanley@doj.ca.gov
   *Attorneys for*
8  *State Defendants*

9

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13

| | |
|---|---|
| 14  **ELECTION INTEGRITY PROJECT CALIFORNIA, INC, et al.,** | 2:21-cv-00032 |
| 15                                      Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 16 | **OF STATE DEFENDANTS' MOTION TO DISMISS THE** |
| 17  **v.** | **COMPLAINT** |
| 18  **ALEX PADILLA, California** | Date:  April 9, 2021 |
| 19  **Secretary of State, et al.,** | Time:  10:00 A.M. |
|  | Courtroom:  7B |
| 20                                      Defendants. | Judge:  The Hon. André Birotte Jr.  Action Filed:  January 4, 2021 |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................. 1

Background ............................................................................................. 2

    I.     Facts Alleged in the Complaint ................................................. 2

    II.    Procedural History ................................................................... 3

Legal Standard ....................................................................................... 4

    I.     Federal Rule of Civil Procedure 12(b)(1) ............................... 4

    II.    Federal Rule of Civil Procedure 12(b)(6) ............................... 4

Argument ............................................................................................... 5

    I.     Plaintiffs' Claims Are Not Justiciable ..................................... 5

          A.    Plaintiffs Lack Article III Standing for All of Their Claims ................................................................................ 5

                1.    Plaintiffs' Alleged Injuries Are Wholly Speculative and Impermissibly Generalized .................................... 6

                2.    Plaintiffs' Claims Do Not Satisfy the Causation and Redressability Prongs of the Standing Inquiry ............... 9

          B.    Plaintiffs' Claims Are Moot ........................................ 12

          C.    Plaintiffs' Guarantee Clause Claim Raises Nonjusticiable Political Questions ...................................................... 15

    II.    Plaintiffs' Claims Fail as A Matter of Law ........................... 16

          A.    Elections Clause Claim ................................................ 16

          B.    Equal Protection and Due Process Claims .................. 20

          C.    Guarantee Clause Claim .............................................. 22

Conclusion ........................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

CASES

*A. Farber & Partners, Inc. v. Garber*
    234 F.R.D. 186 (C.D. Cal. 2006) ........................................................ 14

*Anderson v. United States*
    417 U.S. 211 (1974) ........................................................................ 22

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*
    135 S. Ct. 2652 (2015) .................................................................... 18

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .......................................................................... 5

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) .......................................................................... 5

*Bognet v. Sec'y of Commonwealth of Pa.*
    980 F.3d 336 (3d Cir. 2020) ............................................................ 12

*Bowyer v. Ducey*
    No. CV-20-02321-PHX-DJH, 2020 WL 7238261 (D. Ariz. Dec. 9,
    2020) ...............................................................................................*passim*

*Cervantes v. Countrywide Home Loans, Inc.*
    656 F.3d 1034 (9th Cir. 2011) ........................................................... 5

*Chandler v. State Farm Mut. Auto Ins. Co.*
    598 F.3d 1115 (9th Cir. 2010) ........................................................... 4

*Chapman v. Pier 1 Imports (U.S.), Inc.*
    631 F.3d 939 (9th Cir. 2011) ......................................................... 4, 5

*Citizens for Fair Representation v. Padilla*
    815 F. App'x. 120 (9th Cir. 2020) ................................................... 20

*DeFunis v. Odegaard*
    416 U.S. 312 (1974) ........................................................................ 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Donald J. Trump for President, Inc. v. Cegavske*
  No. 2:20-cv-1445-JCM-VCF, 2020 WL 5626974 (D. Nev. Sept. 18,
  2020) ................................................................................................. 7

*Drake v. Obama*
  664 F.3d 774 (9th Cir. 2011) ............................................................. 8

*Epstein v. Wash. Energy Co.*
  83 F.3d 1136 (9th Cir. 1996) ............................................................. 5

*Fayer v. Vaughn*
  649 F.3d 1061 (9th Cir. 2011) ..................................................... 5, 18

*FEC v. Akins*
  524 U.S. 11, 24-25 (1998) ................................................................ 21

*Foster v. Carson*
  347 F.3d 742 (9th Cir. 2003) ........................................................... 12

*Gill v. Whitford*
  138 S. Ct. 1916 (2018) ..................................................................... 11

*Juliana v. United States*
  947 F.3d 1159 (9th Cir. 2020) ..................................................... 8, 16

*King v. Whitmer*
  No. 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020) ........... 13

*Kokkonen v. Guardian Life Ins. of Am.*
  511 U.S. 375 (1994) ........................................................................... 4

*Lance v. Coffman*
  549 U.S. 437 (2007) ........................................................................... 8

*Lewis v. Casey*
  518 U.S. 343 (1996) ......................................................................... 11

*Lightfoot v. Cendant Mortgage Corp.*
  137 S. Ct. 553 (2017) ......................................................................... 4

Memo of Ps & As ISO State Defendants' Motion
to Dismiss the Complaint (2:21-cv-00032)

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Lujan v. Defenders of Wildlife*

4

504 U.S. 555 (1992) ..................................................................... 6, 9

5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*

6

519 F.3d 1025 (9th Cir. 2008)............................................................. 5

7

*Maya v. Centex Corp.*

8

658 F.3d 1060 (9th Cir. 2011) ............................................................ 4

9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*

540 F.3d 1049 (9th Cir. 2008)............................................................. 4

10

*Murtishaw v. Woodford*

11

255 F.3d 926 (9th Cir. 2001) ...................................................... 15, 22

12

*N. Star Int'l v. Ariz. Corp. Comm'n*

13

720 F.2d 578 (9th Cir. 1983) .............................................................. 4

14

*New York v. United States*

15

505 U.S. 144 (1992) .................................................................. 15, 22

16

*Pacific States Tel. & Tel. Co. v. Oregon*

17

223 U.S. 118 (1912) ......................................................................... 22

18

*Preiser v. Newkirk*

19

422 U.S. 395 (1975) ......................................................................... 12

20

*Reynolds v. Sims*

377 U.S. 533 (1964) ......................................................................... 22

21

*Rucho v. Common Cause*

22

139 S. Ct. 2484 (2019) ....................................................... 15, 16, 22

23

*Schmier v. U.S. Ct. of Appeals for Ninth Cir.*

24

279 F.3d 817 (9th Cir. 2002)............................................................... 7

25

*State of Cal. v. United States*

26

104 F.3d 1086 (9th Cir. 1997)..................................................... 15, 22

27

*Townley v. Miller*

28

722 F.3d 1128 (9th Cir.).................................................................... 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Trump v. Wis. Elections Comm'n*
    983 F.3d 919 (7th Cir. 2020) ................................................................... 13

