

1 JAMES R. WILLIAMS, County Counsel (S.B. #271253)
  DOUGLAS M. PRESS, Assistant County Counsel (S.B. #168740)
2 MARY E. HANNA-WEIR, Deputy County Counsel (S.B. #320011)
  KIM H. HARA, Deputy County Counsel (S.B. # 258763)
3 JULIA B. SPIEGEL, Deputy County Counsel (S.B. #292469)
  OFFICE OF THE COUNTY COUNSEL
4 70 West Hedding Street, East Wing, Ninth Floor
  San José, California 95110-1770
5 Telephone: (408) 299-5900
  Facsimile: (408) 292-7240
6 Email: julia.spiegel@cco.sccgov.org

7 Attorneys for Defendant
  SHANNON BUSHEY, REGISTRAR OF
8 VOTERS FOR THE COUNTY OF SANTA
  CLARA
9

10

11                    UNITED STATES DISTRICT COURT

12                  CENTRAL DISTRICT OF CALIFORNIA

13

14

15 ELECTION INTEGRITY PROJECT        No. 2:21-cv-00032-AB-MAA
   CALIFORNIA, INC., et al.,
16                                   **NOTICE OF MOTION AND**
                                     **MEMORANDUM OF POINTS AND**
17            Plaintiffs,            **AUTHORITIES IN SUPPORT OF**
                                     **COUNTY DEFENDANTS' MOTION**
18 v.                                **TO DISMISS PLAINTIFFS' FIRST**
                                     **AMENDED COMPLAINT**
19 SHIRLEY WEBER, CALIFORNIA
   SECRETARY OF STATE, et al,,       Date:     May 14, 2021
20                                   Time:     10:00 a.m.
              Defendants.            Crtrm:    7B
21                                   Judge:    Hon. André Birotte Jr.

22

23

24

25

26

27

28

                                     1

1    **NOTICE OF MOTION TO DISMISS**

2    **TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

3         PLEASE TAKE NOTICE that on **May 14, 2021 at 10:00 a.m. in Courtroom**

4    **7B** of the United States District Court of the Central District of California, located at

5    First Street Court House, 350 West First Street, Los Angeles, California 90012,

6    Defendants Rebecca Spencer, Riverside County Registrar of Voters; Dean C. Logan,

7    Los Angeles County Registrar-Recorder/County Clerk;[1] Mark A. Lunn, Ventura

8    County Registrar of Voters; Bob Page, San Bernardino County Registrar of Voters;

9    Courtney Bailey-Kanelos, Sacramento County Registrar of Voters;[2] Tim Dupuis,

10   Registrar of Voters for the County of Alameda; Deborah Cooper, Contra Costa

11   County Registrar of Voters; Shannon Bushey, Registrar of Voters for the County of

12   Santa Clara; Joe Paul Gonzalez, San Benito County Clerk-Auditor-Recorder-Registrar

13   of Voters;[3] Gail Pellerin, Santa Cruz County Registrar of Voters; James A. Kus,

14   County Clerk/Register of Voters for the County of Fresno;[4] Neal Kelley, Registrar of

15   Voters for the County of Orange, and Claudio Valenzuela, Registrar of Voters for

16   Monterey County ("County Defendants"[5]) will and hereby do move the Court

17   pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) for an order

18   dismissing Plaintiffs' First Amended Complaint in its entirety for lack of subject

19   matter jurisdiction and for failure to state a claim upon which relief can be granted.

20        This motion is based on this Notice of Motion and Motion, the Memorandum of

21   Points and Authorities below, Plaintiffs' First Amended Complaint and documents

22   incorporated by reference therein, the arguments that may be presented at the hearing

23

24   [1] Erroneously sued herein as Los Angeles County Registrar of Voters, Dean Logan.

25   [2] Erroneously sued herein as Sacramento County Registrar of Voters, Courtney Bailey-Kanelo.

26   [3] Erroneously sued herein as San Benito County Registrar of Voters, Joe Paul Gonzales.

27   [4] Erroneously sued herein as Fresno County Registrar of Voters James A. Kus.

28   [5] County of Santa Clara Registrar of Voters Shannon Bushey submits this motion on behalf of all the County Defendants.

1  on this Motion, and any other matters the Court deems relevant. This motion is made

2  following the conference of counsel pursuant to Local Rule 7-3, which took place on

3  March 22, 2021.

4  Dated: April 5, 2021                    Respectfully submitted,

5                                          JAMES R. WILLIAMS

6                                          COUNTY COUNSEL

7                              By:    */s/ Julia B. Spiegel*

8                                     JULIA B. SPIEGEL

9                                     Deputy County Counsel

10                                    Attorneys for Defendant

11                                    Shannon Bushey, Registrar of Voters for the
                                      County of Santa Clara
12

13  Dated: April 5, 2021                    DONNA ZIEGLER
                                            County Counsel
14

15                             By:    */s/ Raymond Lara*

16                                    RAYMOND LARA
                                      Senior Deputy County Counsel
17

18                                    Attorneys for Defendant
                                      Tim Dupuis, Registrar of Voters for
19                                    the County of Alameda

20  Dated: April 5, 2021                    SHARON L. ANDERSON
                                            County Counsel
21

22                             By:    */s/ Rebecca Hooley*

23                                    REBECCA HOOLEY
                                      Deputy County Counsel
24

25                                    Attorneys for Defendant

26                                    Deborah Cooper, Contra Costa
                                      County Registrar of Voters
27

28

3

1   Dated: April 5, 2021                    DANIEL C. CEDERBORG
2                                           County Counsel

3                                  By:      */s/ Kyle R. Roberson*
4                                           KYLE R. ROBERSON
                                            Deputy County Counsel
5
6                                           Attorneys for Defendant
                                            James A. Kus, County Clerk/Register of Voters
7                                           for the County of Fresno

8   Dated: April 5, 2021                    RODRIGO CASTRO-SILVA
9                                           County Counsel

10                                 By:      */s/ Eva W. Chu*
11                                          EVA W. CHU
                                            Deputy County Counsel
12
13                                          Attorneys for Defendant
                                            Dean C. Logan, Los Angeles County Registrar-
14                                          Recorder/County Clerk
15
16  Dated: April 5, 2021                    LESLIE J. GIRARD
17                                          County Counsel

18                                 By:      */s/ Grace L. Pak*
19                                          GRACE L. PAK
                                            Deputy County Counsel
20
21                                          Attorneys for Defendant
                                            Claudio Valenzuela, Registrar of Voters for
22                                          the County of Monterey

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

4

1   Dated: April 5, 2021            LEON J. PAGE
2                                   County Counsel

3                            By:    */s/ Rebecca S. Leeds*
4                                   REBECCA S. LEEDS
                                    Senior Deputy
5                                   Mark D. Servino, Supervising Deputy
6                                   Suzanne E. Shoai, Senior Deputy

7                                   Attorneys for Defendant
8                                   Neal Kelley, Registrar of Voters for
                                    the County of Orange
9
10  Dated: April 5, 2021            GREGORY P. PRIAMOS
                                    County Counsel
11
12                           By:    */s/ Ronak N. Patel*
                                    RONAK N. PATEL
13                                  Deputy County Counsel
14
                                    Attorneys for Defendant
15                                  Rebecca Spencer, Riverside County
16                                  Registrar of Voters

17  Dated: April 5, 2021            LISA A. TRAVIS
18                                  County Counsel

19                           By:    */s/ Krista C. Whitman*
20                                  KRISTA C. WHITMAN
                                    Assistant County Counsel
21
22                                  Attorneys for Defendant
                                    Courtney Bailey-Kanelos, Sacramento County
23                                  Registrar of Voters

24
25  ///
26  ///
27  ///
28  ///

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1  Dated: April 5, 2021                    BARBARA THOMPSON
2                                          County Counsel

3                              By:    */s/ Joseph Wells Ellinwood*
4                                     JOSEPH WELLS ELLINWOOD
                                      Assistant County Counsel
5
                                      Attorneys for Defendant
6                                     Joe Paul Gonzalez, San Benito County Clerk-
7                                     Auditor-Recorder-Registrar of Voters

8  Dated: April 5, 2021                    MICHELLE D. BLAKEMORE
9                                          County Counsel

10                             By:    */s/ Laura L. Crane*
11                                    LAURA L. CRANE
                                      Supervising Deputy County Counsel
12
13                                    Attorneys for Defendant
14                                    Bob Page, San Bernardino County
                                      Registrar of Voters
15
16 Dated: April 5, 2021                    JASON M. HEATH
                                           County Counsel
17
18                             By:    */s/ Melissa C. Shaw*
                                      MELISSA C. SHAW
19                                    Assistant County Counsel
20                                    Ruby Marquez, Chief Assistant County Counsel

21                                    Attorneys for Defendant
22                                    Gail Pellerin, Santa Cruz County
                                      Registrar of Voters
23

24 ///
25 ///
26 ///
27 ///
28 ///



1   Dated: April 5, 2021                    JEFFREY E. BARNES
2                                           Chief Assistant County Counsel

3                                 By:   */s/ Matthew A. Smith*
4                                        MATTHEW A. SMITH
                                         Assistant County Counsel
5
6                                        Attorneys for Defendant
                                         Mark A. Lunn, Ventura County
7                                        Registrar of Voters

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL & PROCEDURAL HISTORY .....................................................3

III. LEGAL STANDARD................................................................................5

IV.  LEGAL ARGUMENT ...............................................................................6

   A.   Plaintiffs Lack Standing to Assert Any of Their Claims.....................6

        i.    Plaintiffs Fail to Demonstrate Injury-In-Fact ...........................6

        ii.   Plaintiffs' Alleged Injury is Not Caused by County
              Defendants' Action .................................................................11

        iii.  Plaintiffs' Alleged Injury is Not Redressable by the Relief
              Sought......................................................................................11

