JAMES R. WILLIAMS, County Counsel (S.B. #271253)
DOUGLAS M. PRESS, Assistant County Counsel (S.B. #168740)
KIM H. HARA, Lead Deputy County Counsel (S.B. #258763)
MARY E. HANNA-WEIR, Deputy County Counsel (S.B. #320011)
JAMILA BENKATO, Deputy County Counsel (S.B. #313646)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San José, California  95110-1770
Telephone: (408) 299-5900
Facsimile:  (408) 292-7240

Attorneys for Defendant
SHANNON BUSHEY, REGISTRAR OF
VOTERS FOR THE COUNTY OF SANTA
CLARA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(Western Division)

| | |
|---|---|
| ELECTION INTEGRITY PROJECT® CALIFORNIA, INC; et al., <br><br> Plaintiffs, <br><br> v. <br><br> SHIRLEY WEBER, CALIFORNIA SECRETARY OF STATE; et al., <br><br> Defendants. | No. 2:21-CV-00032-AB-MAA <br><br> **COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> Date:    May 12, 2023 <br> Time:    10:00 a.m. <br> Ctrm:    7B <br> Judge:  The Honorable André Birotte, Jr. |

**PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on **May 12, 2023 at 10:00 a.m. in Courtroom 7B** of the United States District Court of the Central District of California, located at First Street Court House, 350 West First Street, Los Angeles, California 90012, Defendants Tim Dupuis, Registrar of Voters for the County of Alameda; Kristin Connelly, Registrar of Voters for Contra Costa County; James A. Kus, County Clerk/Registrar of Voters for the County of Fresno; Aimee Espinoza, Auditor-Controller/County Clerk/Registrar of Voters for Kern County; Dean C. Logan, Los Angeles County Registrar-Recorder/County Clerk; Gina Martinez, Registrar of Voters

1    for the County of Monterey; Bob Page, Registrar of Voters for the County of Orange;

2    Rebecca Spencer, Riverside County Registrar of Voters; Hang Nguyen, Sacramento

3    County Registrar of Voters; Francisco Diaz, San Benito County Clerk-Recorder-

4    Registrar of Voters; Stephenie Shea, Registrar of Voters for San Bernardino County;

5    Elaina Cano, Clerk-Recorder-Registrar of Voters for San Luis Obispo County;

6    Shannon Bushey, Registrar of Voters for the County of Santa Clara; Tricia Webber,

7    Santa Cruz County Registrar of Voters; and Michelle Ascencion, Ventura County

8    Registrar of Voters ("County Defendants") will and hereby do move the Court

9    pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) for an order

10   dismissing Plaintiffs' Second Amended Complaint in its entirety for lack of subject

11   matter jurisdiction and for failure to state a claim upon which relief can be granted.

12        This motion is based on this Notice of Motion and Motion, the Memorandum of

13   Points and Authorities below, Plaintiffs' Second Amended Complaint and documents

14   incorporated by reference therein, the arguments that may be presented at the hearing

15   on this Motion, and any other matters the Court deems relevant. This motion is made

16   following the conference of counsel pursuant to Local Rule 7-3, which took place on

17   March 23, 2023.

18                                        Respectfully submitted,

19   Dated:  March 30, 2023              JAMES R. WILLIAMS
                                         County Counsel
20

21                                 By:   */s/ Mary E. Hanna-Weir*
                                         MARY E. HANNA-WEIR
22                                       Deputy County Counsel

23                                       Attorneys for Defendant
                                         Shannon Bushey, Registrar of Voters
24                                       for the County of Santa Clara

25   ///

26   ///

27   ///

28   ///

1  Dated: March 30, 2023                    DONNA ZIEGLER
2                                           County Counsel

3                                   By:   _/s/ Raymond Lara_____
4                                          RAYMOND LARA
                                           Senior Deputy County Counsel
5
6                                          Attorneys for Defendant
                                           Tim Dupuis, Registrar of Voters for
7                                          the County of Alameda
8
   Dated: March 30, 2023                    THOMAS L. GEIGER
9                                           County Counsel
10
                                    By:   _/s/ Rebecca Hooley_____
11                                         REBECCA HOOLEY
12                                         Assistant County Counsel
13
14                                         Attorneys for Defendant
                                           Kristin Connelly, Registrar of Voters
15                                         for Contra Costa County
16  Dated: March 30, 2023                   DANIEL C. CEDERBORG
17                                          County Counsel
18                                   By:   _/s/ Kyle R. Roberson_____
19                                         KYLE R. ROBERSON
                                           Deputy County Counsel
20
21                                         Attorneys for Defendant
                                           James A. Kus, County
22                                         Clerk/Registrar of Voters for the
23                                         County of Fresno
24
25  ///
26  ///
27  ///
28  ///

1   Dated: March 30, 2023                    MARGO A. RAISON
2                                            County Counsel

3                                   By:   */s/ Marshall Scott Fontes*
4                                            MARSHALL SCOTT FONTES
                                             Chief Deputy County Counsel
5
6                                            Attorneys for Defendant
                                             Aimee Espinoza, Auditor-
7                                            Controller/County Clerk/Registrar of
8                                            Voters for Kern County

9   Dated: March 30, 2023                    Dawyn R. Harrison
10                                           Interim County Counsel

11                                  By:   */s/ Eva W. Chu*
12                                           EVA W. CHU
                                             Senior Deputy County Counsel
13
14                                           Attorneys for Defendant
                                             Dean C. Logan, Los Angeles County
15                                           Registrar-Recorder/County Clerk
16
17  Dated: March 30, 2023                    LESLIE J. GIRARD
                                             County Counsel
18
19                                  By:   */s/ Marina S. Pantchenko*
20                                           MARINA S PANTCHENKO
                                             Deputy County Counsel
21
22                                           Attorneys for Defendant
                                             Gina Martinez, Registrar of Voters
23                                           for the County of Monterey

24  ///
25  ///
26  ///
27  ///
28  ///

Dated: March 30, 2023

LEON J. PAGE
County Counsel

By:  */s/ Rebecca S. Leeds*
REBECCA S. LEEDS
Senior Deputy County Counsel

Attorneys for Defendant
Bob Page, Registrar of Voters for
the County of Orange

Dated: March 30, 2023

MINH TRAN
County Counsel

By:  */s/ Ronak N. Patel*
RONAK N. PATEL
Deputy County Counsel

Attorneys for Defendant
Rebecca Spencer, Riverside County
Registrar of Voters

Dated: March 30, 2023

LISA A. TRAVIS
County Counsel

By:  */s/ Janice M. Snyder*
JANICE M. SNYDER
Assistant County Counsel

Attorneys for Defendant
Hang Nguyen, Sacramento County
Registrar of Voters

///

///

///

///

///

///

County Defendants' Notice of Motion and Motion to Dismiss          2:21-CV-00032-AB-MAA
Plaintiffs' Second Amended Complaint

1    Dated: March 30, 2023                    BARBARA THOMPSON
2                                             County Counsel

3                                    By:   */s/ Joseph Wells Ellinwood*
4                                             JOSEPH WELLS ELLINWOOD
                                              Assistant County Counsel
5

6                                             Attorneys for Defendant
                                              Francisco Diaz, San Benito County Clerk-
7                                             Recorder-Registrar of Voters

8
     Dated: March 30, 2023                    TOM BUNTON
9                                             County Counsel

10

11                                   By:   */s/ Laura L. Crane*
                                              LAURA L. CRANE
12                                            Principal Assistant County Counsel

13                                            Attorneys for Defendant
14                                            Stephenie Shea, San Bernardino
                                              County Registrar of Voters
15

16   Dated: March 30, 2023                    RITA L. NEAL
                                              County Counsel
17

18                                   By:   */s/ Ann Duggan*
19                                            ANN DUGGAN
                                              Deputy County Counsel
20

21                                            Attorneys for Defendant
                                              Elaina Cano, Clerk-Recorder-Registrar
22                                            of Voters for San Luis Obispo County

23

24   ///

25   ///

26   ///

27   ///

28   ///

---

County Defendants' Notice of Motion and Motion to Dismiss                    2:21-CV-00032-AB-MAA
Plaintiffs' Second Amended Complaint

Dated: March 30, 2023                     JASON M. HEATH
                                          County Counsel

                                By:    */s/ Melissa C. Shaw*
                                          MELISSA C. SHAW
                                          Assistant County Counsel

                                          Attorneys for Defendant
                                          Tricia Webber, Santa Cruz County
                                          Registrar of Voters

Dated: March 30, 2023                     TIFFANY N. NORTH
                                          County Counsel

                                By:    */s/ Matthew A. Smith*
                                          MATTHEW A. SMITH
                                          Assistant County Counsel

                                          Attorneys for Defendant
                                          Michelle Ascencion, Ventura County
                                          Registrar of Voters

## <u>ATTESTATION</u>

I, Mary E. Hanna-Weir, am the ECF user whose ID and password are being used to file the above Notice of Motion and Motion to Dismiss Plaintiffs' Second Amended Compliant.  In compliance with Civil Local Rule 5-4.3.4(2)(I), I hereby attest that each listed counsel above has concurred in this filing.