*Valley Forge Christian Coll. v. Ams. United for Separation of Church*
    *& State*
    454 U.S. 464 (1982) ....................................................................... 5, 6

*White v. Lee*
    227 F.3d 1214 (9th Cir. 2000) ................................................................ 4

*Wood v. Raffensperger*
    981 F.3d 1307 (11th Cir. 2020) (Georgia) ................................. 13, 14

STATUTES

52 United States Code
    § 21081(a)(6) ..................................................................................... 18

California Elections Code
    § 3020(d) .......................................................................................... 14
    § 3026 .......................................................................................... 17, 18
    § 13002 ............................................................................................. 19
    § 13200 ............................................................................................. 19
    § 14299(b) ........................................................................................ 19
    § 14299(c) ........................................................................................ 19
    § 14314 ........................................................................................ 17, 18
    § 15210 ............................................................................................. 19
    § 16003 ............................................................................................. 13
    § 16400 ............................................................................................. 13
    § 16401 ............................................................................................. 13
    §§ 17300-17306 ............................................................................... 14

California Government Code
    § 8550 et seq. ................................................................................... 17
    § 8567(a) ........................................................................................... 17
    § 8571 ............................................................................................... 17
    § 8627 ............................................................................................... 17
    § 12172.5(d) ...................................................................................... 17

Memo of Ps & As ISO State Defendants' Motion
to Dismiss the Complaint (2:21-cv-00032)

**TABLE OF AUTHORITIES**
(continued)

Page

**CONSTITUTIONAL PROVISIONS**

United States Constitution
 Article I, § 4, cl. 1 ............................................................................. 16
 Article IV, § 4 ................................................................................... 15

**COURT RULES**

Federal Rules of Civil Procedure
 9 .................................................................................................... 16
 12(b)(1) ............................................................................................ 4
 12(b)(6) ............................................................................... 4, 18, 20
 25(d) ................................................................................................ 1

**OTHER AUTHORITIES**

Assembly Bill 860 ................................................................................ 3

California Code of Regulations, Title 2
 § 20910 ............................................................................................ 3
 §§ 20960-20962 .............................................................................. 3
 §§ 20980-20985 .............................................................................. 3
 §§ 20990-20993 .............................................................................. 3
 § 20991(b)(9) ................................................................................. 19

1

2

**INTRODUCTION**

3      This is a meritless lawsuit seeking to disenfranchise the more than 17.5

4  million Californians who voted in the 2020 general election, based on wild and

5  speculative innuendo alluding to internal, widespread fraud that did not occur.  It is

6  the latest in a line of similar—and similarly reckless—lawsuits peddling conspiracy

7  theories that seek to undermine public confidence in the integrity of our elections.

8  Like its counterparts, which have been rejected by court after court across the

9  country, this case should be dismissed without leave to amend.

10      Plaintiffs are ten congressional candidates who lost in the general election, and

11  the nonprofit Election Integrity Project California, Inc. ("EIPCa").  They raise their

12  claims against three state officials, named in their official capacities—Secretary of

13  State Dr. Shirley Weber,[1] Governor Gavin Newsom, and Attorney General Xavier

14  Becerra (collectively, "State Defendants")—and thirteen County Registrars of

15  Voters (collectively, "County Defendants").  Against both State and County

16  Defendants, Plaintiffs allege injuries under four provisions of the United States

17  Constitution—the Elections Clause, the Equal Protection Clause, the Due Process

18  Clause, and the Guarantee Clause.  And they seek sweeping relief, including

19  decertification of the entirety of California's recent election results, a declaratory

20  judgment that numerous statutory and regulatory provisions of California election

21  law are unconstitutional, and a preservation order covering twenty-four separate

22  categories of electronic and vote-by-mail ("VBM") election equipment and

23  materials.

24      All of Plaintiffs' claims against the State Defendants fail as a matter of law.

25  As a preliminary matter, Plaintiffs do not have Article III standing for any of the

26  claims they raise or relief they seek.  Plaintiffs' alleged injuries are wholly

27

28

---

[1]  Dr. Shirley Weber was sworn in as California Secretary of State on January 29, 2021, and is hereby substituted for former Secretary of State Alex Padilla. *See* Fed. R. Civ. P. 25(d).

speculative and impermissibly generalized, and they have failed to establish the requisite causation or redressability components for standing. Second, most of Plaintiffs' claims are moot because they do not represent an actual controversy and Plaintiffs are unable to obtain the relief they seek. Third, it is well-established that claims brought under the Guarantee Clause are political questions outside the scope of the federal courts' jurisdiction.

Even if Plaintiffs could survive these deficiencies, none of their purported causes of action allege the facts necessary to state a claim, as explained below.

The law provides ample legitimate options for contesting the validity of election results. A lawsuit like this is not among those options. The Court should grant the State Defendants' motion, and dismiss the complaint with prejudice.

## BACKGROUND

### I.   FACTS ALLEGED IN THE COMPLAINT

As mentioned, Plaintiffs are ten congressional candidates, each of whom lost their races in the November 2020 general election, and EIPCa, "a California non-profit public benefit corporation committed to defending, through education, research and advocacy the civil rights of U.S. citizens to fully participate in the election process under Federal and state law." *See* ECF No. 1 ("Compl.") at ¶¶ 14–24.

Plaintiffs allege that for three decades, California officials and legislators have made changes to election laws in order "to allow widespread fraud and election interference to proceed unchecked." Compl. at ¶ 47. According to Plaintiffs, this scheme is intentional: Plaintiffs allege that Californians' right to vote has been "intentionally eroded" by laws "designed to create an environment in which elections could be manipulated and eligible voters disenfranchised." Compl. at ¶ 3. The changes in question include moving from an absentee ballot option to a permanent VBM option, allowing for online voter registration, the establishment of a top-two primary system, allowing non-citizen residents to work on election

precinct boards, allowing for automatic registration through the DMV, allowing pre-registration by 16- and 17-year-olds, the implementation of a curing process for voters whose VBM ballots are flagged for rejection due to signature authorization problems, and requiring VBM envelopes to be postage paid.  Compl. at ¶¶ 49–64. Notably, Plaintiffs do not challenge any of these laws.