   B.   Plaintiffs' Guarantee Clause Claim is Nonjusticiable.......................12

   C.   Plaintiffs' Claims Are Moot.............................................................13

   D.   Plaintiffs' Claims Are Barred by Laches and Principles of Equity ....15

   E.   Plaintiffs Fail to State a Claim for Relief .........................................17

        i.    Plaintiffs Fail to State a Claim for Relief Under the
              Elections Clause......................................................................19

        ii.   Plaintiffs Fail to State a Claim for Relief Under the
              Guarantee Clause ....................................................................19

        iii.  Plaintiffs Fail to State a Claim for Relief Under Both the
              Equal Protection and Due Process Clauses...............................20

   F.   Plaintiffs' Request for an Audit and Special Master to Oversee
        "Upcoming Elections" is Vastly Disproportionate to Their
        Purported Injury................................................................................22

V.   CONCLUSION .....................................................................................25

i

# TABLE OF AUTHORITIES

Page

## CASES

*A. Farber & Partners, Inc. v. Garber*
    234 F.R.D. 186, 193 (C.D. Cal. 2006)..........................................................23

*Already, LLC v. Nike, Inc.*
    568 U.S. 85 (2013).....................................................................................14

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009).........................................................................5, 6, 18

*Baker v. Carr*
    369 U.S 186 (1962)...................................................................................12

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007).....................................................................................5

*Bennett v. Yoshina*
    140 F.3d 1218 (9th Cir. 1998)....................................................................20

*Bodine v. Elkhart County Election Bd.*
    788 F.2d 1270 (7th Cir. 1986)..............................................................20, 22

*Bognet v. Sec'y Commw. of Pa.*
    980 F.3d 336, 351 (3d Cir. 2020) ................................................................7

*Bowyer v. Ducey*
    No. CV-20-02321-PHX-DJH, 2020 WL 7238261
    (D. Ariz. Dec. 9, 2020) .....................................................................1, 15, 16

*Citizens Oversight, Inc. v. Vu*
    35 Cal. App. 5th 612 (2019)......................................................................23

*City of Rome v. United States*
    446 U.S. 156 (1980)..................................................................................12

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013)....................................................................................7

*Curry v. Baker*
    802 F.2d 1302 (11th Cir. 1986).................................................................22

*DaimlerChrysler Corp. v. Cuno*
    547 U.S. 332 (2006)..........................................................................6, 9, 11

*Danjaq LLC v. Sony Corp.*
    263 F.3d 942 (9th Cir. 2001).......................................................................15

*Davis v. FEC*
    554 U.S. 724 (2008).......................................................................................6

*Deakins v. Monaghan*
    484 U.S. 193 (1988).....................................................................................14

*Dillon v. Nissan Motor* Co.
    986 F.2d 263 ................................................................................................23

*Donald J. Trump for President, Inc. v. Boockvar*
    No. 2:20-cv-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020).............20, 22

*Donald J. Trump for President, Inc. v. Sec'y Commw. of Pa.*
    830 Fed. Appx. 377 (3d Cir. 2020) ..............................................................1

*Donald Trump for President, Inc. v. Cegavske*
    No. 2:20-cv-1445 JCM (VCF), 2020 WL 5626974
    (D. Nev. Sept. 18, 2020) ...............................................................................8

*Ex parte Levitt*
    302 U.S. 633, 634 (1937)...............................................................................6

*Flast v. Cohen*
    392 U.S. 83 (1968).........................................................................................7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*
    528 U.S. 167 (2000).............................................................................10, 14

*Fulani v. Hogsett*
    917 F.2d 1028 (7th Cir. 1990).....................................................................15

*FW/PBS, Inc. v. Dallas*
    493 U.S. 215 (1990).......................................................................................6

*Gill v. Whitford*
    138 S. Ct. 1916 (2018)................................................................................11

*Gold v. Feinberg*
    101 F.3d 796 (2d Cir. 1996).......................................................................22

*Harlan v. Scholz*
    866 F.3d 754 (7th Cir. 2017)........................................................................22

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982)....................................................................................10

*Hendon v. North Carolina State Bd. of Elections*
    710 F.2d 177 (4th Cir.1983).........................................................................22

*Hennings v. Grafton*
    523 F.2d 861 (7th Cir. 1975)........................................................................22

*Johnson v. Hood*
    430 F.2d 610 (5th Cir.1970).........................................................................22

*King v. Whitmer*
    No. 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020).....1, 15, 16, 24

*Kokkonen v. Guardian Life Ins. Co.*
    511 U.S. 375 (1994)......................................................................................5

*La Buy v. Howes Leather Co.*
    352 U.S. 249 (1957)....................................................................................24

*Lance v. Coffman*
    549 U.S. 437 (2007)...................................................................................7, 9

*Largess v. Supreme Jud. Ct. for the State of Mass.*
    373 F.3d 219 (1st Cir. 2004) ....................................................................7, 19

*League of Women Voters of Ohio v. Brunner*
    548 F.3d 463 (6th Cir. 2008)........................................................................17

*Lewis v. Cont'l Bank Corp.*
    494 U.S. 472 (1990)...............................................................................13, 15

*Libertarian Party of Pa. v. Governor of Pa.*
    813 F. App'x 834 (3d Cir. 2020)..................................................................21

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)...........................................................................6, 11, 19

*Martel v. Condos*
    No. 5:20-cv-131, 2020 WL 5755289 (D. Vt. Sept. 16, 2020).........................8

iv

*Mays v. LaRose*
   951 F.3d 775 (6th Cir. 2020)........................................................................21

*Miller v. Glenn Miller Prods., Inc.*
   454 F.3d 975 (9th Cir. 2006)........................................................................16

*Miller v. Treadwell*
   736 F. Supp. 2d 1240 (D. Alaska 2010) ......................................................19

*New York v. United States*
   505 U.S. 144 (1992)......................................................................................13

*Nolles v. State Comm. for Reorg. of Sch. Dists.*
   524 F.3d 892 (8th Cir. 2008)..........................................................................8

*Pac. States Tel. & Tel. Co. v. Or.*
   223 U.S. 118 (1912)......................................................................................12

*Paher v. Cegavske*
   457 F. Supp. 3d 919 (D. Nev. 2020) ........................................................8, 9

*Perry v. Judd*
   840 F. Supp. 2d 945 (E.D. Va. 2012) ..........................................................15

*Piper Aircraft Corp. v. Wag-Aero, Inc.*
   741 F.2d 925 (7th Cir. 1984)........................................................................16

*Powell v. Power*
   436 F.2d 84 (2d Cir.1970)............................................................................22

*Protectmarriage.com-Yes on 8 v. Bowen*
   752 F.3d 827 (9th Cir. 2014)........................................................................13

*Republican Party of Pa. v. Cortes*
   218 F. Supp. 3d 396 (E.D. Pa. 2016)...........................................................22

*Reynolds v. Sims*
   377 U.S. 533, 84 S. Ct. 1362 (1964) ...........................................................13

*Rucho v. Common Cause*
   139 S. Ct. 2484 (2019)..............................................................................8, 12

*Safe Air for Everyone v. Meyer*
   373 F.3d 1035 (9th Cir. 2004)........................................................................5

v

*Soules v. Kauaians for Nukolii Campaign Comm.*
    849 F.2d 1176 (9th Cir. 1988)........................................................................18

*Spokeo, Inc. v. Robins*
    136 S. Ct. 1540 (2016).....................................................................................6

*Stein v. Cortes*
    223 F. Supp. 3d 423 (E.D. Pa. 2016)..............................................................9

*SW Voter Registration Educ. Project v. Shelley*
    344 F.3d 914 (9th Cir. 2003)..........................................................................16

*Toney v. White*
    488 F.2d 310 (5th Cir. 1973)..........................................................................17

*U.S. Parole Comm'n v. Geraghty*
    445 U.S. 388 (1980).......................................................................................13

*United States v. Richardson*
    418 U.S. 166 (1974).........................................................................................6

*Weinstein v. Bradford*
    423 U.S. 147 (1975).......................................................................................14

*White v. Lee*
    227 F.3d 1214 (9th Cir. 2000)..................................................................5, 10

*Wood v. Raffensperger*
    981 F.3d 1307 (11th Cir. 2020)......................................................................15

*Wood v. Raffensperger*
    No. 1:20-cv-04651-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020).....17

*Wood v. Raffensperger*
    No. 1:20-cv-5155, 2020 WL 7706833 (N.D. Ga. Dec. 28, 2020) .................8

## **U.S. CONSTITUTION**

U.S. Const. art. I, § 4, cl.1.......................................................................................7

U.S. Const. art. II, § 1, cl. 2.....................................................................................7

U.S. Const. art. III, § 2, cl. 1 ...................................................................................6

U.S. Const. art. IV, § 4.......................................................................................7, 12

# FEDERAL STATUTES AND RULES

3 U.S.C. § 6 ..........................................................................................................4

3 U.S.C. § 7 ..........................................................................................................4

42 U.S.C. § 1983 ................................................................................................17

Fed. R. Civ. P. 8(a)(2) ......................................................................................18

Fed. R. Civ. P. 9(b) ...........................................................................................18

Fed. R. Civ. P. 12(b)(1) ................................................................... 2, 5, 10, 17

Fed. R. Civ. P. 12(b)(6) ..................................................................... 3, 5, 17, 19

Fed. R. Civ. P. 53(a)(1)(A)–(B) .......................................................................24

Fed. R. Civ. P. 53(b) .........................................................................................24

Fed. R. Civ. P. Advisory Comm. Notes on Rules—2003 Amendment .................25

# STATE STATUTES AND REGULATIONS

Cal. Code Civ. Proc. § 35 ..................................................................................20

Cal. Code Reg., tit. 2, § 20136(e) .......................................................................3

Cal. Elec. Code § 2194 ......................................................................................24

Cal. Elec. Code § 2300(a)(9)(B) .......................................................................12

Cal. Elec. Code § 3019(d) ...................................................................................9

Cal. Elec. Code § 3020(b) ...................................................................................3

Cal. Elec. Code § 3020(d) ...................................................................................3

Cal. Elec. Code §§ 6904–6906 ...........................................................................4