*/s/ MARY E. HANNA-WEIR*

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.    FACTUAL AND PROCEDURAL HISTORY ...........................................2

    A.    The 2020 Presidential Election ....................................................3

    B.    The 2021 and 2022 Elections .......................................................3

    C.    Procedural History .......................................................................4

II.   LEGAL STANDARD.....................................................................................6

III.  LEGAL ARGUMENT.....................................................................................6

    A.    Voter Plaintiffs Lack Standing to Assert Any of Their Claims...........6

        1.    Voter Plaintiffs Fail to Demonstrate Injury in Fact. .................7

            a.    Voter Plaintiffs Fail to Plead Injury at all; Speculative Allegations are Insufficient to Show Particularized Injury. .......................................................7

            b.    Voter Plaintiffs Lack Standing for Vote Dilution Claims..............................................................9

        2.    Causation and Redressability. .................................................10

        3.    All Plaintiffs Lack Standing Against San Benito and Santa Cruz Counties, Against Which There are No Allegations..................................................................12

    B.    Plaintiffs' Claims Are Barred by Laches.............................................12

    C.    Despite Three Pleadings, Plaintiffs Once Again Fail to State a Claim. ..................................................................................14

        1.    The SAC Does Not Comply with Rule 8 or Rule 9(b)............15

        2.    Plaintiffs Fail to State a Claim for Relief. ..............................17

            a.    Plaintiffs Allege a Generalized Grievance Rather Than Unconstitutional Vote Dilution or Different Treatment....................................................................18

            b.    Inability to Observe Elections Processes Does Not Harm Plaintiffs' Voting Rights. .....................................20

            c.    The Signature Verification Allegations are Conclusory and Reflect Lawful Actions and Statewide Standards....................................................22

i

d.      Allegations of "Irregularities" Reflect Plaintiffs'
Lack of Understanding of Election Processes. ..............24

D.      Plaintiffs' Case Should Be Dismissed with Prejudice. ......................25

IV.    CONCLUSION ..........................................................................25

CERTIFICATION OF COMPLIANCE ................................................31

County Defendants' Notice of Motion and Motion to Dismiss
Plaintiffs' Second Amended Complaint

2:21-CV-00032-AB-MAA

# TABLE OF AUTHORITIES

Page

## CASES

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ............................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662  (2009) .............................................................................*passim*

*Baker v. Carr*,
    369 U.S. 186, 206 (1962). ...............................................................................18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544  (2007) ...............................................................................6, 16

*Bennett v. Yoshina*
    140 F.3d 1218 (9th Cir. 1998) ....................................................................17, 18

*Black v. McGuffage*,
    209 F. Supp. 2d 889  (N.D. Ill. 2002) .............................................................17

*Bodine v. Elkhart County Election Bd.*,
    788 F.2d 1270 (7th Cir. 1986) .................................................................17, 20

*Bowyer v. Ducey*,
    506 F.Supp.3d 699 (D. Ariz. 2020) .........................................................10, 13

*Bush v. Gore*,
    *531* U.S. 98  (2000) ...............................................................................22, 23

*Clark v. McCann*,
    243 Cal. App. 4th 910 (2015) ..........................................................................13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ...........................................................................................8

*Curry v. Baker*,
    802 F.2d 1302 (11th Cir. 1986) ......................................................................20

*///*

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ..................................................................................9, 11

*Danjaq LLC v. Sony Corp.,*
  263 F.3d 942 (9th Cir. 2001) ...............................................................12

*Democratic Cong. Campaign Comm. v. Kosinski,*
  2022 WL 2712882 (S.D.N.Y. July 13, 2022)......................................23

*Donald Trump for President, Inc. v. Cegavske,*
  488 F. Supp. 3d 993 (D. Nev. 2020)....................................................10

*Ex parte Levitt,*
  302 U.S. 633 (1937) ..............................................................................7

*Flast v. Cohen,*
  392 U.S. 83 (1968) ................................................................................7

*Fulani v. Hogsett,*
  917 F.2d 1028 (7th Cir. 1990) ............................................................12

*FW/PBS, Inc. v. Dallas,*
  493 U.S. 215 (1990)...............................................................................7

*Gill v. Whitford,*
  138 S. Ct. 1916 (2018) ..........................................................................9

*Gold v. Feinberg,*
  101 F.3d 796 (2d Cir. 1996) ...............................................................20

*Harlan v. Scholz,*
  866 F.3d 754 (7th Cir. 2017) ..............................................................22

*Hendon v. N.C. State Bd. of Elections,*
  710 F.2d 177 (4th Cir. 1983) ..............................................................20

*Hennings v. Grafton,*
  523 F.2d 861 (7th Cir. 1975) ..............................................................20

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,*
  304 F.3d 829 (9th Cir. 2002) ..............................................................14

iv

*Johnson v. Hood*,
    430 F.2d 610 (5th Cir. 1970) ............................................................................20

*King v. Whitmer*,
    505 F.Supp.3d 720 (E.D. Mich. 2020)..............................................................14

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994) ...........................................................................................6

*Lance v. Coffman*,
    549 U.S. 437 (2007) .......................................................................................5, 9

*League of Women Voters of Ohio v. Brunner*
    548 F.3d 463 (6th Cir. 2008) ............................................................................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................7, 8

*Martel v. Condos*,
    487 F.Supp.3d 247 (D. Vt.  2020) .....................................................................10

*Mays v. LaRose*
    951 F.3d 775 (6th Cir. 2020) ............................................................................22

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006 .............................................................................13

*Nolles v. State Comm. for Reorg. of Sch. Dists.*,
    524 F.3d 892 (8th Cir. 2008) ............................................................................10

*Paher v. Cegavske*,
    457 F. Supp. 3d 919 (D. Nev. 2020)...............................................................9, 10

*Perry v. Judd*,
    840 F. Supp. 2d 945,  (E.D. Va.), *aff'd*, 471 F. App'x 219,
    (4th Cir. 2012)..................................................................................................12

*Piper Aircraft Corp. v. Wag-Aero, Inc.*,
    741 F.2d 925 (7th Cir. 1984) ............................................................................13

*///*

*Powell v. Power*,
    436 F.2d 84 (2d Cir. 1970) ............................................................................20

*Republican Party of Pa. v. Cortes*,
    218 F. Supp. 3d 396 (E.D. Pa. 2016) ...........................................................21

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ................................................................................17, 18

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019) ..................................................................................10

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .........................................................................6

*Short v. Brown*,
    893 F.3d 671 (9th Cir. 2018) .........................................................................21

*Soules v. Kauaians for Nukolii Campaign Comm.*
    849 F.2d 1176 (9th Cir. 1988) .......................................................................14

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................................7, 8

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .........................................................................19

*Stack v. Lobo*,
    903 F. Supp. 1361 (N.D. Cal. 1995) ..............................................................17

*Stein v. Cortes*,
    223 F. Supp. 3d 423 (E.D. Pa. 2016) .............................................................9

*SW Voter Registration Educ. Project v. Shelley*,
    344 F.3d 914 (9th Cir. 2003) .........................................................................13

*Trump for President, Inc. v. Boockvar*,
    493 F. Supp. 3d 331 (W.D. Pa. 2020)............................................................21

*U.S. v. Ritchie*,
    342 F.3d 903  (9th Cir. 2003) .........................................................................6

vi

*United States v. Richardson*,
   418 U.S. 166, 174 (1974) ....................................................................7

*White v. Lee*,
   227 F.3d 1214  (9th Cir. 2000) ......................................................6, 19

*Wood v. Raffensperger*,
   501 F.Supp.3d 1310 (N.D. Ga. 2020) ....................................10, 14, 19

**STATUTES**

California Code of Civil Procedure
   Section 35 ...............................................................................13, 21
   Section 1085...................................................................................13

California Code of Regulations
   Section 20136(e) ..............................................................................2
   Section 20137...................................................................................2
   Section 20143...................................................................................2
   Section 20960.................................................................................23
   Sections 20980-85..........................................................................24
   Section 20982...................................................................................3
   Section 20982(c)............................................................................25
   Section 20983(c)(6)........................................................................25

California Elections Code
   Section 2000...................................................................................25
   Section 2101...................................................................................25
   Section 3000.5..................................................................................2
   Section 3003.....................................................................................2
   Section 3015.....................................................................................2
   Section 3017................................................................................2, 25
   Section 3019............................................................2, 22, 23, 25
   Section 3020.....................................................................................2
   Section 13314(a)(2).........................................................................21
   Section 14401...................................................................................2
   Section 14212...................................................................................2
   Section 14240.................................................................................21
   Section 15101...................................................................................2
   Section 15104(e)............................................................................21
   Section 15105............................................................................2, 21

County Defendants' Notice of Motion and Motion to Dismiss      2:21-CV-00032-AB-MAA
Plaintiffs' Second Amended Complaint

Section 15109 .................................................................................. 2
Section 15152 .................................................................................. 2
Sections 15200-290 ......................................................................... 2
Section 15208 .................................................................................. 3
Section 15210 .................................................................................. 3
Sections 15365-67 ........................................................................... 3
Section 15372 .................................................................................. 3
Sections 15300-376 ......................................................................... 3
Section 15360 .................................................................................. 3
Section 16003 .................................................................................. 3
Section 16100 ................................................................................ 13
Section 16401 .............................................................................. 3, 4
Section 17300 ................................................................................ 14
Section 17301 ................................................................................ 14
Section 17302 ................................................................................ 14
Section  2300(a)(9) ........................................................................ 21

California Evidence Code
Section 664 .................................................................................. 24

**FEDERAL**

United States Code
42 U.S.C. § 1983 .......................................................................... 14

Federal Rules of Civil Procedure
Rule 8 ........................................................................................... 15
Rule 9(b) ................................................................................. 15, 16
Rule 12(b)(1) ............................................................................. 6, 19
Rule 12(b)(6) ............................................................................... 5, 6

**OTHER AUTHORITIES**

U.S. Const. art. III, § 2, cl. 1 ............................................................ 7

### MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs—Election Integrity Project of California (EIPCa) and five individual voters—continue to seek to cast doubt upon the integrity of California's elections because they have been recently unsuccessful in legislatively defeating efforts to enable all voters to cast ballots in the safe, simple, and secure method of their choosing.  Nevertheless, Plaintiffs ask this Court to put California's fair and accurate election system into permanent receivership overseen by a special master, because Plaintiffs fundamentally mistrust California's civil servants and the public.  In making this request, Plaintiffs ask the Court to ignore the presumption that government officials carry out their duties in regular order and in compliance with the law.  The Court may not *assume* bad faith by County Defendants, and Plaintiffs' policy disputes with the State are certainly no basis to do so.