Plaintiffs do challenge as unconstitutional several executive orders and emergency regulations issued by Governor Newsom and former Secretary of State Alex Padilla in the run-up to the November 2020 general election.  Compl. at ¶¶ 65–83.  Executive Orders N-64-20 and N-67-20 were issued in May and June of 2020 and—until superseded by legislation— required that every registered voter in California be mailed a VBM ballot for the November election.  Compl. at ¶ 65. This requirement was subsequently enacted into law by the California Legislature through Assembly Bill 860 ("AB 860"); and after AB 860 was enacted, Governor Newsom confirmed that the executive orders had no further force or effect.  Compl. at ¶ 65; Req. for Judicial Notice in Supp. of State Defs.' Mot. to Dismiss the Compl. ("State Defs.' RJN"), Ex. 1.  Former Secretary Padilla issued emergency regulations relating to signature verification, ballot processing, and ballot counting on September 28, 2020.  Compl. at ¶¶ 68–83; *see* Cal. Code Regs. tit. 2 ("2 CCR"), §§ 20910, 20960-20962, 20980-20985, 20990-20993; State Defs.' RJN, Ex. 2.

Plaintiffs also allege that numerous irregularities occurred at the county-level throughout the voting process, including obstruction of election observers, the observation of "opportunities for fraud," and the use of Dominion and Smartmatic voting systems which Plaintiffs allege to contain "known vulnerabilities allowing miscounting and vote manipulation."  Compl. at 31 (capitalization modified); *see* Compl. at ¶¶ 90–137.

## II.   PROCEDURAL HISTORY

Plaintiffs filed the Complaint for Declaratory and Injunctive Relief on January 4, 2021, and a Temporary Restraining Order ("TRO") application the next day.

*See* ECF Nos. 1, 21.  After State Defendants filed their opposition, the Court denied Plaintiffs' TRO application on January 11, 2021, without a hearing.  *See* ECF Nos. 31, 35.

## LEGAL STANDARD

### I.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a claim if it lacks subject-matter jurisdiction, which "defines [a court's] power to hear cases." *Lightfoot v. Cendant Mortgage Corp.*, 137 S. Ct. 553, 560 (2017).  "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  Although the court must accept the allegations of the complaint as true, the burden of proof is on the party asserting federal subject-matter jurisdiction.  *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).

Whether a case of controversy has become moot, depriving the court of jurisdiction under Article III, is properly raised under a Rule 12(b)(1) motion. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Similarly, "a lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

The court's review of a Rule 12(b)(1) motion "is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice," *see, e.g., Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008), and the court may not "supply essential elements of the claim that were not initially pled," *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quotations omitted).

## II.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted). "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

On review of a 12(b)(6) motion, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But the court does not accept the truth of legal assertions cast as factual allegations, *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011), nor must it "supply essential facts that were not initially pled," *Chapman*, 631 F.3d at 954.

To withstand a 12(b)(6) motion, the complaint must allege "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## ARGUMENT

## I.   PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE

### A.   Plaintiffs Lack Article III Standing for All of Their Claims

Article III of the United States Constitution confines the jurisdiction of federal courts "to the resolution of cases and controversies." *Valley Forge Christian Coll.*

*v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982) (internal quotation marks omitted).  One of the "landmarks" used by courts to identify cases "that are of the justiciable sort referred to in Article III . . . is the doctrine of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  This "irreducible constitutional minimum of standing" requires that a plaintiff demonstrate three elements: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) "a causal connection between the injury" and the defendant's conduct; and (3) a likelihood "that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal quotation marks omitted).  These constitutional requirements are "rigorous." *Valley Forge*, 454 U.S. at 475.

Relevant to State Defendants, Plaintiffs here ask the Court for: (1) immediate orders directing Defendants to preserve certain election equipment and materials; (2) an order directing Defendants Newsom and Weber to decertify the election results; and (3) a declaration that AB 860, Executive Orders N-64-20 and N-67-20, California Elections Code section 3020, and California Code of Regulations, title 2, sections 20910, 20960–20962, 20980–20985, and 20990–20993 are unconstitutional.  Compl. at 43-44, ¶¶ A–D.  On these claims, none of the Plaintiffs satisfy all three requirements needed to establish Article III standing.  On this basis alone, the entirety of the complaint can and should be dismissed.

### 1.   Plaintiffs' Alleged Injuries Are Wholly Speculative and Impermissibly Generalized

It is not immediately evident what "injury in fact" Plaintiffs are alleging. What is evident, however, is that they do *not* allege that they were prohibited from voting, or that their votes were not counted.  Rather, Plaintiffs advance an unusual and unsupported theory of vote dilution, by which the value of their votes (and their supporters' votes) was diminished by Defendants' actions "intentionally failing to ensure that only legally cast VBM ballots were included in the canvass for the 2020

Memo of Ps & As ISO State Defendants' Motion
to Dismiss the Complaint (2:21-cv-00032)