Cal. Elec. Code § 13314(a)(2) ...........................................................................20

Cal. Elec. Code § 14212 ......................................................................................3

Cal. Elec. Code § 14401 ......................................................................................3

Cal. Elec. Code §§ 15300–15376 ..................................................................3

Cal. Elec. Code §15360 ..............................................................................23

Cal. Elec. Code §§ 15365–15367 ...............................................................23

Cal. Elec. Code § 15372 ...............................................................................3

Cal. Elec. Code § 15400 ...............................................................................4

Cal. Elec. Code § 15503 ...............................................................................4

Cal. Elec. Code § 15505 ...............................................................................4

Cal. Elec. Code § 15620(a) ..........................................................................3

Cal. Elec. Code § 16003 ...............................................................................4

Cal. Elec. Code § 16401(c) ..........................................................................4

Cal. Elec. Code §§ 17300-17306..................................................................23

Cal. Elec. Code § 19100 *et seq.*..................................................................24

Cal. Gov't Code § 6254 ................................................................................24

## OTHER AUTHORITIES

Centers for Disease Control and Prevention, Polling Locations and Voters (Oct.
   29, 2020)....................................................................................................21

Certificate of Ascertainment for Electors of President and Vice President of the
   United States of America (Dec. 5, 2020)....................................................4

Certificate of the Secretary of State, Alex Padilla (Dec. 11, 2020).........................4

Mark A. Fellows & Roger S. Haydock, *Federal Court Special Masters: A Vital
   Resource in the Era of Complex Litigation*, 31 William Mitchell L. Rev.
   1269 (2005) ...............................................................................................25

Orange County, CA Elections to Conduct Risk Limiting Audit of Presidential
   General Election Results, (Nov. 8, 2020)...................................................23

Secretary of State Alex Padilla, Statement of Vote, General Election November
   3, 2020.......................................................................................................4

1

Voting Technologies Approved for Use in California (as of Dec. 15, 2020) .........24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The November 3, 2020 Presidential General Election is over—and it has been over for months. Some 17.5 million Californians cast their votes more than five months ago, and state and federal bodies duly certified the results. With the winners of the presidential and other contests decided, victorious candidates took their oaths and assumed their new roles.

And yet, Plaintiffs—comprised of a non-profit corporation and unsuccessful California congressional candidates who allegedly plan to run for election in 2022—now seek to nullify the will of the people of California by casting doubt upon the results of the past election and seeking to reverse decades of efforts in California to expand access to the ballot box. And they attempt to do so by repackaging speculative fraud and voting irregularity claims that have been debunked and rejected by state and federal courts across the country.[1] Although court after court has summarily rejected these arguments, Plaintiffs make no effort to substantiate their claims or cure their many deficiencies. Instead, Plaintiffs seek to extend them even further—to an undefined number of future elections. Plaintiffs' claims must fail.

*First*, Plaintiffs lack Article III standing, having failed to articulate a cognizable injury for any of their causes of action or relief that would redress their alleged injury. Rather, Plaintiffs assert little more than speculation and conjecture in attempting to cast doubt upon the legitimacy of, and ultimately undo, the November 2020 election. Though difficult to discern from the First Amended Complaint (FAC), Plaintiffs appear to claim that, due to alleged "irregularities and potential fraud" in the conduct of that election, the County Defendants' policies and operations may have permitted

---

[1] *See, e.g., Donald J. Trump for President, Inc. v. Sec'y Commw. of Pa.*, 830 Fed. Appx. 377 (3d Cir. 2020); *Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020); *King v. Whitmer*, No. 20-13134, 2020 WL 7134198. (E.D. Mich. Dec. 7, 2020), appeal dismissed, No. 20-2205, 2021 WL 688804 (6th Cir. Jan. 26, 2021).

some votes cast in a smattering of counties to be diluted by illegal votes or suspected vote tally changes. Yet County Defendants' only role is the ministerial administration of elections in accordance with state and federal statutes and regulations. While Plaintiffs' FAC makes particularized allegations of election administration irregularities against eleven of the thirteen County Defendants, it does not allege that any such irregularities could have impacted the outcome of any electoral contests, past or future, making clear they have no concrete or particularized injury. Plaintiffs also fail to allege that County Defendants' actions led to actual fraud or mistakes that changed election outcomes due to vote dilution. And even if they did, this Court could not redress the injury through the evidence preservation, audit, and declaratory relief that Plaintiffs seek. Further, Plaintiffs' Guarantee Clause claim is non-justiciable based on clear U.S. Supreme Court precedent. And, having filed this lawsuit long after the close of the November 2020 election—and after expiration of all statutory deadlines for filing challenges to those contests—Plaintiffs' claims are plainly moot. Consequently, this Court lacks subject matter jurisdiction to entertain Plaintiffs' claims, and it must dismiss them under Federal Rule of Civil Procedure 12(b)(1).

*Second*, Plaintiffs' claims are barred by the doctrine of laches and principles of equity. As in parallel cases across the country, Plaintiffs were aware of claims of alleged irregularities by November 3, 2020 ("Election Day"), and with respect to many of the laws they challenge, years before. Yet Plaintiffs give no reason, much less a legitimate one, for sitting on their claims. Plaintiffs now ask this Court to appoint one or more special masters to oversee a duplicative and invasive audit of highly sensitive election administration infrastructure and material, with the aim of seeking to invalidate election results across the State of California—a dangerous and unprecedented request. The County Defendants—and the public—would suffer extraordinary prejudice should such a request be granted.

*Third*, Plaintiffs fail to state any claim for relief against the County Defendants. Their allegations about election irregularities and potential fraud amount to little more

than a list of scattershot idiosyncrasies in the elections process that have no bearing on the Elections or Guarantee Clauses, and that in no way infringe on Plaintiffs' Equal Protection and Due Process rights. Moreover, the relief Plaintiffs seek is plainly out of proportion to the purported injury they assert and should not be granted. For all these reasons, Plaintiffs' claims fail under Federal Rule of Civil Procedure 12(b)(6) as well.

Because Plaintiffs have twice failed to properly plead their claims, County Defendants request that the Court dismiss this action with prejudice.

## II.   FACTUAL & PROCEDURAL HISTORY

By the close of voting on November 3, 2020, approximately 17.5 million Californians had cast their votes in the 2020 Presidential General Election. All polls, including vote-by-mail ballot drop boxes, closed by 8:00 pm that day,[2] and all ballots placed in the mail needed to be postmarked on or before Election Day.[3] Over the next 30 days, county registrars across the state completed their official canvass, processing and adjudicating ballots and completing their State-mandated audits of the tallied results. *See* Cal. Elec. Code §§ 15300–15376. By December 3, 2020, the county registrars of voters across the state certified their election results, completing their role in administering the election. Cal. Elec. Code § 15372.

Plaintiffs did not file an election contest or request a recount in any of the County Defendant jurisdictions or statewide. Under California law, recount requests by voters must be made within five days after certification—in this case, by December 8, 2020. Cal. Elec. Code § 15620(a). Election contests involving presidential electors must be filed within 10 days of the results being declared, which California Governor

---

[2] Cal. Elec. Code § 14212 (polling location hours), Cal. Code Reg., tit. 2, § 20136(e) (vote-by-mail ballot drop box hours). Voters still in line when the polls closed, or in areas where a court order extended the voting hours, could make use of polling locations and drop boxes to vote after 8:00 pm. *See* Cal. Elec. Code § 14401, Cal. Code Reg., tit. 2, § 20136(e).

[3] Cal. Elec. Code § 3020(b), (d) (ballots arriving by mail must be postmarked on or before Election Day, time or date stamped on or before Election Day, or, if lacking other indicia of time of mailing, signed by the voter on or before Election Day).

Gavin Newsom did on December 5, 2020.[4] Cal. Elec. Code § 16401(c); 3 U.S.C. § 6. But, because such contests must be resolved "at least six days before the first Monday after the second Wednesday in December," Cal. Elec. Code § 16003, those contests also had to have been filed by December 8, 2020. Plaintiffs filed no such challenges.

On December 11, 2020, the Secretary of State certified the statewide results.[5] Cal. Elec. Code §§ 15503, 15505. California's presidential electors then met and cast their electoral votes on December 14, 2020, as did electors in states across the nation. 3 U.S.C. § 7; Cal. Elec. Code §§ 6904–6906. Meanwhile, governing boards across the state declared the election results, and new local and state officeholders took their oaths of office. Cal. Elec. Code § 15400.

Many weeks later, on January 4, 2021, Plaintiffs—a non-profit corporation (Election Integrity Project California, or EIPCa) and thirteen Republican congressional candidates in California who lost their general elections by multiple points[6] and who allegedly intend to be candidates in 2022, Dkt. 68, ¶¶ 22–35—filed this action. Plaintiffs sued California's Governor, Secretary of State, and Attorney General, and the Registrars of Voters for thirteen of the State's 58 counties. *Id.*, ¶¶ 36–51. The day after filing this action, and before properly serving most Defendants, Plaintiffs filed an application for a temporary restraining order, seeking preservation—and a private audit—of dozens of categories of highly sensitive election administration-related infrastructure, records, security access tokens, passwords, and other materials. Dkt. 21, pp. 3–7; Dkt. 68, Prayer, ¶ C.

On January 11, 2021, this Court denied Plaintiffs' application. The Court found

---

[4] Certificate of Ascertainment for Electors of President and Vice President of the United States of America (Dec. 5, 2020), https://www.archives.gov/files/electoral-college/2020/ascertainment-california.pdf (last accessed Apr. 4, 2021).

[5] Certificate of the Secretary of State, Alex Padilla (Dec. 11, 2020). https://elections.cdn.sos.ca.gov/sov/2020-general/sov/17-cert.pdf (last accessed Feb. 8, 2021).

[6] *See* Secretary of State Alex Padilla, "Statement of Vote, General Election November 3, 2020," https://elections.cdn.sos.ca.gov/sov/2020-general/sov/complete-sov.pdf, at 24–35 (last accessed Apr. 4, 2021).