Plaintiffs' Second Amended Complaint (SAC) reformulates their two remaining claims as solely grounded in vote dilution.  But the voter Plaintiffs lack standing to bring vote dilution claims, and the SAC fails to allege facts sufficient to suggest that any group of voters was disadvantaged in any recent past election.  Plaintiffs seek extreme and wide-ranging relief—eliminating huge swaths of state law and installing a third-party manager over all future elections—that bears no relation to their alleged harm.  Moreover, given the deliberate and unexplained delay in bringing this litigation and in adding new County Defendants, Plaintiffs' claims are barred by laches.

Further, Plaintiffs' conclusory allegations reflect a misunderstanding of how elections operate and fail to state a claim under either the Equal Protection or Due Process Clauses.  They speculate, and ask the Court to speculate, that ordinary operational differences and layperson observations of limited aspects of the election process demonstrate enough certainty of election fraud to undermine the entire electoral system.  But Plaintiffs' allegations do not give rise to a reasonable inference of vote dilution, much less constitutional injury.  Plaintiffs' SAC should be dismissed in full with prejudice.

# I.     FACTUAL AND PROCEDURAL HISTORY

Since 1978, all California voters have had the choice to vote in person at a polling location or by mail.  Since the November 2020 election, a vote-by-mail (VBM) ballot has been mailed to every registered active voter.  Cal. Elec. Code § 3000.5.[1] When voting by mail, voters may drop their ballot in official VBM drop boxes or the U.S. mail, designate another person to mail or return their ballot, or return the ballot directly to the county elections official.  *Id.* §§ 3003, 3015, 3017.  Ballots from VBM drop boxes are collected by pairs of election workers, and mailed ballots are delivered directly to the county elections official by the U.S. Postal Service or other bona fide delivery companies.  2 Cal. Code Reg. §§ 20137, 20143 (chain of custody); Elec. Code § 3020 (mail delivery).  Mailed ballots are counted if they are postmarked on or before Election Day and received within the statutory timeframe.  Elec. Code § 3020(b), (d).  When timely VBM ballots are received, the VBM envelope signature is verified using human review or a machine that auto-matches signatures or that projects images for human review.  *Id.* § 3019.  Challenged signatures receive additional review.  *Id.* Voters may cure missing or mismatched signatures before their ballot is rejected.  *Id.* Finally, verified VBM envelopes are opened and ballots counted.  *Id.* §§ 15101, 15109.

Alternatively, any voter may choose to vote in person.  *Id.* § 3015.  Ballots cast in person are scanned at the voting location, a precinct office, or the county's central counting location.  *Id.* §§ 15105, 15152, 15200-290.  All polls, including VBM drop boxes, close by 8:00 p.m. on Election Day.[2]  *Id.* § 14212; 2 Cal. Code Regs. § 20136(e).  Voters may surrender their VBM ballot when voting in person, or the county elections official can otherwise verify that they have not already voted and that any subsequently returned ballot will not be counted.  Elec. Code § 3015.

If any ballot—cast by VBM or in person—is damaged or otherwise unreadable

---

[1]  All references to the Elections Code are to the California Elections Code.

[2]  Voters still in line at a polling location or at a VBM drop box when polls close may cast their ballot after 8:00 p.m.  Elec. Code § 14401; 2 Cal. Code Regs. § 20136(e).

by the tabulator, it is carefully duplicated so that it can be counted.  Elec. Code
§§ 15208, 15210.  If there is a question of voter intent for any vote, the ballot is
adjudicated.  *See* 2 Cal. Code Regs. § 20982.  Both duplication and adjudication are
governed by California's uniform vote count standard.  *See id.*  Finally, after all
eligible ballots are counted, counties audit results with a manual tally of at least 1% of
the precincts.  Elec. Code §§ 15360.[3]  Then, results are certified and announced.

**A.    The 2020 Presidential Election**

Over 17 million Californians cast their votes in the 2020 Presidential General
Election.[4]  Over the next 30 days, county elections officials completed their official
canvass, processed and adjudicated ballots, and completed state-mandated post-
election audits of the tallied results.  *See* Elec. Code §§ 15300-376.  By December 3,
2020, all county elections officials certified the election results.  *Id.* § 15372.

Under California law, recount requests by voters must be made within five days
after certification—for the 2020 Election, by December 8, 2020.  Elec. Code
§ 15620(a).  No Plaintiff requested a recount.  Election contests involving presidential
electors must be filed within 10 days of the results being certified and resolved "at least
six days before the first Monday after the second Wednesday in December."  *Id.*
§§ 16003, 16401(c).  For the 2020 Election, that meant that election contests involving
electors had to be filed by December 8, 2020.  No Plaintiff filed an election contest.

**B.    The 2021 and 2022 Elections**

For the first time in their SAC, Plaintiffs contest elections subsequent to the
2020 Election, all of which were similarly conducted in an orderly, secure, and
effective manner.  In the 2021 Gubernatorial Recall Election, 12.8 million Californians
voted.[5]  Recount requests were due by October 19, 2021, and election contests,
including constitutional challenges, by November 13, 2021.  Elec. Code §§  15620(a),

---

[3] Counties may also perform a risk-limiting audit.  Elec. Code § 15365-67.

[4] *See* State Defs.' RJN ISO Motion to Dismiss FAC, Ex. 6 (2020 Stmnt. of Vote).

[5] County Defendants' Request for Judicial Notice (filed concurrently) (RJN), Ex. 6.

16401(d).  Plaintiffs filed neither.  In the 2022 General Election, 11.1 million Californians voted.[6]  Recount requests were due by December 13, 2022, and election contests by January 7, 2023.  Elec. Code §§ 15620(a), 16401(d).  Again, Plaintiffs filed neither.

**C.   Procedural History**

Plaintiffs filed this case on January 4, 2021—weeks after the deadlines for lawfully challenging the 2020 Election had passed.  At the time, Plaintiff EIPCa was joined by 10 unsuccessful Republican congressional candidates.  Plaintiffs sought a temporary restraining order, seeking a private audit of highly sensitive election infrastructure, records, security access tokens, passwords, and other materials.  Dkt. 21 at 3-7; Dkt. 68, Prayer, ¶ C.  The Court denied Plaintiffs' application.  Dkt. 35.

State and County Defendants[7] filed motions to dismiss.  Dkts. 43, 45.  Plaintiffs then filed a First Amended Complaint (FAC), adding additional candidate Plaintiffs and factual assertions, expanding upon legal claims, and amending their prayer for relief.  They argued that California's election system intentionally allows for elections to be marred by repeated mistakes and fraud.  Dkt. 68 at 3-6, 14-26.  Plaintiffs also alleged widespread fraud and irregularities during the 2020 Election, which, they claimed, necessitated a private audit by Plaintiffs' expert of all ballots cast in 2020 and all of County Defendants' voting equipment.  *Id.* at 6-7, 19-24, 25-35, 43-44.

State and County Defendants moved to dismiss the FAC.  Dkts. 84, 85.  The Court granted the motions.  First, the Court held Plaintiffs lacked standing for Equal Protection and Due Process Clause claims because they failed to allege a vote dilution injury, as they had not alleged any particular Plaintiff or member of EIPCa to be part of any disadvantaged group or that any group's votes were weighted differently than another's.  Dkt. 111 at 8-10.  It also held that the candidate Plaintiffs failed to allege

---

[6] RJN Ex. 7.

[7] Except Kern County and San Luis Obispo County, whose election officials were not named as Defendants in either the initial complaint or First Amended Complaint.

the outcome of their elections would have changed absent the alleged irregularities, and that Plaintiff EIPCa failed to demonstrate organizational standing. *Id.* at 10-11. Second, the Court held that the individual Plaintiffs, as private citizens, lack the "particularized stake in the litigation" required for standing to assert an Elections Clause claim. *Id.* at 11-12 (citing *Lance v. Coffman*, 549 U.S. 437, 442 (2007)). And third, the Court dismissed Plaintiffs' Guarantee Clause claims as nonjusticiable political questions. *Id.* at 12-13. The Court did not address mootness or laches, or their argument that Plaintiffs failed to state any claim for relief under Rule 12(b)(6). *See* Dkt. 84 at 13-22.

Plaintiffs appealed. On November 3, 2022, the Ninth Circuit held that Plaintiff EIPCa had sufficiently alleged organizational standing and affirmed the dismissal of Plaintiffs' Guarantee Clause claims. 9th Circ. Order[8] at 3, 6. The Ninth Circuit expressly did not address individual Plaintiff standing. *Id.* at 6. In addition, while noting that EIPCa's alleged organizational harm would be redressed if the challenged laws were enjoined, *id.* at 5, the Ninth Circuit did not address the appropriateness of any other requested form of relief. Mandate issued on November 25, 2022.