general election in California."  Compl. at ¶¶ 153, 165.  This vote dilution theory is central to each of Plaintiffs' four claims.  *See* Compl. at ¶¶ 148, 155, 166, 173.  In their Elections Clause and Guarantee Clause claims, Plaintiffs also raise allegations of generalized grievances relating to government conduct allegedly in violation of federal law.  *See* Compl. at ¶¶ 147, 171–72.  These injuries are insufficient to meet the requirements for Article III standing because they are both wholly speculative and impermissibly generalized.  *See, e.g.*, *Schmier v. U.S. Ct. of Appeals for Ninth Cir.*, 279 F.3d 817, 821 (9th Cir. 2002) ("[T]he plaintiff must have sustained a 'concrete' injury, 'distinct and palpable . . . as opposed to merely abstract' . . . [a]nd that injury must have actually occurred or must occur imminently; hypothetical, speculative or other 'possible future' injuries do not count in the standings calculus.") (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Recent decisions from neighboring districts are illustrative here.  Prior to the November 2020 election, one presidential campaign challenged a Nevada law that mandated ballots be mailed to all registered voters, similar to the laws challenged here by Plaintiffs.  Granting defendant's motion to dismiss, the court held that "[e]ven if accepted as true, plaintiffs' pleadings allude to vote dilution that is impermissibly generalized."  *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-cv-1445-JCM-VCF, 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020).  The court pointed to plaintiffs' failure to "describe how their member voters will be harmed by vote dilution where other voters will not," and agreed with an earlier district court decision that "plaintiffs' claims of a substantial risk of vote dilution 'amount to general grievances that cannot support a finding of particularized injury as to [p]laintiffs.'"  *Id.* (quoting *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2748301, at *4 (D. Nev. May 27, 2020).  A similar argument was also rejected in a post-election challenge in Arizona, where the court noted not only the speculative and generalized nature of the alleged injury, but also the plaintiffs' failure to advance a viable theory of vote dilution.  *See Bowyer v. Ducey*,

No. CV-20-02321-PHX-DJH, 2020 WL 7238261, at *5 (D. Ariz. Dec. 9, 2020) ("As courts have routinely explained, vote dilution is a very specific claim that involves votes being weighed differently and cannot be used generally to allege voter fraud."); *see also id.* at *6 (collecting cases).

Here, Plaintiffs' claims of vote dilution are based wholly on speculation that fraudulent ballots *may* have been counted.  *See, e.g.*, Compl. at ¶ 9 ("These election workers *could* have entered any candidates that they wished on these remade ballots while purposefully unobserved like this.") (emphasis added).  There are no specific allegations regarding the number of ballots, whether those ballots were in fact counted *for* or against Plaintiffs, or where exactly those ballots were cast.  Any hypothetical injuries inflicted on Plaintiffs "are nothing more than generalized grievances that any one of the [17.5 million Californians] who voted could make if they were so allowed." *Id.* at *5; *cf. Juliana v. United States*, 947 F.3d 1159, 1174 (9th Cir. 2020) ("[A]ny injury from the dissolution of the Republic would be felt by all citizens equally, and thus would not constitute the kind of discrete and particularized injury necessary for Article III standing.") (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).[2]

Moreover, to the degree that Plaintiffs allege generalized injuries relating to Defendants' alleged violations of the law, such injuries are insufficient for standing.  "The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed.  This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we

---

[2]  Plaintiffs' status as former congressional candidates does not provide them any specialized basis for standing here.  This action was commenced on January 4, 2021.  At that time, California's election results had already been certified, and the members of the 117th Congress had been sworn in.  *See* State Defs' RJN, Exs. 4–5.  Thus, as of the commencement of this suit, those Plaintiffs had ceased to be candidates for the 2020 general election.  *See Drake v. Obama*, 664 F.3d 774, 783–84 (9th Cir. 2011) ("Once the 2008 election was over and the President sworn in, Keyes, Drake, and Lightfoot were no longer 'candidates' for the 2008 general election.")  And because they were no longer candidates, they did not have any basis to claim harm based on their failed congressional campaigns.

have refused to countenance in the past." *Lance v. Coffman*, 549 U.S. 437, 442 (2007); *see also Bowyer*, 2020 WL 7238261, at *4 (rejecting plaintiffs' Elections Clause claim on standing grounds).  Accordingly, Plaintiffs' failure to allege any concrete injuries in this matter are fatal to their claims against State Defendants, and provide sufficient grounds for dismissal.

### 2.   Plaintiffs' Claims Do Not Satisfy the Causation and Redressability Prongs of the Standing Inquiry

Even if Plaintiffs had alleged an injury sufficient to establish standing—and they have not—their claims are even more dubious when turning to the other two prongs of standing.  Plaintiffs have failed to show how their alleged injuries are fairly traceable to State Defendants' conduct, and their requested relief would do absolutely nothing to actually redress any injuries Plaintiffs have alleged.  *See, e.g.*, *Lujan*, 504 U.S., 560–61.

Turning first to causation, Plaintiffs present no theory showing how Attorney General Becerra caused a diminution in the value of Plaintiffs' votes.  In regards to Governor Newsom, Plaintiffs rely on the fact that he issued Executive Orders N-64-20 and N-67-20 to mandate that all registered voters be mailed a VBM ballot (ignoring the fact that these executive orders were later superseded by legislation enacting the same requirement).  *See* Compl. at ¶ 65; State Defs.' RJN, Ex. 1. And for Secretary of State Weber, Plaintiffs allege that the emergency regulations adopted on September 28, 2020 allowed for fraud that allegedly diluted Plaintiffs' votes.  *See* Compl. at ¶¶ 68–83.

The crux of Plaintiffs' argument against State Defendants is that the expansion of vote-by-mail preceding the 2020 general election created the conditions for widespread voter fraud.  But by Plaintiffs' own admission, even prior to the emergency orders, "approximately 75% of voters in California regularly received permanent VBM ballots . . . ."  Compl. at ¶ 51.  And none of the State Defendants carried out the election activities where Plaintiffs actually allege fraud occurred

(e.g., signature verification, vote tabulation)—those are the tasks of local officials, and are also the focus of Plaintiffs' most concrete allegations.  There are no allegations, for example, that the State Defendants somehow manipulated vote tallies or submitted fraudulent votes.  In fact, the Secretary of State's emergency regulations were issued explicitly in order to "provide clear and uniform guidance" to counties regarding election administration, and to "ensure uniform practices" in relevant respects across the state.  State Defs.' RJN, Ex. 2.  Such uniformity in fact helps ensure that no votes are "diluted," and that every valid vote is counted accurately and equally.

Perhaps even more problematic for Plaintiffs is the redressability requirement. In their prayer for relief, Plaintiffs first request orders mandating preservation of certain election equipment and materials.  Compl. at 43, ¶¶ A–B.  Even if Plaintiffs' claims otherwise had merit—and they do not—such an order would do nothing to redress their claims of vote dilution.  The November 2020 election is finished, and merely preserving the equipment and materials in question would have no effect on any challenged procedures or alleged vote dilution in any future election.  Mere preservation of materials from the election would therefore do nothing redress Plaintiffs' claims.