4

1  that Plaintiffs failed to demonstrate irreparable injury as they presented no "valid

2  reason or need to order Defendants not to destroy evidence." Dkt. 35, pp. 3–4.

3      On January 20, 2021, Joe Biden assumed the Presidency. On February 12,

4  2021, pursuant to a stipulated common responsive pleading deadline, Dkt. 39, State

5  and County Defendants filed motions to dismiss. Dkt. 43, 45. On March 8, 2021,

6  Plaintiffs filed their FAC, adding additional plaintiffs and factual assertions,

7  expanding upon legal claims, and amending their prayer for relief—but making no

8  new allegations regarding County Defendants.[7]

9                    **III.    LEGAL STANDARD**

10      Under Rule 12(b)(1), a court must dismiss a case if it lacks subject matter

11  jurisdiction. Rule 12(b)(1) attacks can be facial or factual. *White v. Lee*, 227 F.3d

12  1214, 1242 (9th Cir. 2000). Facial attacks require the defendants to show that the

13  allegations in a complaint are "insufficient on their face to invoke federal

14  jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A

15  factual attack allows a court to "look beyond the complaint to matters of public

16  record," and it "need not presume the truthfulness of the plaintiffs' allegations." *Lee*,

17  227 F.3d at 1242. The plaintiffs bear the burden of establishing subject matter

18  jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994).

19      A court must also grant a motion to dismiss under Federal Rule of Civil

20  Procedure 12(b)(6) if a plaintiff fails to allege "enough facts to state a claim to relief

21  that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

22  (2007). The plaintiff must sufficiently plead each required element of a cause of

23  action. *Ashcroft v. Iqbal*, 556 U.S. 662, 675–77 (2009). Although courts considering a

24  motion to dismiss must draw reasonable inferences in a plaintiff's favor, "pleadings

25  that, because they are no more than conclusions, are not entitled to the assumption of

26

27  ───────────────
   [7] Despite amending their complaint, Plaintiffs' allegations against the County
   Defendants still only include eleven of the thirteen elections officials. Dkt. 86 ¶¶ 12,
28  14, 15, 110–18, 123–32, 141. Plaintiffs make no specific allegations regarding San
   Benito or Santa Cruz County Registrars Joe Paul Gonzalez or Gail L. Pellerin.

truth." *Id.* at 679. A court must disregard conclusory allegations and "draw on its judicial experience and common sense" to make a context-specific determination as to whether a complaint states a plausible claim. *Id.*

## IV.   LEGAL ARGUMENT

### A.   Plaintiffs Lack Standing to Assert Any of Their Claims

Plaintiffs' action must be dismissed because they lack Article III standing to pursue any of the causes of action they assert. Article III limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To establish standing, a plaintiff must demonstrate (1) that the plaintiff suffered an injury in fact; (2) that there is a causal connection between the injury and the alleged conduct, such that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury will likely be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Standing is not dispensed in gross. *See Davis v. FEC*, 554 U.S. 724, 734 (2008). While not all plaintiffs need to demonstrate standing to pursue all causes of action, at least one plaintiff "must demonstrate standing for each claim [they] seek[] to press" and for "each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted). Plaintiffs bear the burden of demonstrating Article III standing. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

### i.   Plaintiffs Fail to Demonstrate Injury-In-Fact

To demonstrate "injury in fact," the injury must be "particularized," such that it "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citations omitted). The injury also must be "concrete"—i.e., it must be "real" and not "abstract." *Id.* A plaintiff cannot show a particularized and concrete injury by showing "that he has merely a general interest common to all members of the public." *Ex parte Levitt*, 302 U.S. 633, 634 (1937). A plaintiff also may not use a "federal court as a forum in which to air his generalized grievances about the conduct of government." *United States v. Richardson*, 418 U.S. 166, 174

6

1   (1974) (quoting *Flast v. Cohen*, 392 U.S. 83, 106 (1968)). But that is precisely what
2   Plaintiffs have done.

3   First, the plain text of the Guarantee Clause provides a guarantee *to the states*
4   and does not confer upon individuals or organizations standing to pursue any rights
5   *against* a state or, by extension, political subdivisions of a state (or their officials).
6   U.S. Const. art. IV, § 4 ("The United States shall guarantee to every State in this
7   Union a Republican Form of Government …"); *Largess v. Supreme Jud. Ct. for the*
8   *State of Mass.*, 373 F.3d 219, 224 n.5 (1st Cir. 2004) (per curiam). As such, Plaintiffs
9   cannot assert a Guarantee Clause claim.

10  Second, the Elections Clauses vest authority in "the Legislature" of each state to
11  regulate congressional and presidential elections. U.S. Const. art. I, § 4, cl.1, art. II,
12  § 1, cl. 2. The U.S. Supreme Court has held that private citizens do not have standing
13  to assert a claim under the Elections Clauses absent a "particularized stake in the
14  litigation." *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (claims that are "plainly
15  undifferentiated and common to all members of the public" are generalized grievances
16  that do not confer standing). EIPCa surely does not have such a stake. But neither do
17  the individual congressional candidate plaintiffs, as they have failed to assert that the
18  outcome of their individual congressional contests would have changed due to
19  sufficient vote counting errors. *See Bognet v. Sec'y Commw. of Pa.,* 980 F.3d 336, 351
20  (3d Cir. 2020) (holding candidate did not have standing to raise Elections Clause
21  challenge to state law regarding absentee ballot timeliness rules without
22  allegations that later arriving ballots were more likely to be cast for his opponent).
23  Alleging that the individual Plaintiffs plan to be candidates in future congressional
24  races where they allege a generalized possibility of future vote dilution is not a
25  sufficiently concrete allegation of an injury in fact to support Article III standing. *See*
26  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("threatened injury must
27  be *certainly impending* to constitute injury in fact … allegations of *possible* future
28  injury are not sufficient.") (internal quotations omitted) (collecting cases).

7

Third, courts have consistently held that individual voters lack standing to bring an Equal Protection or Due Process Clause claim for vote dilution due to unlawful or invalid ballots. *See Wood v. Raffensperger*, No. 1:20-cv-5155, 2020 WL 7706833, at *3 (N.D. Ga. Dec. 28, 2020) (collecting cases); *Rucho v. Common Cause*, 139 S. Ct. 2484, 2501 (2019) ("'[V]ote dilution' in the one-person, one-vote cases refers to the idea that each vote must carry equal weight."). Rather, vote dilution amounts to a general grievance that cannot support a finding of particularized injury, as required by Article III. *See Donald Trump for President, Inc. v. Cegavske*, No. 2:20-cv-1445 JCM (VCF), 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020) ("[P]laintiffs' claims of a substantial risk of vote dilution 'amount to general grievances that cannot support a finding of particularized injury.'"); *Martel v. Condos*, No. 5:20-cv-131, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020) (rejecting vote-dilution theory as conferring standing because it constituted a generalized grievance); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926–27 (D. Nev. 2020) (noting that because "ostensible election fraud may conceivably be raised by any Nevada voter," the plaintiffs' "purported injury of having their votes diluted" does not "state a concrete and particularized injury"); *Nolles v. State Comm. for Reorg. of Sch. Dists.*, 524 F.3d 892, 900 (8th Cir. 2008) (concluding that voters lacked standing to pursue substantive due process claim because they did not demonstrate a particularized injury).

Plaintiffs' limited allegations that vote tallies in one county were more likely to change in favor of President Biden as counties adjudicated ballots and finalized results, Dkt. 68, ¶¶ 15, 123, do not transform their generalized grievances into a particularized injury. Plaintiffs are not representatives of the allegedly aggrieved candidate (former President Trump),[8] have failed to allege irregularities that would change the outcome, have alleged no protected class of voters who they claim had

---

[8] The individual Plaintiffs who lost their congressional races do not contend that the outcomes of their own races were impacted by vote dilution and cannot allege such an outcome change beyond mere speculation for future contests.

their votes diluted, and have not alleged that future electoral outcomes will be impacted by county policies and procedures somehow allowing fraudulent or irregular votes. Plaintiffs have identified no voters who were deprived of the right to vote, nor any voters who illegally submitted a vote-by-mail ballot, nor any reason why such acts would occur in the future. At base, Plaintiffs' allegations amount to an alleged incremental undermining of confidence in the election results, past and future. Such a "generalized grievance" is insufficient for Article III standing. *DaimlerChrysler Corp.*, 547 U.S. at 344 (standing lacking where plaintiff "suffers in some indefinite way in common with people generally"); *see, e.g.*, *Paher*, 457 F. Supp. 3d at 926 (voters' speculation that all-mail election would increase fraud, diluting their votes, was a generalized grievance, insufficient to confer standing); *Stein v. Cortes*, 223 F. Supp. 3d 423, 432–33 (E.D. Pa. 2016) (candidate's speculation that election's integrity was compromised was too generalized to support standing); *Lance*, 549 U.S. at 441–42 (claims that are "plainly undifferentiated and common to all members of the public" are generalized grievances that do not confer standing).

The FAC attempts to cure this lack of an injury-in-fact by adding spurious allegations that vote-by-mail voters had more time to vote than in-person voters. Dkt. 68, ¶¶ 154–58. However, those allegations misunderstand the facts and the legal requirements for accepting ballots arriving by mail, which must be postmarked on or before Election Day except in limited circumstances where there are no other indicia of the time of mailing, but the voter has signed and dated the envelope on or before Election Day. *See* Cal. Elec. Code § 3019(d). All vote-by-mail ballots deposited in drop boxes faced the same deadline as in-person polling: 8:00 p.m. on November 3, 2020. Further, the case law to which Plaintiffs point is inapposite: these cases address the *curtailment* of in-person voting, Dkt. 68, ¶ 158, not the *expansion* of in-person voting authorized by SB 423 (requiring all counties to open in-person voting on October 31, 2020). The assertions in the FAC of burdens falling on voters are factually incorrect and without legal merit—and this court need not accept them as

9

1   true. *See White*, 227 F.3d at 1242 (the "court may look beyond the complaint to
2   matters of public record" when ruling on a Rule 12(b)(1) motion).