Pursuant to a joint stipulation, Plaintiffs filed a SAC. Dkt. 132. The SAC removes several candidate Plaintiffs, with five remaining on as individual voter, non-candidate Plaintiffs, removes the Governor as a defendant, adds two additional County Defendants, and deletes the Elections and Guarantee Clause claims. Plaintiffs reformulated their Equal Protection and Due Process Clause claims to now rely solely on vote dilution harms. *Compare* FAC ¶¶ 174-78, 189-90 *with* SAC ¶¶ 151-53, 163-65. And—months, if not years, after the deadlines for challenging the 2021 and 2022 Elections—Plaintiffs have belatedly added brand new allegations regarding those elections. *See* SAC ¶¶ 7, 96-7, 102, 115-18, 122, 125-27, 129, 138, 147.

///

---

[8] RJN Ex. 1.

## II.   LEGAL STANDARD

Under Rule 12(b)(1), a court must dismiss a case if it lacks subject matter jurisdiction.  Rule 12(b)(1) attacks can be facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Facial attacks require the defendants to show that the allegations in a complaint are "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Factual attacks require the defendants to challenge "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*  A factual attack allows a court to "look beyond the complaint to matters of public record," and it "need not presume the truthfulness of the plaintiffs' allegations."  *Lee*, 227 F.3d at 1242.  The plaintiffs bear the burden of establishing subject matter jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

A court must grant a motion to dismiss under Rule 12(b)(6) if a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plaintiff must sufficiently plead each required element of a cause of action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 675-77 (2009).  Although courts considering a motion to dismiss must draw reasonable inferences in the plaintiff's favor, "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679. "[L]abels and conclusions" are insufficient, and "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  A court must disregard conclusory allegations and "draw on its judicial experience and common sense" to make a context-specific determination as to whether a complaint states a plausible claim.  *Iqbal*, 556 U.S. at 679.  Courts may also consider matters of judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## III.   LEGAL ARGUMENT

### A.   Voter Plaintiffs Lack Standing to Assert Any of Their Claims.

The individual Plaintiffs should be dismissed because they lack Article III

standing to pursue either of the claims they now assert.  Article III limits federal court jurisdiction to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  To establish standing, a plaintiff must demonstrate (1) that they suffered an injury in fact; (2) that there is a causal connection between the injury and the alleged conduct, such that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury will likely be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Plaintiffs bear the burden of demonstrating Article III standing.  *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

### 1.   <u>Voter Plaintiffs Fail to Demonstrate Injury in Fact</u>.

To demonstrate "injury in fact," the injury must be "particularized," such that it "affect[s] the plaintiff in a personal and individual way."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citations omitted).  The injury also must be "concrete," that is, "real" and not "abstract."  *Id.*  A plaintiff cannot show a particularized and concrete injury by showing "that he has merely a general interest common to all members of the public."  *Ex parte Levitt*, 302 U.S. 633, 634 (1937).  A plaintiff also may not use a "federal court as a forum in which to air his generalized grievances about the conduct of government."  *United States v. Richardson*, 418 U.S. 166, 174 (1974) (quoting *Flast v. Cohen*, 392 U.S. 83, 106 (1968)).  But once again—even despite their partial victory in the Ninth Circuit—that is precisely what Plaintiffs have done.

### a.   *Voter Plaintiffs Fail to Plead Injury at all; Speculative Allegations are Insufficient to Show Particularized Injury*.

As an initial matter, the SAC manifestly fails to allege injury to *any* individual Plaintiff; there is not a single allegation of individual harm clearly tied to these voters. Four of the five individual Plaintiffs are listed in the "Plaintiffs" section and never mentioned again.  The SAC alleges that Plaintiff Kennedy is African American, SAC ¶ 142, but there is no allegation that she was disenfranchised or harmed on that basis.[9]

---

[9] No Ventura County allegations concern race-based harms, *see* SAC ¶ 104, and the SAC does not allege that Plaintiff Kennedy's vote was diluted.

For this reason alone, the individual Plaintiffs lack standing to bring either of Plaintiffs' claims and should be dismissed. *Spokeo*, 136 S. Ct. at 1548.

In addition, in their third effort, Plaintiffs still fail to allege "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'" vote dilution injury to any individual Plaintiff or identified person. *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). Moreover, to be "facially plausible," the SAC must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But Plaintiffs' speculative injury allegations do not allow for even that.

First, even assuming—although there is no basis to do so—that any of the individual Plaintiffs were the EIPCa observers subject to allegedly improper treatment in their respective counties (*see* SAC ¶¶ 100, 104, 120),[10] many of Plaintiffs' observer-related allegations are facially speculative and demonstrate no injury to anyone, much less individual Plaintiffs. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (finding a "speculative chain of possibilities does not establish [an] injury … is certainly impending or is fairly traceable"). In two examples of many, Plaintiffs allege that Los Angeles County observers saw "open bags, big purses, and other stuff around desks" at voting centers and felt that "ballots could easily have been taken," and that a Santa Clara County observer saw some doors that were briefly unlocked and did not know why. SAC ¶¶ 118, 125. No reasonable inference can bridge the gap between "open bags" and ballot theft, or unlocked doors and dilution of an unspecified group of voters' votes. *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (noting "unwarranted inferences are insufficient to defeat a motion to dismiss").

Second, as this Court has already found, Plaintiffs' allegations amount to an alleged incremental undermining of confidence in the election results, past and

---

[10] Plaintiff Mark Reed is a resident of Madera County, which is not a defendant in this litigation and against which there are no allegations. *See* SAC ¶ 19.

future.[11]  Dkt. 111 at 9.  Plaintiffs attack the overall structure and content of California's Elections Code, arguing that VBM and other measures have or will inevitably lead to voter fraud and untrustworthy election results.  Their conclusion is based on a series of disconnected incidents where county staff allegedly *violated* state laws (*e.g.*, SAC ¶¶ 95, 96, 115), followed state laws (*e.g.*, SAC ¶¶ 119, 122, 124), or took idiosyncratic individual actions (*e.g.*, an election worker "display[ing] hostility" (SAC ¶ 97)).  None of these alleged injuries are tied to any specific vote, voter, or protected group of voters, much less to the individual Plaintiffs.  Such a "generalized grievance" is insufficient for Article III standing.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (standing lacking where plaintiff "suffers in some indefinite way in common with people generally"); *see, e.g.*, *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020) (voters' speculation that all-mail election would increase fraud, diluting their votes, was a generalized grievance, insufficient to confer standing); *Stein v. Cortes*, 223 F. Supp. 3d 423, 432-33 (E.D. Pa. 2016) (candidate's speculation that election's integrity was compromised was too generalized to support standing); *Lance*, 549 U.S. at 441-42 (claims that are "plainly undifferentiated and common to all members of the public" are generalized grievances that do not confer standing).  The individual Plaintiffs cannot resuscitate their standing based on the unreasonable assumption that the alleged scattershot of observer mistreatment will be replicated in *every future California election*.  Speculative allegations unmoored from any particular Plaintiff are entirely insufficient to confer Article III standing.  *Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018) (distinguishing individualized harm for voters challenging vote dilution in their districts from generalized harm of alleged statewide vote dilution).

### b.   *Voter Plaintiffs Lack Standing for Vote Dilution Claims.*

Moreover—as with their previous complaints—Plaintiffs' allegations are insufficient to support either of the individual Plaintiffs' voting rights claims, which

---

[11] The Ninth Circuit's order did not disturb this holding as to the individual Plaintiffs or Plaintiffs' general theory of the case.

1   both which solely on vote dilution harm.[12]  SAC ¶¶ 153, 165 ("Plaintiffs have suffered

2   damages *through the diminution in value of their votes* by reason of Defendants'

3   violation of the [Equal Protection Clause/Due Process Clause]." (emphasis added)); *see*

4   Dkt. 111 at 6.  Previously, this Court correctly held that "[a]ssuming all allegations to

5   be true, the Court is still left to speculate whether the present voting system will lead to

6   concrete and particularized vote dilution which results in a specific group having their

7   votes weighted differently."  Dkt. 111 at 9.  The Ninth Circuit did not disturb this

8   holding, and the SAC fails to address this flaw.

9           **2.**     **Causation and Redressability**.

10        While the SAC narrows and clarifies Plaintiffs' claims (although not their

11   remedies), there is still a significant mismatch between the alleged injuries

12   undergirding Plaintiffs' two claims and the relief Plaintiffs seek.  The sole harm

13   alleged in both claims is a generalized concern about vote dilution.  Plaintiffs worry

14   that fraudulent or invalid ballots could be counted in California elections and therefore

15   want to inspect and audit at least three past statewide elections and eliminate huge

16   swaths of California's Elections Code and implementing regulations, including those

17   very regulations that guide signature verification and vote counting.

18        Neither Plaintiffs' allegations nor their chosen claims support their wide-ranging

19   requested relief.  To the extent Plaintiffs allege county elections officials failed to

20   follow the law resulting in vote dilution, the remedy of *eliminating* the laws is illogical.