Perhaps realizing this, Plaintiffs then request that this Court order Defendants Newsom and Weber to decertify the entire "election results."[3]  Compl. at 43, ¶ C. But—putting to one side the fact that such a breathtaking act is plainly not possible now, if indeed it ever was—such drastic and sweeping action would actually worsen, rather than redress, Plaintiffs' own alleged injuries.  Rather than having the value of their votes *diminished*, as Plaintiffs claim, decertification would place Plaintiffs in the position of having the value of their votes effectively *destroyed*. And the same would be true for the remainder of the 17.5 million Californians who

---

[3]  Presumably Plaintiffs intend to refer to the results of the November 2020 general election, but this prayer for relief is not stated with such particularity.

cast ballots in the 2020 general election.  *Cf. Townley v. Miller*, 722 F.3d 1128, 1134–35 (9th Cir.) (denying standing on redressability prong, where plaintiffs sought change to election ballot that would "worsen[] plaintiffs' injury rather than redress[] it").  Moreover, Plaintiffs' request for relief is clearly not tailored in the manner required.  *See, e.g.*, *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.").  Plaintiffs do not limit their decertification request in any way.  They are not requesting invalidation of fraudulent ballots; they are not even requesting decertification specifically in their races.  Rather, they ask this Court to disenfranchise *all* Californians who voted in the November 2020 election.  Such action would not only fail to redress Plaintiffs' alleged injuries, but would also inflict grave injury on millions of this State's residents.  Besides the disenfranchisement, the Court's acceptance of Plaintiffs' proposed relief would set a dangerous precedent destroying any certainty as to the finality of election results, effectively invalidating state law requirements for resolving election disputes, and generally imparting violence on United States constitutional processes related to the casting and counting of electoral college votes and the transition of power between presidential administrations.

Finally, Plaintiffs request declaratory relief finding numerous election provisions to be unconstitutional.  Compl. at 43–44, ¶ D.  Plaintiffs do not explain how such declaratory relief would redress their alleged injuries—and to the extent Plaintiffs' alleged injuries turn on "irregularities" in the local administration of an election that has already occurred, it clearly would not.  Likewise, Plaintiffs' challenges to AB 860 (which applied only to the November 2020 election) and Executive Orders N-64-20 and N-67-20 (which, upon the enactment of AB 860, had no further force or effect) cannot possibly redress any alleged injury they might

suffer in the future.  And Plaintiffs do not and cannot explain how any remaining challenges to California's election laws (for example, Elections Code section 3020)[4] would redress any alleged injury, either.[5]

Failing to meet any of the three prongs for Article III standing is fatal to a plaintiff's claim.  Here, Plaintiffs have failed to meet even one.  On this basis alone, the entirety of Plaintiffs' claims against State Defendants should be dismissed.

## B.   Plaintiffs' Claims Are Moot

"The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).  A controversy must be "definite and concrete" and "touch[] the legal relations of the parties having adverse legal interests." *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974).  Federal courts lack the power to "decide questions that cannot affect the rights of litigants in the case before them." *Preiser*, 422 U.S. at 401 (internal quotation marks omitted).  In addition, "[i]f there is no longer a possibility that an appellant can obtain relief for his claim, the claim is moot and must be dismissed for lack of jurisdiction." *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (quoting *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir. 1999) (internal quotation marks omitted).

Even if it were otherwise inclined to do so, this Court obviously cannot order Defendants Newsom and Weber to decertify the November 2020 election results at this point.  As a practical matter, that election is long over, and the candidates who

---

[4]  *See* Compl. at 43–44, ¶ D (seeming to challenge Elections Code section 3020); *but see* Compl. at ¶¶ 82–83 (seeming to challenge only those aspects of Elections Code section 3020 that applied specifically to the November 2020 election).

[5]  Additionally, Plaintiffs' challenge to elections statutes duly enacted by the California Legislature stands in deep (and seemingly irreconcilable) tension with any theory of injury they might seek to advance under the Constitution's Elections Clause, which stands for the Legislature's power to enact laws concerning elections procedures.  *See* Compl. at ¶¶ 144–50; *cf. Bognet v. Sec'y of Commonwealth of Pa.*, 980 F.3d 336, 350–52 (3d Cir. 2020).

Memo of Ps & As ISO State Defendants' Motion
to Dismiss the Complaint (2:21-cv-00032)

prevailed in that election have already taken office.  As a procedural matter, the California Elections Code (consistent with the U.S. Constitution's Elections and Electors Clauses) prescribes specific procedures and timelines for any election contests; the deadlines for any such contest have long since passed.  Plaintiffs had until December 7, 2020, to contest the election of presidential electors, and until December 21, 2020, to contest the election generally.  *See* ECF No. 31 at 5–6; Cal. Elec. Code §§ 16003, 16401.  Such a challenge must be brought in the California superior court having jurisdiction.  Cal. Elec. Code § 16400.  Plaintiffs had ample time and opportunity to properly contest the election results.  The fact that Plaintiffs disregarded the lawful procedures for challenging the November 2020 election results is no reason for this Court to do the same.  *Cf. Trump v. Wis. Elections Comm'n*, 983 F.3d 919, 925–26 (7th Cir. 2020).[6]

Given that decertification is not a viable remedy here, it would be meaningless to grant Plaintiffs' requests concerning the preservation orders.  *See* Compl. at 43, ¶¶ A–B.  Similar requests have been made in other states, and dismissed as moot. *E.g., Bowyer*, 2020 WL 7238261, at *12 ("Because this Court cannot de-certify the results, it would be meaningless to grant Plaintiffs any of the remaining relief they seek."); *King v. Whitmer*, No. 20-13134, 2020 WL 7134198, at *5 n.3 ("[T]he evidence Plaintiffs seek to gather by inspecting voting machines and software security camera footage only would be useful if an avenue remained open for them to challenge the election results."), *appeal filed*, No. 20-2205 (6th Cir. Dec. 10, 2020).