3        For the same reasons that individual voters do not have standing to pursue these
4   claims, EIPCa has also failed to demonstrate an injury in fact under either
5   organizational or associational standing. To demonstrate an injury to the organization,
6   EIPCa would need to demonstrate that the actions of Defendants have caused a
7   "concrete and demonstrable injury to the organization's activities—with the
8   consequent drain on the organization's resources" that is "more than simply a setback
9   to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455
10  U.S. 363, 379 (1982). The FAC does not—and could not—identify any such injury to
11  the organization when the injury alleged is generalized vote dilution. EIPCa alleges
12  that the organization expended additional resources on election observation because of
13  "Defendants' obstruction … of EIPCa volunteers," Dkt. 68, ¶ 108, but Defendants'
14  election observer policies are unconnected to the vote dilution injury alleged in
15  support of their causes of action.

16       Further, for an association to have standing to bring suit on behalf of its
17  members, the association must demonstrate that "its members would otherwise have
18  standing to sue in their own right, the interests at stake are germane to the
19  organization's purpose, and neither the claim asserted nor the relief requested requires
20  the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v.*
21  *Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 181 (2000) (citation omitted). EIPCa does
22  not even attempt to establish that it has satisfied these requirements: it fails to identify
23  its members, to allege that its members have been injured, or that its members would
24  not be required to participate in the lawsuit. But even if it did include these basic
25  assertions, such allegations would fail to establish standing because generalized
26  grievances are insufficient to establish injury in fact.

27  ///
28  ///

1

2

### ii. Plaintiffs' Alleged Injury is Not Caused by County Defendants' Action

3    The conduct of County Defendants alleged in the complaint—election observer

4  policies that allegedly impeded observer access and sporadic instances of allegedly

5  questionable practices regarding ballot and technology security—was not the primary

6  cause of Plaintiffs' central injury: alleged vote dilution. Plaintiffs are instead

7  complaining that County Defendants' actions open the door to the possibility that

8  sufficient fraudulent, ineligible, or otherwise infirm ballots may have been cast (or

9  mistakenly rejected) by hypothetical people to cause a constitutional injury. Dkt. 68,

10  ¶¶ 8, 10, 58, 103, 140, 141, 159. This is far too speculative for the injury to "be fairly

11  traceable to the challenged action of" County Defendants. *See Lujan*, 504 U.S. at 560.

12

13

### iii. Plaintiffs' Alleged Injury is Not Redressable by the Relief Sought

14    Turning to the final prong of the standing analysis, Plaintiffs' purported injury

15  for all four causes of action—vote dilution—would not be remedied by the relief

16  sought. *See Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("A plaintiff's remedy must

17  be tailored to redress the plaintiff's particular injury."); *DaimlerChrysler Corp.*, 547

18  U.S. at 353. Invalidating the votes of millions of Californians by conducting an audit

19  that serves no purpose unless Plaintiffs seek to then decertify the election would not

20  remedy the alleged vote dilution. Dkt. 68, Prayer, ¶ C. Instead, it would reduce the

21  value of all votes cast to zero, delegitimizing every Californian's vote. Also, as

22  explained below, the time to challenge the 2020 election results has long since passed.

23  The election is over, and the results must stand.

24    The declaratory relief Plaintiffs seek also would not redress the injury alleged.

25  Plaintiffs' request for a declaratory judgment that the "restrictions imposed on citizen

26  observers by Defendant County Registrars during and after the November 2020

27  election" are unconstitutional, Dkt. 68, Prayer, ¶ E(f), is vague and overbroad.

28  Moreover, the California Elections Code provides reasonable limits on election

11

1   observers to protect the integrity of the process and permit election officials to

2   complete their work. *See* Cal. Elec. Code § 2300(a)(9)(B). Also, it is unclear how the

3   declaratory relief sought—a forward-looking remedy—would redress the purported

4   injury of vote dilution in the already passed election. Nor would it redress the

5   speculative prospect of fraudulent votes to be counted in future elections. Nor do

6   Plaintiffs allege that the County Defendants' election observer practices (used to

7   protect health and safety during the November 3, 2020 election at the height of a once-

8   in-a-century global pandemic) will continue to be in place in future elections. Finally,

9   Plaintiffs' request for the County Defendants to preserve evidence, and unprecedented

10  efforts to seek a burdensome and duplicative audit of that evidence, provides no relief

11  to remedy their purportedly diluted votes since the results of the past election will not

12  change.

13          In sum, Plaintiffs lack Article III standing. Consequently, this Court has no

14  jurisdiction over this action and the FAC should be dismissed in its entirety.

15          **B.      Plaintiffs' Guarantee Clause Claim is Nonjusticiable**

16          Plaintiffs' attempt to assert a cause of action under the U.S. Constitution's

17  Guarantee Clause, which provides that "[t]he United States shall guarantee to every

18  State in this Union a Republican Form of Government," U.S. Const. art. IV, § 4, also

19  fails. The U.S. Supreme Court has repeatedly held that claims under the Guarantee

20  Clause are nonjusticiable, political questions reserved to disputes among the political

21  branches. *See Rucho*, 139 S. Ct. at 2506 ("This Court has several times concluded,

22  however, that the Guarantee Clause does not provide the basis for a justiciable

23  claim."); *City of Rome v. United States*, 446 U.S. 156, 182 n.17 (1980) (declining to

24  reach Guarantee Clause claim because it is nonjusticiable); *Baker v. Carr,* 369 U.S.

25  186, 209 (1962) ("complaints based on that clause have been held to present political

26  questions which are nonjusticiable."); *Pac. States Tel. & Tel. Co. v. Or.*, 223 U.S. 118,

27  147–51 (1912) (finding Guarantee Clause claims regarding state law nonjusticiable).

28  Consequently, Plaintiffs are barred from asserting a claim under the Guarantee

12

1   Clause.[9]

2   ## C.   Plaintiffs' Claims Are Moot

3   Plaintiffs' FAC suffers from other fatal deficiencies as well. Having filed this

4   action weeks after the close of the 2020 election, Plaintiffs' claims are moot. In

5   essence, Plaintiffs seek a backdoor means of reversing the 2020 Presidential Election

6   results by asking the Court to order the County Defendants to preserve an exceedingly

7   wide range of machinery, materials, and information related to county election

8   administration, and to conduct a duplicative audit of the Counties' election

9   infrastructure without any assertion casting doubt on the integrity of post-election

10   audits that County Defendants already conducted. Dkt. 68, Prayer, ¶¶ A–C. There is

11   no "live" case or controversy regarding the November 2020 Presidential General

12   Election—which came to a close many months ago—nor relief available. *See U.S.*

13   *Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 410 (1980).[10]

14   Plaintiffs wrongly assert that their claims fall under the "capable of repetition,

15   yet evading review" exception to the mootness doctrine because of alleged "damage"

16   they have suffered related to "forthcoming elections." *See* Dkt. 68, ¶ 169; *id.* at ¶ 162.

17   This exception is applied "sparingly, and only in 'exceptional situations.'"

18   *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836–37 (9th Cir. 2014)

19   (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990)). To meet this high

20

21   [9] Various courts have suggested that there may be limited circumstances in which a
    claim may be pursued under the Guarantee Clause. *See, e.g., New York v. United*

22   *States*, 505 U.S. 144, 185 (1992); *Reynolds v. Sims*, 377 U.S. 533, 582, 84 S. Ct. 1362
    (1964) (concluding that "*some* questions raised under the Guarant[ee] Clause are

23   nonjusticiable") (emphasis added). But the Supreme Court has not squarely addressed
    "this difficult question." *New York*, 505 U.S. at 185. And any uncertainty in the

24   doctrine is irrelevant here because Plaintiffs have provided no basis to believe that this
    case would be the rare exception to this doctrine. In any event, Plaintiffs lack standing

25   to pursue their Guarantee Clause claim.

26   [10] On the other end of the spectrum, Plaintiffs ask the Court to appoint one or more
    special masters "to oversee and monitor the accuracy of vote counting in California's

27   upcoming elections." Dkt. 68, Prayer, ¶ D. But no live case or controversy could
    possibly exist with respect to such a speculative, distant, and undefined number of

28   elections; without a ripe, particularized injury, mootness need not even be considered.
    *See* Section IV(A)–(B).

13

1   bar, Plaintiffs must show that "(1) the challenged action was in its duration too short

2   to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable

3   expectation that the same complaining party would be subjected to the same action

4   again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

5          No such exceptional circumstances exist here. First, Plaintiffs' concerns about

6   the constitutionality of various election-related laws could have been litigated

7   pursuant to state election contest rules months if not years before the 2020 election

8   concluded. Similarly, Plaintiffs' allegations about the County Defendants'

9   administration of in-person voting and election observer procedures were known to

10   Plaintiffs at least as early as October 31, 2020, likely as early as the start of in-person

11   voting on October 5, 2020, and certainly by the close of voting on November 3, 2020

12   at the latest. Dkt. 68, ¶¶ 107–18. As explained elsewhere, Plaintiffs could have

13   challenged observer rules or filed an election contest on an expedited basis—but they

14   failed to do so. The duration for Plaintiffs to bring a lawsuit is thus not "too short"

15   simply because they slept on their rights. Second, Plaintiffs provide no basis to believe

16   that EIPCa will need to expend additional resources to observe future elections in

17   California or that the individual plaintiffs' candidacies will be materially harmed by

18   vote dilution or voter fraud caused by the County Defendants' actions, omissions, or

19   policies during some future California election. Both are unsubstantiated speculation.