21   To the extent they allege Defendants did follow the laws, but the laws themselves

22

---

[12] Courts consistently hold that individual voters lack standing to bring an Equal
Protection or Due Process Clause claim for vote dilution due to unlawful or invalid
ballots.  *See Wood v. Raffensperger*, 501 F.Supp.3d 1310, 1322-23 (N.D. Ga. 2020)
(collecting cases); *Rucho v. Common Cause*, 139 S. Ct. 2484, 2501 (2019) ("'[V]ote
dilution' in the one-person, one-vote cases refers to the idea that each vote must carry
equal weight.").  Vote dilution is a general grievance that cannot support a finding of
particularized injury.  *See Donald Trump for President, Inc. v. Cegavske*, 488 F. Supp.
3d 993, 1000 (D. Nev. 2020) ("[P]laintiffs' claims of a substantial risk of vote dilution
'amount to general grievances.'"); *Bowyer v. Ducey*, 506 F.Supp.3d, 699, 711-12 (D.
Ariz. 2020) (similar); *Martel v. Condos*, 487 F.Supp.3d 247, 253 (D. Vt.  2020)
(similar); *Paher*, 457 F. Supp. 3d at 926-27 (similar); *Nolles v. State Comm. for
Reorg. of Sch. Dists.*, 524 F.3d 892, 900 (8th Cir. 2008) (similar).

caused or may cause vote dilution, then the massive scope of the requested relief is inappropriate and any retrospective relief, such as audits, is inapplicable.  And, to the extent Plaintiffs allege instances of past behavior that they cannot plausibly allege will be repeated and that have no apparent connection to vote dilution—unlocked doors, Plexiglass barriers used in 2020 for COVID-19 safety, and rude staff—*none* of Plaintiffs' requested relief addresses those alleged harms.

As an initial matter, because there are no specific allegations of injury as to the individual Plaintiffs, Plaintiffs have failed to demonstrate causation or redressability, as well.  And Plaintiffs have never explained, including in the SAC, how engaging in a duplicative, private audit of any past election—accompanied, presumably, by the possibility of decertification—would undilute their votes.  Yet they seek such an audit once again, not only for the 2020 Election but all elections since.  SAC at 39 (¶¶ 1, 2).

Assuming, *arguendo*, Plaintiffs have sufficiently pled mission or resources harm to EIPCa (9th Circ. Order at 3-4), they still must show that EIPCa or the individual Plaintiffs have standing for "each form of relief sought."  *DaimlerChrysler*, 547 U.S. at 352.  Plaintiffs offer no explanation for how their harm would be remedied by the inspection and audit of *past* elections, when they are, at base, seeking *forward*-looking relief (declaratory relief and changes in law).  There is no need for an audit years after the fact unless one is trying to undo a past election, which Plaintiffs have disclaimed.

Finally, County Defendants have absolutely no authority related to "all … future bills that … will expand VBM and all regulations that … will not provide uniform requirements regarding observation, signature verification, ballot remaking, and voter rolls."  SAC at 40 n.3.  County Defendants cannot be held accountable for the hypothetical future actions of unknown voters, Legislatures, Governors, and Secretaries of State in perpetuity.  That is true notwithstanding the disproportionate and speculative nature of Plaintiffs' request, which ultimately aims to place California's election system into an unending, ill-conceived receivership based on allegations of a handful of possibly mishandled ballots.

### 3. <u>**All Plaintiffs Lack Standing Against San Benito and Santa Cruz Counties, Against Which There are No Allegations.**</u>

This is Plaintiffs' third complaint without a *single* allegation against two named Defendants. Despite three filings and a meet and confer calling Plaintiffs' attention to this omission, Plaintiffs have refused to either drop San Benito and Santa Cruz Counties or put those Defendants on notice of the allegations against them. *See* Dkt. 43 at 20 n.11; Dkt. 84 at 5 n.7; County Defs.' Ans. Br. at 30 n.16.[13] No plaintiff has standing to bring any claim against a defendant against which no wrong is alleged. *Iqbal*, 556 U.S. at 678 (complaint must contain allegations that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### B. **Plaintiffs' Claims Are Barred by Laches.**

All of Plaintiffs' claims in the SAC are barred by the doctrine of laches. To establish laches, Defendants must show that Plaintiffs unreasonably delayed in filing suit, causing prejudice to Defendants or the administration of justice. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951-52 (9th Cir. 2001). Courts strongly disfavor delays in bringing lawsuits during an election cycle, much less after one. *Perry v. Judd*, 840 F. Supp. 2d 945, 950 (E.D. Va.), *aff'd*, 471 F. App'x 219, 227 (4th Cir. 2012) ("The Supreme Court has repeatedly expressed its disapproval of such disruptions."); *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) ("In the context of elections, … any claim against a state electoral procedure must be expressed expeditiously.").

First, Plaintiffs have failed to seek timely state court remedies for any election at issue. Plaintiffs sat on their 2020 Election-related claims for weeks, if not months, for no legitimate reason, missing every state law deadline to challenge that election. By their own admission, Plaintiffs knew of their 2020 claims by the close of voting on November 3, 2020 at the latest. *E.g.*, SAC ¶¶ 96, 98, 100, 115-16, 118, 121. Yet they failed to file an election contest, which could have included their constitutional claims

---

[13] RJN Ex. 2.

and would have received expedited review.[14]  Elec. Code § 16100; Cal. Code Civ. Proc. § 35.  Nor did they seek a writ of mandate challenging how county elections officials were carrying out their mandatory duty to allow election observation and verify signatures to address these alleged harms.  *See* Cal. Code Civ. Proc. § 1085.

Plaintiffs offer no explanation, much less a "legitimate excuse," for their delay in filing this action.  *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006).  Such a significant delay caused prejudice to County Defendants and the administration of justice.  While Plaintiffs slept on their rights, millions of Californians cast their votes in the 2020 Election.  *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 939 (7th Cir. 1984) (Posner, J., concurring) ("[O]ne who seeks the help of a court of equity must not sleep on his rights.").  California counties, including County Defendants, tabulated and certified votes, the Secretary of State certified the election results, newly elected officials took office, and the Electoral College tabulated votes for the next President—all while Plaintiffs failed to challenge the election and held back this lawsuit based on *facts and laws already well known to Plaintiffs*.  Plaintiffs' 2021 and 2022 Election-based allegations suffer from the same flaw.  Plaintiffs filed no election contests or writ petitions, yet added allegations about those elections in the SAC, more than a year after the 2021 Election and months after the 2022 Election were certified—long after any harms could be remedied.

In light of these strategic and unexplained delays, the relief Plaintiffs continue to seek via elimination of California's election law and an audit of long-passed elections "would be extreme, and entirely unprecedented."  *Bowyer*, 506 F.Supp.3d at 719; *see also*, *SW Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) ("Interference with impending elections is extraordinary, ... and interference with an

---

[14] In such a challenge, Plaintiffs could have alleged, as they suggest now, that "illegal votes were cast," that eligible voters "were denied their right to vote," and that "there was an error in the vote-counting."  Elec. Code § 16100(d), (e), (g).  However, to do so, they would have had to "prov[e] a defect in the election by clear and convincing evidence."  *Clark v. McCann*, 243 Cal. App. 4th 910, 915 (2015).

election after voting has begun is unprecedented."); *see also King v. Whitmer*, 505 F.Supp.3d 720, 732 (E.D. Mich. 2020) (barring, in part based on laches, an "after the fact" lawsuit alleging similar claims of widespread voter irregularities and fraud). Moreover, interfering with election results months—or for the 2020 Election, over two years—after their closure would grievously "harm the public in countless ways." *Raffensperger*, 501 F.Supp.3d at 1331.

Second, more than two years after this case was filed, the SAC adds the elections officials in San Luis Obispo and Kern Counties, alleging 2020 Election irregularities based on evidence allegedly collected during or immediately after that election. SAC ¶¶ 124, 137. There is no legitimate reason why Plaintiffs should be allowed to bring election-related claims against these two Defendants *over two years* after the close of the relevant election.[15] This late addition harms these Defendants, who have long since destroyed records that would be used to defend against Plaintiffs' claims.[16] *See Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 839 (9th Cir. 2002) (laches will apply where defendant "will suffer prejudice from [plaintiffs'] delay"). Minimally, all claims against these two Defendants should be dismissed.

## C.     Despite Three Pleadings, Plaintiffs Once Again Fail to State a Claim.

Plaintiffs allege Equal Protection and Due Process Clause claims pursuant to 42 U.S.C. § 1983. To state such a claim, Plaintiffs must allege that they were deprived of a right secured by the U.S. Constitution or the laws of the United States by someone acting under the color of state law. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008). But "[i]t is hornbook law that Section 1983 does not provide a right of action for 'garden variety election irregularities.'" *Soules v. Kauaians for Nukolii Campaign Comm*., 849 F.2d 1176, 1183 (9th Cir. 1988) (citation

---

[15] Although the SAC alleges 2021 irregularities in Kern County (SAC ¶¶ 97, 117), as explained above, those allegations are also barred by laches because Plaintiffs failed to seek any state court remedies for that election.

[16] Elections officials must destroy ballots 22 months after elections for President, Elec. Code § 17301, and 6 months after elections for state or local offices, *id*. § 17302. Other required destruction dates apply to other materials. *See id*. § 17300 *et seq*.

1  omitted).  "Only a pervasive error which undermines the 'organic processes' of the

2  ballot is sufficient to trigger constitutional scrutiny."  *Id.* (citation omitted).

3       Plaintiffs do not sufficiently plead that County Defendants deprived Plaintiffs of

4  any right, privilege, or immunity granted them under the Constitution or federal law.

5  Rather, Plaintiffs allege scattershot complaints about election observer access and

6  signature verification processes, and irrelevant other incidents, that do not contain

7  specific, nonconclusory allegations that any votes were incorrectly tabulated or

8  otherwise mishandled.  Instead, the SAC alleges conduct that left unidentified

9  individual observers (who are neither elections officials nor election experts) without

10  sufficient subjective assurance that some ballots in some counties were not validly cast.

11  None of Plaintiffs' allegations support a reasonable inference that unlawful votes were

12  cast or lawful votes not counted—much less that California's entire election law

13  scheme has or will result in fraudulent or inaccurate election results.  Such a chain of

14  improbable events, even after two amendments, is not sufficient to make out an equal

15  protection or due process violation.  And, to the extent Plaintiffs' claims are based on

16  fraud, they entirely fail to meet the Rule 9 pleading standard.