Plaintiffs' request for protective orders should further be dismissed as moot because they do not represent any genuine controversy.  There is no valid reason or

---

[6] Numerous courts that have considered this question following the November 2020 general election have reached the same conclusion. *E.g., Bowyer*, 2020 WL 7238261, at *11–*12 (Arizona); *Wood v. Raffensperger*, 981 F.3d 1307, 1316–18 (11th Cir. 2020) (Georgia), *pet. for cert. docketed*, No. 20-799 (Dec. 11, 2020); *King v. Whitmer*, No. 20-13134, 2020 WL 7134198, at *5–*6 (E.D. Mich. Dec. 7, 2020), *appeal filed*, No. 20-2205 (6th Cir. Dec. 10, 2020).

Memo of Ps & As ISO State Defendants' Motion
                                    to Dismiss the Complaint (2:21-cv-00032)

need to order Defendants not to destroy supposed evidence, primarily because there is absolutely no indication that spoliation of evidence has occurred or is being contemplated or planned.  California Elections Code sections 17300 to 17306 already require that certain election materials be preserved for twenty-two months following an election.  And to the extent that Plaintiffs' request includes materials or equipment not already covered under the Elections Code, State Defendants are on notice and therefore under a federally-imposed "duty to preserve evidence [they] know[] or should know is relevant to imminent litigation."  *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 193 (C.D. Cal. 2006).  This Court has already addressed this issue in its order denying Plaintiffs' request for TRO, see ECF No. 35 at 4, and nothing has changed since then.

Plaintiffs' requests for declaratory relief seeking invalidation of Executive Orders N-64-20 and N-67-20, AB 860, and California Elections Code section 3020 should likewise be dismissed because they do not present an ongoing case or controversy under Article III.[7]  As discussed above—and admitted by Plaintiffs in the Complaint, see Compl. at ¶ 65—the executive orders concerned only the November 2020 general election and ceased to have any force or effect long before this action was commenced.  Similarly, the amendments enacted through AB 860, primarily mandating the State to send VBM ballots to every registered California voter, related only to the November 2020 general election.  State Defs.' RJN, Ex. 3. And while Plaintiffs ostensibly request that the entirety of Elections Code section 3020 be declared unconstitutional, they appear only to take issue with the most recent amendments providing that VBM ballots received within seventeen days of the 2020 general election would be considered timely.  *See* Compl. at ¶¶ 43–44, 82-83; Cal. Elec. Code § 3020(d).  Again, these claims are moot, because they

---

[7]  Because Executive Orders N-64-20 and N-67-20 no longer had any force or effect by the time the Complaint was filed, it may (strictly speaking) be most correct to dismiss the challenges to those orders for want of Article III standing, while dismissing Plaintiffs' remaining challenges as moot.

relate only to the election that has already passed and been certified.  *Cf. Wood v. Raffensperger*, 981 F.3d 1307, 1317 (11th Cir. 2020) ("We cannot turn back the clock and create a world in which the 2020 election results are not certified.") (quoting *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015) (internal quotation marks omitted), *pet. for cert. docketed*, No. 20-799 (Dec. 11, 2020).

For these additional reasons, the Court should dismiss this action with prejudice.

### C.   Plaintiffs' Guarantee Clause Claim Raises Nonjusticiable Political Questions

The Guarantee Clause of the United States Constitution states that "[t]he United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion . . . ."  U.S. Const., art. IV, § 4.  Plaintiffs allege that Defendants have violated the Guarantee Clause "by implementing laws, regulations and orders, and conducting elections, so as to deny California and its citizens, including Plaintiffs, a republican form of government," and "so as to allow foreign interference in California elections."  Compl. at

¶¶ 171–72.  As an initial matter, this cause of action should be dismissed because it is well-established "that the Guarantee Clause does not provide the basis for a justiciable claim."  *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506 (2019).

"The view that the Guarantee Clause implicates only nonjusticiable political questions" dates back to 1849.  *New York v. United States*, 505 U.S. 144, 184 (1992) (citing *Luther v. Borden*, 7 How. 1, 12 L.Ed. 581 (1849)).  When the Supreme Court spoke on this issue in 1992, it acknowledged that "[t]his view has not always been accepted," but declined to provide further resolution.  *Id.* at 183–85.  In the years since *New York*, however, the Ninth Circuit has repeatedly held that claims raised under the Guarantee Clause are nonjusticiable.  *See, e.g.*, *Murtishaw v. Woodford*, 255 F.3d 926, 961 (9th Cir. 2001) ("A challenge based on

the Guarantee Clause, however, is a nonjusticiable political question.") (first citing *New York*, 505 U.S. at 184, then citing *Pacific States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118, 146 (1912)); *State of Cal. v. United States*, 104 F.3d 1086, 1091 (9th Cir. 1997) ("Supreme Court decisions have traditionally found that claims brought under the Guarantee Clause are nonjusticiable.") (citation omitted).

Most recently, in 2019, the Supreme Court reiterated that "[t]his Court has several times concluded that the Guarantee Clause does not provide the basis for a justiciable claim." *Rucho*, 139 S. Ct. at 2506; *cf. Juliana*, 947 F.3d at 1174 ("A suit for violation of these reframed rights, like one for a violation of the Guarantee Clause, would also plainly be nonjusticiable.") (citing *Rucho*, 139 S. Ct. at 2506). Accordingly, Plaintiffs' fourth cause of action, based wholly on alleged violations of the Guarantee Clause, should also be dismissed on this independent basis.

## II.   PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW

Even if Plaintiffs' claims against State Defendants were somehow justiciable—and, as explained above, they are not—they would still fail.  Plaintiffs have not, and cannot, allege the facts necessary to make out any cognizable claim under the asserted constitutional provisions.[8]

### A.   Elections Clause Claim

The Elections Clause of the United States Constitution states that "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."  U.S. Const., Art. I, § 4, cl. 1.  In their first cause of action, Plaintiffs allege that "Defendants have violated the Elections Clause by usurping the California State Legislature's

---

[8]   Although the Court need not reach this issue, Plaintiffs' failure to state a claim is only further heightened by the fact that their claims—which are rooted in a baseless and frivolous assertion that California officials have changed election laws "to allow widespread fraud and election interference to proceed unchecked," Compl. at ¶ 47—fail to plead this alleged fraud with the particularity required by Rule 9.  *See* Fed. R. Civ. P. 9; *cf. Bowyer*, 2020 WL 7238261, at *13 (dismissing claims rooted in alleged election fraud under Rule 9).

authority to set the manner of elections."  Compl. at ¶ 147.  In so stating, Plaintiffs appear to be referring to only two of the challenged actions—Defendant Newsom's issuance of Executive Orders N-64-20 and N-67-20, and the Secretary of State's issuance of the emergency regulations regarding signature verification, ballot processing, and ballot counting.[9]  Even assuming that Plaintiffs have alleged a sufficiently particularized injury under the Elections Clause, which they have not, this claim fails.  Nothing in these orders or emergency regulations impermissibly interferes with the time, places, and manner of conducting the election.