20   As a result, the "capable of repetition, yet evading review" exception is inapplicable to

21   Plaintiffs' claims.[11]

22          In sum, this case is plainly moot, as there is no "live" controversy for the Court

23   to decide. *See Deakins v. Monaghan*, 484 U.S. 193, 199 (1988); *Already, LLC v. Nike,*

24   *Inc*., 568 U.S. 85, 91 (2013). As the Eleventh Circuit explained in a similar post-

25   certification challenge, the Court "cannot turn back the clock and create a world in

26   _____

27   [11] Plaintiffs' argument is also barred by their lack of standing. As the U.S. Supreme
    Court held in *Friends of the Earth, Inc.,* "if a plaintiff lacks standing at the time the
    action commences, the fact that the dispute is capable of repetition yet evading review
28   will not entitle the complainant to a federal judicial forum." 528 U.S. at 191.

1   which the 2020 election results are not certified." *Wood v. Raffensperger*, 981 F.3d

2   1307, 1317 (11th Cir. 2020) (internal quotation marks omitted). Because de-

3   certification is not possible,[12] Plaintiffs' request for a special master to "oversee"

4   evidence preservation, an audit, and the "accuracy of voting" in an untold number of

5   California's upcoming elections, Dkt. 68, Prayer, ¶ A–D, would be "meaningless."

6   *Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 WL 7238261, at *12 (D. Ariz.

7   Dec. 9, 2020); *King*, 2020 WL 7134198, at *5 ("[T]he evidence Plaintiffs seek to

8   gather by inspecting voting machines and software and security camera footage only

9   would be useful if an avenue remained open for them to challenge the election

10  results."). Accordingly, this Court lacks subject matter jurisdiction and should dismiss

11  the case. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

12      **D.    Plaintiffs' Claims Are Barred by Laches and Principles of Equity**

13      Plaintiffs' claims are also barred by the doctrine of laches. To establish laches, a

14  defendant must show that a plaintiff unreasonably delayed in filing suit, causing

15  prejudice to the defendant or the administration of justice. *Danjaq LLC v. Sony Corp*.,

16  263 F.3d 942, 951–52 (9th Cir. 2001). Courts strongly disfavor delays in bringing

17  lawsuits during an election cycle, much less after one. *Perry v. Judd*, 840 F. Supp. 2d

18  945, 950 (E.D. Va.), *aff'd*, 471 F. App'x 219, 227 (4th Cir. 2012) ("The Supreme

19  Court has repeatedly expressed its disapproval of such disruptions."); *Fulani v.

20  Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) ("In the context of elections, … any

21  claim against a state electoral procedure must be expressed expeditiously.").

22      Plaintiffs sat on their claims for weeks, without any legitimate reason. Plaintiffs

23  waited one month after California's presidential electors cast their electoral votes

24  (December 14, 2020)—and two months after the close of voting (November 3,

25  2020)—to (improperly) file their original complaint. By their own admission,

26  ───────────────────────

27  [12] In addition to Plaintiffs' claims being moot, this Court lacks the authority to de-
    certify state election results. *See Bowyer*, 2020 WL 7238261, at *11 ("[I]f de-
    certification were possible, it would only be possible through an action brought in
28  [state] superior court … This [federal] Court has no power to de-certify the results.").

1    Plaintiffs knew of their claims by the close of voting on November 3, 2020 at the very

2    latest. Dkt. 68, ¶¶ 107–118 (alleging impediments to in-person election observation as

3    early as October 31, 2020 and in-person voting irregularities).[13] And their general

4    allegations about county voting systems are rooted in reports from other parts of the

5    country dating as far back as 2016. Dkt. 68, ¶¶ 142–53. Yet Plaintiffs proffered no

6    explanation, much less a "legitimate excuse," for their delay in filing this action. *See*

7    *Miller v. Glenn Miller Prods., Inc*., 454 F.3d 975, 997 (9th Cir. 2006). Nor have

8    Plaintiffs explained how County Defendants' state-mandated audits were somehow

9    deficient in uncovering any irregularities or fraud.

10       Such a significant delay in filing this lawsuit undoubtedly caused prejudice to

11   the County Defendants and to the administration of justice. While Plaintiffs slept on

12   their rights, millions of Californians cast their votes. *Piper Aircraft Corp. v. Wag-*

13   *Aero, Inc*., 741 F.2d 925, 939 (7th Cir. 1984) (Posner, J., concurring) ("[O]ne who

14   seeks the help of a court of equity must not sleep on his rights"); Dkt. 68, ¶ 77. The

15   County Defendants and other California counties tabulated and certified those votes,

16   the Secretary of State certified the election results on behalf of the electorate of the

17   entire State (as did states across the country), newly elected state and local officials

18   took office, and the Electoral College met to tabulate the votes for the next President.

19   The relief Plaintiffs now seek via a backdoor audit of a long-passed election "would

20   be extreme, and entirely unprecedented." *Bowyer*, 2020 WL 7238261, at *11; *SW*

21   *Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003)

22   ("Interference with impending elections is extraordinary, ... and interference with an

23   election after voting has begun is unprecedented."); *see also King*, 2020 WL 7134198,

24   at *7 (barring an "after the fact" lawsuit alleging similar claims of widespread voter

25   irregularities and fraud due to laches, among other grounds). Moreover, interfering

26   with election results months after their closure would "harm the public in countless

27   _____

28   [13] What is more, the statutes that Plaintiffs challenge have been in effect for many
     years—and in some cases, decades. *See* Dkt. 68, ¶¶ 58–75.

1  ways." *Wood v. Raffensperger*, No. 1:20-cv-04651-SDG, 2020 WL 6817513, at *13
2  (N.D. Ga. Nov. 20, 2020), *aff'd,* 981 F.3d 1307 (11th Cir. 2020).

3       Plaintiffs' claims should also be rejected under basic principles of equity.
4  Plaintiffs seemingly waited until the outcomes of the election were clear, and other
5  attempts to reverse the outcomes had failed, to claim election irregularities and
6  "potential" fraud. Dkt. 68, ¶ 161. Only then—despite their allegations being rooted in
7  actions taken weeks before, Dkt. 68, ¶¶ 107–18—did Plaintiffs sue to invalidate the
8  results and seek to disenfranchise all California voters. Nor did they follow the State's
9  clear provisions for bringing election contests. This gamesmanship should not be
10  tolerated. *See, e.g.*, *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973) ("[T]he failure
11  to require prompt pre-election action … as a prerequisite to post-election relief may
12  permit, if not encourage, parties who could raise a claim to lay by and gamble upon
13  receiving a favorable decision of the electorate and then, upon losing, seek to undo the
14  ballot results in a court action.") (internal quotation marks omitted)). Plaintiffs' claims
15  are barred by laches as well as principles of equity and cannot be allowed to proceed.

16       **E.   Plaintiffs Fail to State a Claim for Relief**

17       For all the reasons above, this Court should dismiss Plaintiffs' FAC pursuant to
18  Federal Rule of Civil Procedure 12(b)(1). But if this Court were to reach the merits of
19  Plaintiffs' FAC (which it need not do), Plaintiffs' claims are equally unavailing under
20  Rule 12(b)(6) and should be dismissed.

21       Plaintiffs bring suit pursuant to 42 U.S.C. § 1983, alleging Equal Protection and
22  Due Process Clause violations, as well as violations under the Elections Clause and
23  Guarantee Clause. Dkt. 68, ¶¶ 164–200. To state a claim for a civil rights violation
24  pursuant to § 1983, a plaintiff must allege that he or she was deprived of a right
25  secured by the U.S. Constitution or the laws of the United States, and that this
26  deprivation occurred at the hands of someone acting under the color of state law.
27  *League of Women Voters of Ohio v. Brunner,* 548 F.3d 463, 475 (6th Cir. 2008). But
28  "[i]t is hornbook law that Section 1983 does not provide a right of action for 'garden

17

1  variety election irregularities.'" *Soules v. Kauaians for Nukolii Campaign Comm.*, 849

2  F.2d 1176, 1183 (9th Cir. 1988) (citation omitted). "Only a pervasive error which

3  undermines the 'organic processes' of the ballot is sufficient to trigger constitutional

4  scrutiny." *Id.* (citation omitted).

5      As discussed, *infra*, Plaintiffs cannot establish that the County Defendants

6  performed any action or omission under color of state law which deprived Plaintiffs of

7  any right, privilege, or immunity granted them under the Constitution or under federal

8  law. Plaintiffs' allegations—many of which do not address actions or omissions of the

9  County Defendants and instead are a smattering of allegations arising from other

10 jurisdictions—operate merely to cast aspersions on third-party vendors not before this

11 court and are largely untethered from the causes of action asserted. Even if true, the

12 allegations would not entitle Plaintiffs to the sweeping relief requested.[14] While

13 Plaintiffs purport to assert each cause of action against all Defendants, the core factual

14 allegations against County Defendants related to election observers and election

15 security are more clearly asserted as alleged violations of the Equal Protection and

16 Due Process Clauses. In both instances, Plaintiffs fail to plead a violation of either

17

18 [14] The FAC is essentially a haphazard collection of speculations about alleged election
   idiosyncrasies without specific allegations of any ballot actually being illegally cast or
19 illegally thrown out, let alone allegations of sufficient irregularities or "potential
   fraud" to question the validity of the certified election results. Further, the FAC does
20 little to tie the factual allegations to the causes of action, particularly given that the
   State Defendants and the County Defendants are not similarly situated. The FAC lacks
21 allegations that tie each County Defendant to the alleged injury suffered and much of
   the relief sought is outside of the County Defendants' control. Further, numerous
22 paragraphs of the FAC relate to allegations that took place in other jurisdictions and in
   previous years without any indication or allegation that the same hardware, software,
23 or use procedures were in operation anywhere in California during the November
   2020 election. Dkt. 68, ¶¶ 133–53. As a result, the FAC gives the impression of
24 throwing spaghetti at the wall, hoping some of the facts asserted will stick to one of
   the causes of action, rather than providing each Defendant with a clear understanding
25 of how their alleged conduct violated the law. Put simply, the FAC does not pass
   muster under Federal Rule of Civil Procedure 8(a)(2). *Iqbal*, 556 U.S. at 679 ("But
26 where the well-pleaded facts do not permit the court to infer more than the mere
   possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that
27 the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2).") To the extent that
   Plaintiffs allege fraud or mistake, which is unclear from the FAC, they fail to plead
28 with particularity the circumstances to support such an allegation. Fed. R. Civ. P. 9(b).