17       **1.      The SAC Does Not Comply with Rule 8 or Rule 9(b).**

18       Plaintiffs allege they have thousands of affidavits from election observers from

19  elections since November 2020 noting various irregularities.  SAC ¶¶ 6, 126, 127.  But,

20  despite a reasonable inference that the allegations in the SAC are Plaintiffs' strongest

21  examples of malfeasance and constitutional violations, the SAC fails to pass muster

22  under Federal Rule of Civil Procedure 8(a)(2).  *Iqbal*, 556 U.S. at 679 ("[W]here the

23  well-pleaded facts do not permit the court to infer more than the mere possibility of

24  misconduct, the complaint … has not shown that the pleader is entitled to relief.  Fed.

25  Rule Civ. Proc. 8(a)(2).") (cleaned up).

26       Reading the allegations in the SAC together, Plaintiffs' theory of the case seems

27  to be that County Defendants' procedures allow for the possibility of invalid or

28  fraudulent ballots being counted.  Such speculative assertions are insufficient to state a

claim that County Defendants' actions or omissions infringed on Plaintiffs'

constitutional right to vote in violation of the Equal Protection or Due Process Clauses.

Even the few allegations that allegedly invalid ballots were counted are clearly

conclusory and based on speculation or assumptions.  For example, Plaintiffs allege

that Los Angeles County observers witnessed "two different women drop off multiple

ballots without voter signatures.  Nevertheless, the ballots were counted by election

officials for the 2020 general election."  SAC ¶ 118.  It is inconceivable that these

observers were able to track those specific ballots from drop off through the entire

process and *know* they were counted.  In other instances, the number of ballots at issue

is entirely unclear, such as with broad allegations that "ballots" were mishandled or

counted that should not have been counted, leaving Defendants and the Court without

any guide as to the scope of harm.  SAC ¶¶ 110, 120.  Allegations about alleged

insecurities such as purses in locations where ballots "could easily have been taken,"

SAC ¶ 118, or unexplained unlocked doors, SAC ¶ 125, invite the Court to conclude

that bad actors, including actors *other than Defendants*, took steps to undermine the

election security without pleading the specific allegations necessary to draw that

inference.  Such allegations are insufficient to support a plausible inference that

Plaintiffs have stated a claim that they are entitled to relief.  *See Iqbal*, 556 U.S. at 678.

Further, Plaintiffs allege that state laws "promote fraud" and "create[] massive

opportunities for … fraud," and suggest that fraudulent votes have or will be cast.

SAC ¶¶ 53, 58, 60, 75, 82, 143, 158, 160.  But to the extent that Plaintiffs allege fraud

or mistake on the part of County Defendants, they fail to plead with particularity the

circumstances to support such an allegation.  Fed. R. Civ. P. 9(b).[17]

---

[17] Plaintiffs' constitutional claims are based on allegations that County Defendants' actions or omissions increased the possibility of undetected election fraud.  Yet the SAC lacks allegations that fraudulent ballots were in fact *cast and counted*.  Plaintiffs speculate that *if* such ballots were cast, there is a *chance* that Defendants *might* have validated and counted the ballots and suggest that due to observer access issues, there is the *possibility* that County Defendants themselves could have engaged in fraud or mistake in duplication or tabulation.  This fails to meet the *Twombly/Iqbal* pleading standard, and these allegations are insufficient under Rule 9(b), which requires

## 2.   <u>**Plaintiffs Fail to State a Claim for Relief**</u>.

Plaintiffs' allegations are insufficient to state a claim against County Defendants under either the Equal Protection or Due Process Clauses.  Instead, Plaintiffs' allegations amount to speculation that County Defendants' processes and protocols create irregularities that could incrementally increase the potential for election fraud to go unnoticed.  But the "Constitution is not an election fraud statute." *Bodine v. Elkhart County Election Bd.*, 788 F.2d 1270, 1271 (7th Cir. 1986).  "It is not every election irregularity … which will give rise to a constitutional claim." *Id.*  Rather, "garden variety election irregularities that could have been adequately dealt with through the procedures set forth in [state] law" do not support constitutional due process claims. *Id.*; *see also Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998) ("[G]arden variety election irregularities do not violate the Due Process Clause, even if they control the outcome of the vote or election.").  For a due process violation based on a theory of vote dilution, Plaintiffs must allege that voters in different counties were subject to statistically significant inaccuracies in vote tabulation without a rational basis.  *See, e.g.*, *Black v. McGuffage*, 209 F. Supp. 2d 889, 901 (N.D. Ill. 2002) ("The crux of the matter … [is] that a law that allows significantly inaccurate systems of vote counting to be imposed upon some portions of the electorate and not others without any rational basis runs afoul of the due process clause of the U.S. Constitution.")  And in order to plead an equal protection violation, Plaintiffs must plead allegations that an identifiable class of voters to which Plaintiffs belong or represent—such as groups based on "race, sex, economic status, or place of residence within a State," *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)—is disfavored, where the "favored group has full voting strength and the groups not in favor have their votes discounted," *id.* at 555 n.29.  The allegations in the SAC are insufficient to support either theory of relief.

---

pleading of the time, place, and content of the alleged fraud.  *Stack v. Lobo*, 903 F. Supp. 1361, 1367 (N.D. Cal. 1995) ("Merely making general conclusory allegations of fraud, and then reciting a list of neutral facts, is not sufficient.") (citation omitted).

To the contrary, Plaintiffs point to scattershot instances where observers were dissatisfied with the level of access allegedly provided to them and to alleged election security deficiencies, without making *any* assertions that those irregularities rise to the level of a constitutional violation that impeded the right to vote.  SAC ¶¶ 91-104. Although Plaintiffs allege to have additional incident reports, their actual allegations fail to give rise to a reasonable inference that the 2020, 2021, or 2022 Elections were inherently flawed or that vote dilution occurred or will occur in the future.  Similarly, Plaintiffs' allegations of deficient signature verification are often conclusory and speculate that invalid ballots may have (or may one day be) counted.  The SAC's continued reliance on the alleged increased "possibility" for invalid votes to be counted, especially without sufficient allegations that such ballots *were* actually counted on a scale that calls into question the integrity of any election, fundamentally undermines the claim that County Defendants' conduct infringed Plaintiffs' constitutional rights.  *See* SAC ¶¶ 58, 60, 75, 82, 143; *see also Iqbal*, 556 U.S. at 678.

### a.   *Plaintiffs Allege a Generalized Grievance Rather Than Unconstitutional Vote Dilution or Different Treatment*.

Courts have recognized narrow circumstances in which alleged vote dilution states a claim that a voter's constitutional rights have been infringed, tending to leave to the political process and state courts resolution of most election related claims.  This judicial restraint is based on a recognition that "garden variety election irregularities" do not rise to the level of constitutional violations.  *Bennett*, 140 F.3d at 1226.

To plead a violation of the Equal Protection Clause, Plaintiffs must allege that 1) they belong to or represent a distinct group of voters that 2) experiences unfavorable different treatment in 3) the weighing of their votes.  *See Reynolds*, 377 U.S. at 555 n.29; *Baker v. Carr*, 369 U.S. 186, 206 (1962).  Plaintiffs allege that in-person and VBM voters are treated differently because VBM voters have more time to vote and VBM ballots are allegedly less scrutinized, SAC ¶¶ 130-42, a claim that fails in three respects.  First, those are not distinct groups of voters as *all* registered, active voters in

California are mailed a VBM ballot and *any* voter can, of their own volition, be an in-person or VBM voter.  Second, allegations regarding additional time for VBM voters to vote are not well-pled.  Plaintiffs allege the Secretary of State offered guidance stating that ballots could be deposited in drop boxes after the close of voting at 8 p.m. on Election Day.  SAC ¶¶ 131-4.  This misstates the legal requirements for accepting ballots arriving by mail, and Plaintiffs have not cited to any such guidance despite the fact that all guidance from the Secretary is publicly available.[18]  Plaintiffs fail to identify when or where this guidance was offered or can be found; without this, the mere assertion that it exists is not well-pled.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (the court need not accept as true allegations that are conclusory or "that contradict matters properly subject to judicial notice").  And a conclusory allegation that EIPCa has recorded late voting and pickups of ballots from mailboxes, SAC ¶ 133, does not support the inference that those late ballots were *counted* in violation of the law.  Third, to the extent that any invalid or fraudulent VBM ballots were counted, the harm of those invalid votes does not tend to propound to lawful in-person voters as compared to lawful VBM voters.  *See Raffensperger*, 501 F.Supp.3d at 1322-23 (collecting cases); *see also supra* Section III.A.  Plaintiffs simply fail to plead any meaningful different treatment between these alleged two groups of voters.

For their Due Process Clause claim, Plaintiffs need to allege their fundamental right to vote was or is infringed by vote dilution that is particularized to identifiable voters, rather than generalized to all voters.  But federal courts have uniformly found that greater election irregularities than those alleged by Plaintiffs <u>do not</u> rise to the

---

[18] An unsupported allegation that such guidance was issued, when it would have been plainly contrary to law, need not be taken as true when publicly available facts suggest no such guidance exists.  *White*, 227 F.3d at 1242 (The "court may look beyond the complaint to matters of public record" when ruling on a Rule 12(b)(1) motion.).  All available guidance from the Secretary of State includes the 8 p.m. deadline and reiterates that ballot drop boxes should be locked and secured.  *See, e.g.*, RJN Exs. 8, 9, 10.  An archive of the Secretary's guidance to county elections officials is available at https://www.sos.ca.gov/elections/advisories-county-elections-officials.

level of Due Process violations. *See Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (malfunctioning voting machines); *Gold v. Feinberg*, 101 F.3d 796, 801-02 (2d Cir. 1996) (human error in miscounting votes; delayed voting machine delivery); *Curry v. Baker*, 802 F.2d 1302, 1316 (11th Cir. 1986) (inadequate response to illegal cross-over voting); *Bodine*, 788 F.2d at 1272 (mechanical and human error in counting votes); *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (ballot printing errors); *Powell v. Power*, 436 F.2d 84, 85-86 (2d Cir. 1970) (non-party member votes in congressional primary); *Johnson v. Hood*, 430 F.2d 610, 612-13 (5th Cir. 1970) (arbitrary rejection of ten ballots).