As an initial matter, Plaintiffs do not dispute that both the Governor's executive orders and the Secretary of State's emergency regulations were issued in adherence with the state statutory authority provided by the Legislature.  Governor Newsom's orders were issued under the broad authority granted by the California Emergency Services Act, see Cal. Gov't Code § 8550 et seq., and in particular Government Code sections 8567, 8571, and 8627.  During times of a state emergency—such as the COVID-19 pandemic—the Governor has explicit authority to "make, amend, and rescind orders and regulations necessary to carry out the provisions of this chapter."  Cal. Gov't Code § 8567(a); *see also id.* § 8627.  He also has authority to suspend regulatory statutes and statutes relating to state business.  *Id.* § 8571.  Even so, the orders that Defendant Newsom issued mandating the mailing of a VBM ballot to all registered California voters were subsequently enacted into law by the Legislature through SB 860, as previously discussed.

The emergency regulations were issued pursuant to three state sources of authority and one federal source.  California Government Code section 12172.5, which outlines the duties of the Secretary of State, explicitly authorizes the

---

[9]  A contradiction here is worth noting.  Plaintiffs simultaneously assert that Defendants Newsom and Weber have "usurped" the Legislature's Elections Clause authority by issuing orders and regulations related to the election, and ask this Court to declare duly enacted elections legislation (AB 860 and California Elections Code § 3020) to be unconstitutional.

Memo of Ps & As ISO State Defendants' Motion
to Dismiss the Complaint (2:21-cv-00032)

Secretary to "adopt regulations to assure the uniform application and administration of state election laws."  Cal. Gov't Code § 12172.5(d).  California Elections Code sections 3026 and 14314 state that "[t]he Secretary of State shall promulgate regulations establishing guidelines for county elections officials relating to the processing" of both VBM ballots and provisional ballots.  Cal. Elec. Code §§ 3026, 14314.  And finally, federal law mandates that "[e]ach State shall adopt uniform and nondiscriminatory standards that define what constitutes a vote and what will be counted as a vote for each category of voting system used by the State."  52 U.S.C. § 21081(a)(6).  The Secretary of State included clear references to the relevant sources of authority for each of the emergency regulations. *See* State Defs.' RJN, Ex. 2

This state-law legislative authority is fatal to Plaintiffs' Elections Clause claim.  "The dominant purpose of the Elections Clause was to empower Congress to override state election rules, not to restrict the way States enact legislation." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2672 (2015).  In this context, as elsewhere, "it is characteristic of our federal system that States retain autonomy to establish their own governmental processes." *Id.* at 2673. Accordingly, for purposes of the Elections Clause (or the analogous Electors Clause), the term "Legislature" does "not mean the representative body alone." *Id.* at 2666.  Instead, the term "Legislature" "calls for the exercise of lawmaking authority," *id.* at 2668 n.17, which is "to be performed in accordance with the State's prescriptions for lawmaking," *id.* at 2668.  This requirement was satisfied here.

Nor (contrary to Plaintiffs' position) is there any other inconsistency between the state Defendants' actions and state election law.  Plaintiffs allege that some of the emergency regulations "directly contradict a number of state statutes intended to ensure that VBM ballots are legally cast."  Compl. at ¶ 69.  In evaluating a motion to dismiss under Rule 12(b)(6), the Court need not accept the truth of legal

assertions cast as factual allegations, *see e.g.*, *Fayer*, 649 F.3d at 1064, and should not do so here.  Plaintiffs' "factual" allegations on this topic are better viewed as (inaccurate) legal assertions—in essence, legal arguments that the Secretary of State violated state election laws and, in doing so, ran afoul of the Elections Clause.  For instance, Plaintiffs allege that California Code of Regulations, title 2, section 20991(b)(9) "allows the voter to submit virtually any piece of paper as a VBM ballot," and that this regulation "contravene[s] [California Elections Code] § 13200, which provides that ballots not printed according to statutory specifications cannot be cast or counted and [California Elections Code] § 13002, which requires watermarking of printed ballots."  Compl. at ¶ 79.  Aside from the fact that Plaintiffs' do not actually allege that any voter did, in fact, vote in such a manner, the cited sections, 13200 and 13002, specifically regulate the *printing* and *purchasing* of ballots; they are not intended to address situations of nonconforming ballots.  And Plaintiffs fail to mention the portion of the regulation that states that "[i]f the voter's choice(s) can be determined, the ballot shall be duplicated pursuant to Election Code section 15210 to reflect the voter's choices and processed as if cast by the voter."  Cal. Code Regs., tit. 2, § 20991(b)(9).  California Elections Code section 15210 requires that "any ballot that is torn, bent, or otherwise defective shall be corrected so that every vote cast by the voter shall be counted by the automatic tabulating equipment," including through the creation of a "true duplicate copy."  Cal. Elec. Code § 15210.  Far from contradicting state law, the emergency regulation advances it.

As another example, Plaintiffs allude to the "strict procedures to be followed for alternative ballots when a polling place exhausts its supply of ballots," alleging that the "required use of official ballots is further reinforced by [California Elections Code] § 14299."  Compl. at ¶ 79.  What the Elections Code actually states is that in such situations, voters may cast "his or her vote immediately using an alternative procedure established prior to the election."  Cal. Elec. Code § 14299(b).

The statute does not state any guidelines for the "alternative procedure," besides mandating that it be approved by the Secretary of State. *Id.* § 14299(c).

Plaintiffs have failed to allege a cognizable Elections Clause claim sufficient to survive a Rule 12(b)(6) motion. Both the Governor and the Secretary of State possess statutory authority to issue the orders and regulations that Plaintiffs challenge. Moreover, the "contradictions" that Plaintiffs allege between state election law and the emergency regulations simply are not, in fact, contradictions. Plaintiffs present no other basis for finding that State Defendants have "usurped" the Legislature's authority under the Elections Clause, and the claim should be dismissed.