1   constitutional provision. Similarly, the Elections Clause does not provide a cause of
2   action for the allegations Plaintiffs assert, and Plaintiffs do not plead a cognizable
3   claim under the Guarantee Clause. Therefore, this Court should dismiss the action
4   pursuant to Federal Rule of Civil Procedure 12(b)(6).

5           **i.     Plaintiffs Fail to State a Claim for Relief Under the Elections**
                      **Clause**
6

7           Plaintiffs' FAC alleges that Defendants usurped the California Legislature's
8   authority to regulate elections, which in turn allegedly diminished the value of
9   Plaintiffs' vote—without providing any allegations that tie County Defendants'
10  actions to that alleged injury.[15] Dkt. 68, ¶¶ 166–67. Allegations of County Defendants
11  following state law and regulations to adjudicate ballots and verify signatures, Dkt.
12  68, ¶¶ 123, 125, 129, are insufficient to state a claim under the Elections Clause. *See,*
13  *e.g.*, *Miller v. Treadwell*, 736 F. Supp. 2d 1240, 1243 (D. Alaska 2010) (following
14  state law in counting write-in votes did not violate the Elections Clause).

15          **ii.    Plaintiffs Fail to State a Claim for Relief Under the Guarantee**
                      **Clause**
16

17          Plaintiffs do not—and could not—state a claim under the Guarantee Clause.
18  Notwithstanding their lack of standing and the non-justiciability of such claims, the
19  alleged vote dilution and irregularities have not deprived Plaintiffs of a republican
20  form of government. Courts have held that even if the Guarantee Clause claims are
21  justiciable, the Clause could "only [be] offended in highly limited circumstances,"
22  such as those involving the "aboli[tion] [of] the legislature" or the "establishment of a
23  monarchy by a state." *See, e.g.*, *Largess*, 373 F.3d at 220. The FAC alleges no such
24  circumstances, nor could it do so.

25

26  ────────────
    [15] Plaintiffs' failure to tie County Defendants' actions to the usurping of the power of
    the State Legislature also undermines their standing for that claim, as they fail to
27  demonstrate a causal connection between the injury alleged and County Defendants'
    conduct. *See Lujan,* 504 U.S. at 561 (to demonstrate standing, "there must be a causal
28  connection between the injury and the conduct complained of").

1            **iii.**    **Plaintiffs Fail to State a Claim for Relief Under Both the Equal**
2                     **Protection and Due Process Clauses**

3       Plaintiffs' Equal Protection and Due Process claims are no more availing. The

4 "Constitution is not an election fraud statute." *Bodine v. Elkhart County Election Bd.*,

5 788 F.2d 1270, 1271 (7th Cir. 1986). "It is not every election irregularity . . . which

6 will give rise to a constitutional claim." *Id.* The Constitution "is implicated only when

7 there is 'willful conduct which undermines the organic processes by which candidates

8 are elected.'" *Id.* at 1272 (emphasis omitted) (citation omitted). Therefore, "garden

9 variety election irregularities that could have been adequately dealt with through the

10 procedures set forth in [state] law" do not support constitutional Due Process claims.

11 *Id.*; *see also Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998)

12 ("[G]arden variety election irregularities do not violate the Due Process Clause, even

13 if they control the outcome of the vote or election.").

14       Despite EIPCa's allegedly extensive training of its volunteer election observers,

15 *see* Dkt. 68, ¶¶ 22, 106, EIPCa did not challenge the alleged irregularities during the

16 canvass. But, had Plaintiffs swiftly brought their claims in state court and in the

17 unlikely event that their allegations were substantiated as unlawful, expedited relief

18 would have been available at that time; state courts give priority to election matters,

19 including allegations of an "error, omission, or neglect [that] is in violation of [the

20 California Elections] code or the Constitution." Cal. Elec. Code § 13314(a)(2); *see*

21 Cal. Code Civ. Proc. § 35 (giving election matters priority).

22       Plaintiffs' allegations regarding County Defendant operations are insufficient to

23 state a claim under either the Equal Protection Clause or the Due Process Clause as

24 "there is no authority to support a finding of burden [on the right to vote] based solely

25 on a speculative … possibility that election irregularities might [or did] occur."

26 *Donald J. Trump for President, Inc. v. Boockvar,* No. 2:20-cv-966, 2020 WL

27 5997680, at *71 (W.D. Pa. Oct. 10, 2020). Plaintiffs point to sporadic instances where

28 election observers were dissatisfied with the level of access and ability to observe

provided by County Defendants and to alleged deficiencies in election security without making *any* assertions that those irregularities rise to the level of a constitutional violation that impeded the right to vote. Dkt. 68, ¶¶ 107–18. Although Plaintiffs allege to have collected similar incident reports, they fail to demonstrate a reasonable inference that the election was inherently flawed or that vote dilution occurred. Further, the FAC's continual reliance on the alleged "opportunity" for fraudulent or invalid votes to be counted, without sufficient allegations that such ballots *were* actually counted, fundamentally undermines the causal link between County Defendants' conduct and the alleged injury. *See* Dkt. 68, ¶¶ 8, 10, 58, 103, 140, 141, 159.

In overseeing the November 2020 Presidential Election, Defendants were faced with a historically complex election, with record voter turnout during an unprecedented global pandemic. Defendants have a strong interest in ensuring the "orderly and efficient administration of elections." *Libertarian Party of Pa. v. Governor of Pa.*, 813 F. App'x 834, 835 (3d Cir. 2020). County Defendants were operating under state and local public health orders requiring social distancing and other health and safety protocols designed to reduce the risk of transmission of the coronavirus that causes COVID-19.[16] Different jurisdictions may vary in the complexity of their elections and the resources available for managing election observers. For instance, counties may adopt different practices that serve those jurisdictions' "interests in efficiently allocating [their] election resources and administering elections in an orderly manner," changes that outweigh any minimal burden on Plaintiffs' rights. *See Mays v. LaRose*, 951 F.3d 775, 783 (6th Cir. 2020); *see also Harlan v. Scholz*, 866 F.3d 754, 755–56 (7th Cir. 2017). Nothing

---

[16] The federal government, through Centers for Disease Control and Prevention (CDC), also encouraged election officials to "[m]odif[y] layouts and procedures" by "ensur[ing] sufficient space for social distancing and other measures." CDC, *Polling Locations and Voters* (Oct. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (last accessed Apr. 4, 2021).

1  about these variations in County Defendant practices or policies make the County

2  Defendants' practices or policies unlawful.

3       In the end, Plaintiffs' claims are fundamentally flawed because the "theory of

4  harm in this case is not the denial of the right to poll watch," which would fail to give

5  rise to a federal constitutional claim for similar reasons, "but instead dilution of votes

6  from fraud caused from the failure to have sufficient poll watchers." *Donald J. Trump*

7  *for President, Inc.*, 2020 WL 5997680, at *36. The allegations rest primarily on

8  speculation that voters may have cast invalid ballots or that election workers may have

9  changed results without well pled allegations that such misconduct did occur. *See,*

10  *e.g.*, *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 407 (E.D. Pa. 2016)

11  (rejecting vote dilution claim arising out of alleged barriers to election observing

12  giving rise to the possibility of misconduct going unseen and unchallenged).[17]

13       Thus, just as Plaintiffs have no injury, they have no claims for relief under the

14  Elections, Guarantee, Due Process, or Equal Protection Clauses.

15  **F.  Plaintiffs' Request for an Audit and Special Master to Oversee**
16       **"Upcoming Elections" is Vastly Disproportionate to Their Purported**
       **Injury**

17       Setting aside that Plaintiffs' claims against County Defendants are not viable,

18  Plaintiffs make an extraordinary request for a vast array of election-related "evidence"

19  to be preserved and for one or more special masters to be appointed to oversee an

20  audit of the County Defendants' highly sensitive election administration equipment

21  and material as well as "vote accuracy" in an undefined number of future California

22

---

23  [17] Federal courts have uniformly found that election irregularities greater in degree to
     those alleged by Plaintiffs do not rise to the level of Due Process violations. *See*
24  *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (malfunctioning of voting
     machines); *Gold v. Feinberg*, 101 F.3d 796, 801-02 (2d Cir. 1996) (human error
25  resulting in miscounting of votes and delay in arrival of voting machines); *Curry v.*
     *Baker*, 802 F.2d 1302, 1316 (11th Cir. 1986) (allegedly inadequate state response to
26  illegal cross-over voting); *Bodine*, 788 F.2d at 1272 (mechanical and human error in
     counting votes); *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th
27  Cir.1983) (technical deficiencies in printing ballots); *Powell v. Power*, 436 F.2d 84,
     85-86 (2d Cir.1970) (mistaken allowance of non-party member votes in congressional
28  primary); and *Johnson v. Hood*, 430 F.2d 610, 612–13 (5th Cir.1970) (arbitrary
     rejection of ten ballots).

elections. Dkt. 68, Prayer ¶¶ A–D.  Such relief is wholly disproportionate to Plaintiffs'
alleged injury (which does not exist).

First, Plaintiffs offer no reason or allegations to suggest that the County
Defendants will not preserve evidence as required under state law. Dkt. 68, ¶¶ 18–19,
161–62. Under California Elections Code sections 17300 to 17306, the County
Defendants are required to retain election documents and materials for 22 months after
an election. *See Citizens Oversight, Inc. v. Vu*, 35 Cal. App. 5th 612, 618, 247 (2019).
Further, the County Defendants have a "duty to preserve evidence [that they] know[]
or should know is relevant to imminent [and ongoing] litigation." *A. Farber &
Partners, Inc. v. Garber*, 234 F.R.D. 186, 193 (C.D. Cal. 2006) (citing *Dillon v.
Nissan Motor* Co., 986 F.2d 263, 267 (8th Cir. 1993)).