The Ninth Circuit held that Plaintiff EIPCa has organizational standing because the FAC "adequately allege[d] that the defendant's behavior has frustrated its mission" of using observers to "advocate for greater election integrity," and "caused it to divert resources in response to that frustration of purpose." 9th Circ. Order at 3 (quotations omitted). But nowhere did the Ninth Circuit hold that EIPCa was harmed by the dilution of the votes of any particular group or of its members, or that it represented any such group. Yet, generalized concern about vote dilution harming hypothetical voters due to the possibility of invalid ballots being counted is the *sole* injury supporting both of Plaintiffs' constitutional claims. *See* SAC ¶¶ 153, 165. Without allegations of a particularized constitutional harm to a specific voter or group of voters, Plaintiffs have failed to pair EIPCa's alleged organizational harm with any claim. Therefore, the SAC fails to state a claim for relief.

### b. *Inability to Observe Elections Processes Does Not Harm Plaintiffs' Voting Rights*.

In their third bite at the apple, Plaintiffs continue to heavily rely on allegations related to election observer access and ability to observe all portions of the election process. While there is a qualified state statutory right for election observation, *see*

///

///

Elec. Code § 2300(a)(9),[19] the inability to observe portions of the elections process does not injure Plaintiffs' voting rights.  *See, e.g.*, *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 407 (E.D. Pa. 2016).  Plaintiffs did not avail themselves of state court remedies that could address any meritorious concerns regarding election observation policies while the elections were underway, despite Defendants repeatedly noting the availability of such avenues for relief throughout this litigation, including *before* the 2021 and 2022 Elections.[20]  State courts give priority to election matters, including allegations of an "error, omission, or neglect [that] is in violation of [the California Elections] code or the Constitution."  Elec. Code § 13314(a)(2); *see also* Cal. Code Civ. Proc. § 35 (giving election matters priority).

At base, Plaintiffs' observer-related allegations seek to create speculation that Californians' right to vote is impaired, without well-pled allegations drawing a logical inference between obstruction of observation and vote dilution.  Plaintiffs ask the Court to draw a straight line between (1) some observers allegedly experiencing barriers to observation (including during a public health emergency), (2) the likelihood that election irregularities will go unchecked, despite numerous controls and required post-election audits, and (3) the dilution of some group of voters' votes (distinct from generalized, incremental harm to all voters).  This is insufficient to state a claim of a constitutional violation.  *See Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 418 (W.D. Pa. 2020) ("While vote dilution is a recognized burden on the right to vote in certain contexts, such as when laws are crafted that structurally devalue one

---

[19] The right to observe an election is not a right to unfettered access or questioning.  Observers cannot interfere with the processing of VBM ballots, ask disruptive questions, or challenge ballots other than on identified statutory grounds.  *See* Elec. Code §§ 2300(a)(9)(b), 14240, 15104(e), 15105.

[20] Plaintiffs do not plead that differential treatment of observers or inability to observe violates the Equal Protection or Due Process Clauses.  If they did, County Defendants would need to show only a rational basis for their policies.  *See Cortes*, 218 F. Supp. 3d at 408 (*Anderson-Burdick* framework does not apply where the right to vote is not implicated, such as with election observer policies that restrict observation to only county residents.); *see also Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018) (explaining *Anderson-Burdick* framework).  Given huge disparities in the number of voters, and the ongoing public health emergency, that burden would be easily met.

community's or group of people's votes over another's, there is no authority to support a finding of burden based solely on a speculative, future possibility that election irregularities might occur.") (collecting cases).

### c.   The Signature Verification Allegations are Conclusory and Reflect Lawful Actions and Statewide Standards.

Plaintiffs allege that County Defendants' processes for signature verification violate the Equal Protection and Due Process Clauses because they fall short of statutory standards and are less reliable than processes used in other counties in California.  Citing *Bush v. Gore*, Plaintiffs allege that these variations demonstrate that California lacks sufficient statewide standards in signature verification to ensure that county elections officials "avoid arbitrary and disparate treatment" of voters. SAC ¶¶ 106, 108, 126-27, 138, 150-51, 164; *see Bush v. Gore*, 531 U.S. 98, 105 (2000).  But Plaintiffs' allegations are conclusory, speculative, and are not equivalent to the nature and scale of harm at issue in *Bush v. Gore* and its progeny.

Courts have repeatedly held that counties may adopt different practices that serve those jurisdictions' "interests in efficiently allocating [their] election resources and administering elections in an orderly manner," when those administrative interests outweigh any minimal burden on Plaintiffs' rights.  *See Mays v. LaRose*, 951 F.3d 775, 783 (6th Cir. 2020); *see also Harlan v. Scholz*, 866 F.3d 754, 755-56 (7th Cir. 2017). Nothing about variations in County Defendants' practices or policies make County Defendants' practices or policies unlawful.  These differences reflect the discretion afforded to counties as subdivisions of the State to operate effective and fair elections within the framework of state and federal election law.  Far from showing—or even inferring—wrongdoing, Plaintiffs' highlight differences (*i.e.*, different numbers of reviewers, or number of signatures per screen) that merely represent the ordinary, practical variation among counties of different sizes.  *See* RJN Exs. 3-5.

Unlike Florida's infirm recount standards in *Bush v. Gore*, California has robust signature verification standards in both Elections Code section 3019 and Title 2,

section 20960 of the California Code of Regulations.  Under these standards, the signature on a VBM envelope is presumed to be that of the voter and should only be rejected if, on a second review, two election officials find "beyond a reasonable doubt" that the signature does not match.  Elec. Code § 3019(a)(2)(A), (c)(2).  These standards reflect the Legislature's well-reasoned judgment, despite Plaintiffs' view to the contrary, that returned VBM ballots generally bear sufficient indicia of reliability.

Moreover, Plaintiffs fail to show that any of the alleged county variations have or will harm Plaintiffs.  They allege that "election workers even counted ballots with no signatures or signatures that did not match the identity of the voter," SAC ¶ 110, but fail to allege when or where this happened, or how many such ballots were allegedly counted among the *tens of millions* of ballots cast in 2020, 2021, and 2022.  Plaintiffs allege that review was too fast (SAC ¶¶ 118, 120, 122, 125), but these conclusory statements by untrained laypeople cannot support a reasonable inference that review was inadequate or likely to allow for the counting of invalid ballots.  Instead, Plaintiffs rely on speculation and unpled assumptions about the likelihood of election fraud.

At most, the SAC alleges that perhaps a handful of ballots without properly verified signatures were mistakenly counted across the state.  Statewide standards, like California's, cannot guard against all mistakes, and as *Bush v. Gore* and its progeny make clear, allegations of a handful of mistakes are not sufficient to find the standards unconstitutional.  *See Bush v. Gore*, 531 U.S. at 109 (holding that minimal statewide procedural safeguards are required in vote tabulation but recognizing variation within those standards is permissible); *Democratic Cong. Campaign Comm. v. Kosinski*, 2022 WL 2712882, at *20 (S.D.N.Y. July 13, 2022) ("[State standards] simply cannot guarantee against arbitrary mistakes, as no standard can do.").  Nothing in the SAC suggests systematic errors on the part of *any* County Defendant.

Plaintiffs' attempt to demonstrate an Equal Protection violation by comparing County Defendants' practices to those of non-defendant Placer, Solano, and Siskiyou Counties falls flat.  Plaintiffs claim those counties allow more time for signature

1   review and have additional layers of review.  SAC ¶¶ 106, 107, 112.  This lawful

2   variation is expected since those counties are much smaller than County Defendants.

3   In November 2020, these three comparators had 270,599, 259,161, and *just 29,240*

4   registered voters.  RJN Ex. 3.  Only four County Defendants had fewer than 400,000

5   registered voters,[21] five had more than a million registered voters, and Los Angeles

6   County had almost six million.  *Id.*  Common sense suggests that the process for and

7   speed of signature review in counties with such dramatically different numbers of

8   ballots may differ.  And again, the SAC has scant (and vague) allegations of invalid

9   ballots actually being counted, which is insufficient to raise a constitutional claim.

10          ***d.      Allegations of "Irregularities" Reflect Plaintiffs' Lack of***
11                 ***Understanding of Election Processes.***

12          The SAC includes numerous allegations that, on their face, are consistent with

13   proper procedures and reveal that Plaintiffs or their observers misunderstand the

14   election process, not that County Defendants are counting invalid votes or otherwise

15   interfering with proper tabulation.  These allegations are plainly insufficient to support

16   a claim based on vote dilution when, if true, they demonstrate adherence to the

17   principles of ensuring all valid votes are counted.