## B.    Equal Protection and Due Process Claims

On both their equal protection and due process claims, Plaintiffs allege constitutional violations based on their vote dilution theory. Compl. at ¶¶ 153–55, 165–66. Yet despite voluminous case law analyzing the Fourteenth Amendment, Plaintiffs do not cite to a single case that endorses their approach—nor could they, because it does not exist.

Regarding their equal protection claim, Plaintiffs make no serious attempt at articulating anything approaching a classification used by State Defendants in the administration of the 2020 general election. They do allege a diminution in value of their own votes, the votes of their supporters, and the votes of EIPCa's citizen observers. Compl. at ¶ 153. But the supposed cause of this "injury"—State Defendants' "[intentional failure] to ensure that only legally cast VBM ballots were" counted in the election—in no way involves any classification or disparate treatment between voters. Rather, this supposed dilution would impact *every vote equally*. As pled by Plaintiffs, no vote would have greater or lesser weight on the basis of any discernable classification, except perhaps if one were to consider a class of individuals who voted legally, versus a class of individuals who voted illegally. *See Citizens for Fair Representation v. Padilla*, 815 F. App'x. 120, 1234

(9th Cir. 2020) (rejecting standing in equal protection claim raised on the basis of vote dilution).  Even so, Plaintiffs do not allege this classification, and it certainly is not a classification that State Defendants used.

Analysis of Plaintiffs' equal protection claim necessarily overlaps with the prior standing analysis.  This is because a plaintiff *may* establish standing on an equal protection claim on the basis of an injury that is "widely shared," so long as it is also "concrete and specific."  *FEC v. Akins*, 524 U.S. 11, 24-25 (1998).  But as already discussed above, Plaintiffs' "conceptualization of vote dilution—state actors counting ballots in violation of state election law—is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment."  *Bowyer*, 2020 WL 7238261, at *5 (quoting *Bognet v. Sec'y of Commonwealth of Pa.*, 980 F.3d 336, 355 (internal quotation marks omitted), *petn. for cert docketed*, No. 20-740 (Nov. 27, 2020)).

Plaintiffs further attempt to ground their equal protection claim on the allegation that State Defendants "appl[ied] disparate rules in different counties, causing the votes of some California citizens to be treated differently from those of others."  Compl. at ¶ 154.  Yet Plaintiffs offer no support for this allegation, and they in fact challenge the emergency regulations that were promulgated for the explicit purpose of ensuring consistency in vote counting throughout the state.  *See* State Defs.' RJN, Ex. 2.

Plaintiffs cite a wide array of cases in an attempt to support their due process claim.  *See* Compl. at ¶¶ 158–68.  In the end, though, those citations provide little support for Plaintiffs' claim.  As a general matter, the right to vote is fundamental, and it is protected by the Fourteenth Amendment.  But Plaintiffs have not alleged that they were denied their right to vote, or that their votes were not counted.  Again, their claim rests entirely upon their unrecognized theory of vote dilution, by which "fraudulent" votes were cast (with no allegations regarding how many, in which counties, or whether they were for or against Plaintiffs, for example), in turn

1  diminishing the value of Plaintiffs' votes.  But "vote dilution," as traditionally
2  conceptualized and recognized by the courts, "refers to the idea that each vote must
3  carry equal weight." *Rucho*, 139 S. Ct. at 2501.  And even under Plaintiffs' version
4  of facts, each vote *did* carry equal weight.

5      Plaintiffs largely rely on quotations from two Supreme Court cases in an
6  attempt to support their theory.  *See* Compl. at ¶¶ 161–64.  The first, *Anderson v.*
7  *United States*, was a criminal appeal involving defendants who had been convicted
8  under a federal statute for casting fictitious votes for federal, state, and local offices.
9  *See* 417 U.S. 211 (1974).  The excerpts that Plaintiffs cite are dicta, and the Court
10  made no holding regarding the applicability of vote dilution as an injury sufficient
11  to establish a violation of due process.  *See id.* at 226–27; Compl. at ¶¶ 162–63.
12  The second is *Reynolds v. Sims*, a civil rights era case in which Chief Justice
13  Warren authored the opinion holding that Alabama's proposed apportionment plans
14  violated the Equal Protection Clause.  *See* 377 U.S. 533 (1964).  *Reynolds* is
15  illustrative of exactly what Plaintiffs seem to be missing here—that "vote dilution,"
16  as understood in the context of the Fourteenth Amendment and civil rights, is when
17  a "favored group has full voting strength," and "[t]he groups not in favor have their
18  votes discounted."  *Id.* at 555, n.29 (quoting *South v. Peters*, 339 U.S. 276, 279
19  (1950) (Douglas, J., dissenting)).  It offers no support for either Plaintiffs' due
20  process or equal protection claims against State Defendants, both of which should
21  be dismissed.

22      **C.  Guarantee Clause Claim**

23      As discussed above, see *supra*, I.C., it is well-established that claims raised
24  under the Guarantee Clause are "nonjusticiable political question[s]."  *Murtishaw*,
25  255 F.3d at 961; *see also Rucho*, 139 S. Ct. at 2506; *New York*, 505 U.S. at 184;
26  *Pacific States Tel. & Tel. Co.*, 223 U.S. at 146; *State of Cal.*, 104 F.3d at 1091.
27  Accordingly, Plaintiffs' fourth cause of action also fails to state a cognizable claim
28  upon which relief may be granted, and should be dismissed.

**CONCLUSION**

The claims raised here by Plaintiffs are baseless.  For the foregoing reasons, all claims against State Defendants should be dismissed, with prejudice.

Dated:  February 12, 2021                        Respectfully submitted,

                                                                XAVIER BECERRA
                                                                Attorney General of California
                                                                ANTHONY R. HAKL
                                                                Supervising Deputy Attorney General


                                                                RYAN A. HANLEY
                                                                Deputy Attorney General
                                                                *Attorneys for State Defendants*

Memo of Ps & As ISO State Defendants' Motion
to Dismiss the Complaint (2:21-cv-00032)