Second, California law requires all county registrars to complete their own
election audit prior to certifying the election results. Cal. Elec. Code §§ 15360,
15365–15367. These audits either consist of a public manual tally of at least one
percent of the ballots tabulated using a voting system, including vote by mail ballots
(a general area of concern raised by Plaintiffs, *see, e.g.*, Dkt. 68, ¶¶ 120, 154–58); or a
risk-limiting audit, involving human inspection of ballots to ensure a full manual tally
of the ballots would not show different outcomes than the voting system results.[18] *Id*.
An additional audit of the County Defendants' critical election-related equipment and
materials is unwarranted and duplicative. It also would risk violating the privacy
rights of millions of voters, undermining election security, and interfering with the
proprietary rights of third-party vendors. Such an audit would necessarily pierce the
secrecy of the ballot box by allowing private individuals—after certification—to view

---

[18] All but one of the County Defendants conduct the default one percent manual tally
pursuant to Cal. Elec. Code § 15360. The Orange County Registrar of Voters conducts
a risk-limiting audit as part of a state pilot program. *See* "Orange County, CA
Elections to Conduct Risk Limiting Audit of Presidential General Election Results,"
(Nov. 8, 2020), https://www.ocvote.com/press-releases/orange-county-ca-elections-to-
conduct-risk-limiting-audit-of-presidential-general-election-results (last accessed Apr.
4, 2021).

1  ballots and review adjudication logs, including confidential voter data that may only
2  be viewed in narrow circumstances under California law. *See* Cal. Elec. Code § 2194;
3  *see also* Cal. Gov't Code § 6254.

4        Third, despite the fact that the Secretary of State performs extensive
5  certification testing on county elections technology, Cal. Elec. Code § 19100 *et seq.*,
6  the audit Plaintiffs seek would investigate proprietary technology belonging to third
7  party vendors[19] significantly beyond the access election observers are ever permitted
8  to have. Moreover, such an "extraordinary remedy" "only would be useful if an
9  avenue remained open for [Plaintiffs] to challenge the election results," *King*, 2020
10 WL 7134198, at *5—but no such avenue exists. Thus, Plaintiffs' request for an audit
11 is not only unnecessary and ill-advised, but it is unavailable.

12       Finally, Plaintiffs' request for a special master to "oversee and monitor the vote
13 accuracy" of any number of future California elections would be an inappropriate use
14 of judicial resources given the speculative and generalized grievances Plaintiffs allege
15 and the vast scope of the relief sought. Rule 53 authorizes the appointment of a special
16 master to perform duties only in specific circumstances, including when consented to
17 by the parties, or upon a showing of some exceptional condition. Fed. R. Civ. P.
18 53(a)(1)(A)–(B); *see La Buy v. Howes Leather Co.*, 352 U.S. 249, 258–59 (1957)
19 (considering the "exceptional condition" requirement and holding that a congested
20 docket, the complexity of issues, and the extensive amount of time required for a
21 proceeding do not—either individually or as a whole—constitute an exceptional
22 condition justifying a Rule 53 reference to a special master in a non-jury action).

23       In accordance with Fed. R. Civ. P. 53(b), appointment of a special master
24 should "be the exception and not the rule." Fed. R. Civ. P. Advisory Comm. Notes on
25

26  ───────────────
27  [19] The list of voting technologies certified by the Secretary of State, including the
    entity that developed the technology, is available at
    https://votingsystems.cdn.sos.ca.gov/cert-and-approval/vote-sys-appr-in-ca-12-15-
28  20.pdf (last accessed Apr. 4, 2021). As shown in that list, Los Angeles County
    developed its own voting technology.

1  Rules—2003 Amendment, ¶ 1. And where the appointment is opposed by the

2  litigants, the requesting party is required to show an "exceptional condition" justifying

3  a special master. Mark A. Fellows & Roger S. Haydock, *Federal Court Special*

4  *Masters: A Vital Resource in the Era of Complex Litigation*, 31 William Mitchell L.

5  Rev. 1269 (2005) (noting that opposed appointment "will need a rather high

6  exceptional condition to justify the reference").

7       Plaintiffs' request for the appointment of a special master to oversee evidence

8  preservation, the audit process, and the "accuracy of vote counting" in California's

9  upcoming elections," Dkt. 68, Prayer, ¶¶ C–D, is not authorized under the rules of

10 procedure. Not only is Plaintiffs' request untenable, unnecessary, and premature given

11 the status of the pleadings, but Plaintiffs have failed to show any exceptional

12 condition warranting the appointment of a special master. This is not a complex case

13 where a litany of issues is likely to devour the Court's time. Indeed, as County

14 Defendants have established, Plaintiffs lack standing and their claims lack merit and

15 should be dismissed. County Defendants do not consent to the appointment of a

16 special master for any purpose and urge the Court to deny any such request.

17                          **V.     CONCLUSION**

18      This action must be dismissed. Because Plaintiffs can make no amendments to

19 their complaint that would cure these fatal deficiencies, and having apparently

20 exhausted their allegations regarding County Defendants, the Court should dismiss

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1  this case without further leave to amend.

2

3  Dated: April 5, 2021                 Respectfully submitted,

4                                        JAMES R. WILLIAMS
5                                        COUNTY COUNSEL

6                          By:    */s/ Julia B. Spiegel*
7                                 JULIA B. SPIEGEL
8                                 Deputy County Counsel

9                                 Attorneys for Defendant
10                                Shannon Bushey, Registrar of Voters for the
                                  County of Santa Clara
11

12 Dated: April 5, 2021                 DONNA ZIEGLER
                                        County Counsel
13

14                         By:    */s/ Raymond Lara*
                                  RAYMOND LARA
15                                Senior Deputy County Counsel

16                                Attorneys for Defendant
17                                Tim Dupuis, Registrar of Voters for
                                  the County of Alameda
18

19
   Dated: April 5, 2021                 SHARON L. ANDERSON
20                                       County Counsel

21                         By:    */s/ Rebecca Hooley*
22                                REBECCA HOOLEY
                                  Deputy County Counsel
23

24                                Attorneys for Defendant
25                                Deborah Cooper, Contra Costa
                                  County Registrar of Voters
26

27

28

1  Dated: April 5, 2021                     DANIEL C. CEDERBORG
2                                           County Counsel

3                              By:   */s/ Kyle R. Roberson*
4                                    KYLE R. ROBERSON
                                     Deputy County Counsel
5
6                                    Attorneys for Defendant
                                     James A. Kus, County Clerk/Register of Voters
7                                    for the County of Fresno

8
   Dated: April 5, 2021                     RODRIGO CASTRO-SILVA
9                                           County Counsel

10
                               By:   */s/ Eva W. Chu*
11                                   EVA W. CHU
                                     Deputy County Counsel
12
13                                   Attorneys for Defendant
                                     Dean C. Logan, Los Angeles County Registrar-
14                                   Recorder/County Clerk

15
16 Dated: April 5, 2021                     LESLIE J. GIRARD
                                            County Counsel
17
18                             By:   */s/ Grace L. Pak*
19                                   GRACE L. PAK
                                     Deputy County Counsel
20
21                                   Attorneys for Defendant
                                     Claudio Valenzuela, Registrar of Voters for
22                                   the County of Monterey

23 ///
24 ///
25 ///
26 ///
27 ///
28

1

Dated: April 5, 2021                   LEON J. PAGE

2
                                      County Counsel

3
                         By:    */s/ Rebecca S. Leeds*

4
                                        REBECCA S. LEEDS

5
                                        Senior Deputy

6
                                        Mark D. Servino, Supervising Deputy

                                        Suzanne E. Shoai, Senior Deputy

7

8
                                        Attorneys for Defendant

9
                                        Neal Kelley, Registrar of Voters for
                                        the County of Orange

10

Dated: April 5, 2021                   GREGORY P. PRIAMOS

11
                                        County Counsel

12
                         By:    */s/ Ronak N. Patel*

13
                                        RONAK N. PATEL
                                        Deputy County Counsel

14

15
                                        Attorneys for Defendant
                                        Rebecca Spencer, Riverside County

16
                                        Registrar of Voters

17

Dated: April 5, 2021                   LISA A. TRAVIS

18
                                      County Counsel

19
                         By:    */s/ Krista C. Whitman*

20
                                      KRISTA C. WHITMAN

21
                                      Assistant County Counsel

22
                                        Attorneys for Defendant

23
                                        Courtney Bailey-Kanelos, Sacramento County
                                        Registrar of Voters

24
///

25
///

26
///

27
///

28
///

28

1   Dated: April 5, 2021                    BARBARA THOMPSON
2                                           County Counsel

3                                   By:    */s/ Joseph Wells Ellinwood*
4                                           JOSEPH WELLS ELLINWOOD
                                            Assistant County Counsel
5
6                                           Attorneys for Defendant
                                            Joe Paul Gonzalez, San Benito County Clerk-
7                                           Auditor-Recorder-Registrar of Voters

8   Dated: April 5, 2021                    MICHELLE D. BLAKEMORE
9                                           County Counsel

10
                                    By:    */s/ Laura L. Crane*
11                                          LAURA L. CRANE
12                                          Supervising Deputy County Counsel

13                                          Attorneys for Defendant
14                                          Bob Page, San Bernardino County
                                            Registrar of Voters
15

16  Dated: April 5, 2021                    JASON M. HEATH
17                                          County Counsel

18                                  By:    */s/ Melissa C. Shaw*
19                                          MELISSA C. SHAW
                                            Assistant County Counsel
20                                          Ruby Marquez, Chief Assistant County Counsel

21                                          Attorneys for Defendant
22                                          Gail Pellerin, Santa Cruz County
                                            Registrar of Voters
23
24  ///
25  ///
26  ///
27  ///
28  ///

Dated: April 5, 2021                JEFFREY E. BARNES
                                    Chief Assistant County Counsel

                             By:    /s/ Matthew A. Smith
                                    MATTHEW A. SMITH
                                    Assistant County Counsel

                                    Attorneys for Defendant
                                    Mark A. Lunn, Ventura County
                                    Registrar of Voters

2387666

30