18          ***Ballot duplication.***  Plaintiffs' ballot duplication allegations show observers

19   witnessing that process as it was designed.  Duplication requires election workers to

20   ascertain the voter's intent pursuant to the uniform vote count standards in 2 Cal. Code

21   Reg. §§ 20980-85.  Alameda County thus correctly duplicated ballots "without any

22   input from the voter," since voters are not present during the duplication process.  SAC

23   ¶ 114.  Plaintiffs' allegation that Riverside County lacked a "method of accountability"

24   for duplication, SAC ¶ 101, fails to allege that any voter's intent was not accurately

25   reflected on remade ballots and to account for the presumption that government

26   employees have regularly performed their official duties.  Evid. Code § 664.

27
28   [21] Two of these "smaller" counties are San Benito and Santa Cruz Counties, against
     whom no allegations are pled at all.  *See supra* § III.A.3.

1    ***Signature verification.***  Plaintiffs' signature verification allegations also

2    demonstrate a lack of understanding of election processes.  For example, inactive

3    voters are legally entitled to vote pursuant to Elections Code sections 2000 and 2101.

4    *But see* SAC ¶¶ 64, 117.  Signature verification does not happen curbside at a ballot

5    drop box because the process requires comparison with the voter's signature on file,

6    *but see* SAC ¶ 121, and voters with signature issues may cure the defect.  Elec. Code

7    § 3019.  Voters are also permitted to have someone else return their VBM ballot.

8    While that individual is supposed to also sign the envelope, state law permits ballot

9    verification without that individual's signature if the voter's signature matches (or is

10   cured).  *See id.* §§ 3017, 3019.  Allegations of County Defendants following those

11   procedures, without any allegation that persons returning VBM ballots were engaged

12   in malfeasance, are insufficient to support a vote dilution claim.  *See* SAC ¶¶ 118, 124.

13   ***Uniform vote count standards.***  The SAC also alleges, although framed as

14   unlawful behavior, *proper* application of the uniform vote count standards when

15   evaluating ballots.  For example, these standards provide that elections officials should

16   not count a vote that is crossed out by the voter when another vote is indicated, if that

17   is a consistent practice of the voter.  *See* 2 Cal. Code Regs. §§ 20982(c), 20983(c)(6).

18   Plaintiffs' allegations regarding how Sacramento County tabulated votes when one

19   mark was crossed out are *consistent* with those standards.  SAC ¶ 122.

20   **D.    Plaintiffs' Case Should Be Dismissed with Prejudice.**

21        Leave to amend is inappropriate where Plaintiffs have had several opportunities

22   to provide additional allegations to cure the deficiencies in their complaint.  Despite

23   new and rearranged allegations, the gravamen of the complaint has not changed—and

24   County Defendants' core arguments regarding pleading deficiencies remain

25   fundamentally unchanged.  Plaintiffs continue to plead speculative, conclusory

26   allegations that fail to state a claim upon which relief may be granted.

27                          **IV.    CONCLUSION**

28        This action should, once again, be dismissed in full without leave to amend.

Respectfully submitted,

1

2    Dated:  March 30, 2023                JAMES R. WILLIAMS
                                          County Counsel
3

4                                  By:    */s/ Mary E. Hanna-Weir*
5                                         MARY E. HANNA-WEIR
                                          Deputy County Counsel
6
                                          Attorneys for Defendant
7                                         Shannon Bushey, Registrar of Voters
                                          for the County of Santa Clara
8

9    Dated: March 30, 2023                DONNA ZIEGLER
                                          County Counsel
10

11                                 By:    */s/ Raymond Lara*
                                          RAYMOND LARA
12                                        Senior Deputy County Counsel
13
                                          Attorneys for Defendant
14                                        Tim Dupuis, Registrar of Voters for
                                          the County of Alameda
15

16   Dated: March 30, 2023                THOMAS L. GEIGER
17                                        County Counsel

18                                 By:    */s/ Rebecca Hooley*
19                                        REBECCA HOOLEY
                                          Assistant County Counsel
20

21                                        Attorneys for Defendant
22                                        Kristin Connelly, Registrar of Voters
                                          for Contra Costa County
23

24   ///

25   ///

26   ///

27   ///

28   ///

26

1   Dated: March 30, 2023                         DANIEL C. CEDERBORG
2                                                 County Counsel

3                                          By:    */s/ Kyle R. Roberson*
4                                                 KYLE R. ROBERSON
                                                  Deputy County Counsel
5
6                                                 Attorneys for Defendant
                                                  James A. Kus, County
7                                                 Clerk/Registrar of Voters for the
                                                  County of Fresno
8

9
    Dated: March 30, 2023                         MARGO A. RAISON
10                                                County Counsel

11
                                           By:    */s/ Marshall Scott Fontes*
12                                                MARSHALL SCOTT FONTES
13                                                Chief Deputy County Counsel

14                                                Attorneys for Defendant
15                                                Aimee Espinoza, Auditor-
                                                  Controller/County Clerk/Registrar of
16                                                Voters for Kern County

17
    Dated: March 30, 2023                         Dawyn R. Harrison
18                                                Interim County Counsel

19
                                           By:    */s/ Eva W. Chu*
20                                                EVA W. CHU
21                                                Senior Deputy County Counsel

22                                                Attorneys for Defendant
23                                                Dean C. Logan, Los Angeles County
                                                  Registrar-Recorder/County Clerk
24

25   ///

26   ///

27   ///

28   ///

27

1   Dated: March 30, 2023                    LESLIE J. GIRARD
2                                            County Counsel

3                                      By:   */s/ Marina S. Pantchenko*
4                                            MARINA S PANTCHENKO
                                             Deputy County Counsel
5
6                                            Attorneys for Defendant
                                             Gina Martinez, Registrar of Voters
7                                            for the County of Monterey

8   Dated: March 30, 2023                    LEON J. PAGE
9                                            County Counsel

10
11                                     By:   */s/ Rebecca S. Leeds*
                                             REBECCA S. LEEDS
12                                           Senior Deputy County Counsel

13                                           Attorneys for Defendant
14                                           Bob Page, Registrar of Voters for
                                             the County of Orange
15
16  Dated: March 30, 2023                    MINH TRAN
17                                           County Counsel

18                                     By:   */s/ Ronak N. Patel*
19                                           RONAK N. PATEL
                                             Deputy County Counsel
20
21                                           Attorneys for Defendant
                                             Rebecca Spencer, Riverside County
22                                           Registrar of Voters

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1   Dated: March 30, 2023                    LISA A. TRAVIS
2                                            County Counsel

3                              By:   */s/ Janice M. Snyder*
4                                            JANICE M. SNYDER
                                             Assistant County Counsel
5
6                                            Attorneys for Defendant
                                             Hang Nguyen, Sacramento County
7                                            Registrar of Voters

8   Dated: March 30, 2023                    BARBARA THOMPSON
9                                            County Counsel

10                             By:   */s/ Joseph Wells Ellinwood*
11                                           JOSEPH WELLS ELLINWOOD
                                             Assistant County Counsel
12
13                                           Attorneys for Defendant
                                             Francisco Diaz, San Benito County Clerk-
14                                           Recorder-Registrar of Voters
15
16  Dated: March 30, 2023                    TOM BUNTON
                                             County Counsel
17
18                             By:   */s/ Laura L. Crane*
                                             LAURA L. CRANE
19                                           Principal Assistant County Counsel
20
21                                           Attorneys for Defendant
                                             Stephenie Shea, San Bernardino
22                                           County Registrar of Voters

23

24  ///

25  ///

26  ///

27  ///

28  ///

County Defendants' Notice of Motion and Motion to Dismiss                    2:21-CV-00032-AB-MAA
Plaintiffs' Second Amended Complaint

1   Dated: March 30, 2023          RITA L. NEAL
2                                  County Counsel

3                          By:   */s/ Ann Duggan*
4                                  ANN DUGGAN
                                   Deputy County Counsel
5
6                                  Attorneys for Defendant
                                   Elaina Cano, Clerk-Recorder-Registrar
7                                  of Voters for San Luis Obispo County

8   Dated: March 30, 2023          JASON M. HEATH
9                                  County Counsel

10                         By:   */s/ Melissa C. Shaw*
11                                 MELISSA C. SHAW
                                   Assistant County Counsel
12
13                                 Attorneys for Defendant
14                                 Tricia Webber, Santa Cruz County
                                   Registrar of Voters
15
16  Dated: March 30, 2023          TIFFANY N. NORTH
                                   County Counsel
17
18                         By:   */s/ Matthew A. Smith*
19                                 MATTHEW A. SMITH
                                   Assistant County Counsel
20
21                                 Attorneys for Defendant
                                   Michelle Ascencion, Ventura County
22                                 Registrar of Voters

23                         __ATTESTATION__

24        I, Mary E. Hanna-Weir, am the ECF user whose ID and password are being

25  used to file the above Notice of Motion and Motion to Dismiss Plaintiffs' Second

26  Amended Compliant.  In compliance with Civil Local Rule 5-4.3.4(2)(I), I hereby

27  attest that each listed counsel above has concurred in this filing.

28                                 */s/ MARY E. HANNA-WEIR*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for Defendant Shannon Bushey, Registrar of Voters for the County of Santa Clara, certify that this brief contains 25 pages, which complies with the page limit of Judge André Birotte Jr.'s Standing Order.

Respectfully submitted,

Dated:  March 30, 2023

JAMES R. WILLIAMS
County Counsel

By:   */s/ Mary E. Hanna-Weir*
MARY E. HANNA-WEIR
Deputy County Counsel

Attorneys for Defendant
Shannon Bushey, Registrar of Voters
for the County of Santa Clara

2805329

County Defendants' Notice of Motion and Motion to Dismiss
Plaintiffs' Second Amended Complaint

2:21-CV-00032-AB-MAA